## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEL BEUCLER, MICHAEL ESPOSITO, JOHN EDMONDS, KATHLEEN DALPIAZ, MICHAEL FENNELL, BARBARA DERWICH, DANIEL BERKOWITZ, KEVIN MAYHEW, CHRISTINE MERRIAM, DR. ADAM NIEDELMAN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CPG INTERNATIONAL INC., and AZEK BUILDING PRODUCTS, INC.,<br><br>Defendants. | Civil Action No.: 12-6627 (KM)(MCA) |

-------------------------------------------------------------------------------------------------------------------

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO MOTION TO DISMISS

-------------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700


Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204


Christopher A. Seeger
Jonathan Shub
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
(212) 584-0700

Paul Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
(847) 433-4500


Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820


Matthew B. Weisberg Esq.
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030


*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Table Of Authorities ...........................................................................................iv

Preliminary Statement..........................................................................................1

Factual Background ..............................................................................................1

    A.   Azek Decking Material and the Defect...............................................1

    B.   Defendants' Institutional Knowledge of the Defect and Attempts to Conceal It ......3

    C.   Plaintiffs Purchased Azek Decking in Reliance upon Defendants'
Misrepresentations and Omissions ..........................................................3

    D.   Defendants' Inability and Unwillingness to Correct the Defect
and Failed Temporary Solution ..............................................................4

Legal Argument ....................................................................................................4

    I)   The Rule 12(b)(6) Legal Standard ........................................................4

    II)   Defendants' Motion To Strike Plaintiffs' Class Allegations Is Premature...............5

        A.   Azek's Motion to Strike Class Allegations Before Discovery
Has Occurred Is Premature ..............................................................6

        B.   The First Amended Complaint Is Not
The Exception To The General Rule ....................................................7

            1.   Plaintiffs' proposed classes are objectively
ascertainable on the face of the complaint ...................................7

            2.   Plaintiffs' proposed classes satisfy
Article III standing requirements ....................................10

        C.   Defendants Misread Plaintiffs' Complaint ...................................13

            1.   Plaintiffs have pleaded numerous facts in support of their claims ....13

            2.   Plaintiffs will demonstrate the defect is one of
design which exists across all Azek decking ...................................14

            3.   Plaintiffs have pled facts supporting their allegation
that Azek knew or should have known about the defect .................15

III)   Plaintiffs' Statutory Claims Are Pleaded With Sufficient Specificity ......................15

    A.   Standard for Statutory Fraud Claims Pursuant to Fed.R.Civ.P. 9(b) ............15

    B.   Plaintiffs' Beucler and Esposito Sufficient Plead a Claim Under
       New Jersey Consumer Fraud Act .................................................................16

    C.   Plaintiffs Edmonds and Dalpiaz Sufficiently Pleads a Claim Under
       Florida Deceptive and Unfair Business Practices Act ...................................17

    D.   Plaintiff Derwich Sufficiently Pleads a Claim Under
       The Michigan Consumer Protection Act .......................................................19

    E.   Plaintiff Berkowitz Sufficiently Plead a Claim Under Pennsylvania
       Unfair Trade Practices and Consumer Protection Law ..................................20

    F.   Plaintiff Fennell Sufficiently Plead a Claim Under
       New York Consumer Protection Act ..............................................................23

    G.   Plaintiff Niedelman Sufficiently Plead a Claim Under
       Rhode Island Deceptive Trade Practices Act .................................................24

IV)   Plaintiffs Have Stated Claims Under The Applicable Warranty Laws .....................26

    A.   Plaintiffs' Complaint Alleges Every Element of a
       Breach of Warranty Claim Under New Jersey Law (Count I) ......................26

       1.   Defendants' representations and affirmations
          Regarding Azek decking are an express warranty
          under N.J.S.A. § 12A:2-313 ...............................................................27

       2.   Defendants' limited warranty is inoperable because it is
          "unreasonably inconsistent" with the express warranties given .......29

       3.   Defendants' knowledge of the defect renders the limitations of
          its written and implied warranty unconscionable .............................30

    B.   Plaintiffs Have Alleged Every Element of Implied Warranty
       Under New Jersey Law ..................................................................................32

       1.   Plaintiffs Edmonds, Dalpiaz, and Fennel Have Alleged
          Constructive Privity With Defendants Sufficient
          to Sustain Warranty Claims in Florida and New York .....................36

V)   Plaintiffs Allege A Claim For Breach Of Covenant
    Of Good Faith And Fair Dealing ..........................................................................37

VI)    <u>Plaintiffs Properly Allege A Claim For Declaratory Relief</u>......................................39

Conclusion .............................................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 5

*Association of New Jersey Chiropractors v. Aetna, Inc.*, 2011 WL 2489954 (D.N.J. 2011) ......... 6

*Avram v. Samsung Electronics America*, Inc., 2013 WL 3654090 (D.N.J. July 11, 2013).... 26, 29

*Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F.Supp.2d 562 (E.D.Pa. 2009)............... 37

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009) ........................................................ 17

*Budd v. Quinlan,* 860 N.Y.S.2d 802 (Sup. Ct., Suffolk Co., 2008)....................................... 36

*Butler v. Sears, Roebuck & Co.,* -- F.3d --, 2013 WL 4478200 (7th Cir. Aug. 22, 2013)........... 12

*Carlson v. Gen. Motors*, 883 F.2d 287 (4th Cir. 1989)................................................... 31, 32

*Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417 (2d Cir. 2013)........................................ 35

*Carrera v. Bayer Corp.*, -- F.3d --, 2013 WL 4437225 (3d Cir. Aug. 21, 2013) ....................... 7

*Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993) ................................................. 28

*Chiles v. Ameriquest Mortg. Co.*, 551 F.Supp.2d 393 (E.D.Pa. 2008) ................................. 20

*Chong v. State Farm Mut. Auto. Ins. Co.,* 428 F.Supp.2d 1136 (S.D. Cal. 2006)....................... 6

*Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96 (3d Cir. 1983)....................................... 16

*Clark v. McDonalds, Inc.*, 213 F.R.D. 198 (D.N.J. 2003) ................................................. 11

*Cooper v. Samsung Elec. Am. Inc.*, 2008 WL 4513924 (D.N.J. Sept. 30, 2008) ....................... 31

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994)............................................................... 17

*Cruz v. FXDirectDealer LLC*, 720 F.3d 115 (2d Cir. 2013).................................................. 38

*Davis v. Capital Records*, 2013 WL 1701746 (N.D.Cal. April 18, 2013).................................. 39

*DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605 (S.D.N.Y July 27, 2009) ................ 23

*DG v. Devaughn*, 594 F.3d 1188 (10th Cir. 2010) .......................................................... 12

*Donaldson v. Informatica Corp.*, 2009 WL 4348819 (W.D.Pa. Nov. 30, 2009)........................ 37

*Ehrhart v. Sythes (USA)*, 2007 WL 4591276 (D.N.J. Dec. 28, 2007) ...................................... 5

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ............................................... 16, 17

*George Campbell Painting Corp. v. Tennant Co.*, 1995 WL 224410 (D.N.J. Apr. 7, 1995) ....... 27

*Gladden v. Cadillac Motor Car Div., Gen. Motors Corp.*, 83 N.J. 310 (1980)........................ 29

*Greene v. BMW of N. Am., LLC*, 2012 WL 5986457 (D.N.J. Nov. 28, 2012).......................... 36

*Hannon v. Original Gunite Aquatech Pools, Inc.*, 434 N.E.2d 611 (Mass. 1982) ..................... 36

*Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013)............................................. 7

*Hershey Entertainment & Resorts Co. v. Interactive Rides, Inc.*,
  2005 WL 3320843 (M.D.Pa. Dec. 7, 2005).................................................................. 39

*In Re Brandywine Volkswagen, Ltd.*,
  306 A.2d 24 (Del. Super. 1973), *aff'd* 312 A.2d 632 (Del. 1973) ...................................... 22

*In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp.2d 538 (M.D.Pa. 2009) .......... 11

*In re Cruz*, 441 B.R. 23 (Bankr. E.D.Pa. 2004)............................................................... 20

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 WL 4126264 (D.N.J. Sept. 3, 2008) 28

*In re Ford Motor Co., Ignition Switch Prods. Liab. Litig.*,
  2001 WL 1266317 (D.N.J. Sept. 30, 1997) ................................................................. 34

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305 (3d Cir. 2008)................................ 9

*In re Jamster Mktg. Litig.*, 2009 WL 1456632 (S.D. Cal. May 22, 2009)................................... 6

*In re Lord Abbett Mutual Funds Fee Litigation*, 407 F.Supp.2d 616 (D.N.J. 2005)................... 11

*In re OnStar Contract Litig.*, 278 F.R.D. 352 (E.D. Mich. 2011) ....................................... 19

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ..................................... 16

*Kelley v. Cowesett Hills Associates*, 768 A.2d 425 (R.I. 2001).................................................. 25

*L.S. Health & Son, Inc. v. AT&T Info. Sys., Inc.* 9 F.3d 561 (7th Cir. 1993) ............................. 29

*Landsman & Funk, P.C. v. Skinder-Strauss Associates*, 640 F.3d 72 (3d Cir. 2011) ............... 6, 9

*Lieberson v. Johnson & Johnson Consumer Companies, Inc.*,
    865 F.Supp.2d 529 (D.N.J. 2011) ......................................................................................... 34

*Lowe's Home Centers, Inc. v. LL & 127 LLC*, 147 Fed.Appx. 516 (6th Cir. 2005)............... 37, 38

*Marcus v. BMW of North America LLC*, 687 F.3d 583 (3d Cir. 2012) ..................................... 7, 8

*Marian v. TDI, Inc.*, 591 F.3d 137  (3d Cir. 2010) ...................................................................... 13

*Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724 (M.D.Ga. Dec. 12, 2012).......................... 5, 13

*Mitchell v. Frank Bank, S.S.B.*, 2006 WL 1132408 (D. Minn. Mar. 15, 2006)............................ 6

*Montgomery v. Kraft Foods Global, Inc.*, 2012 WL 6084167 (W.D. Mich. Dec. 6, 2012) ......... 35

*Motley v. Jaguar Land Rover North America, LLC*,
    2012 WL 5860477 (Conn. Super., Nov. 1, 2012)................................................................... 25

*Muhammed v. County Bank of Rehboth Beach, Del.*, 189 N.J. 1 (2006)...................................... 30

*Munch v. Sears, Roebuck & Co.*, 2008 WL 4450307 (N.D. Ill. Sept. 30, 2008).......................... 6

*Myers v. Medquist*, 2006 WL 3751212 (D.N.J. Dec. 20, 2006) .................................................... 7

*Ortiz v. Fibreboard Corp.* 527 U.S. 815 (1999) ......................................................................... 11

*P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, 2011 WL 5127850 (E.D.Pa. 2011)................ 6

*Payan v. Greenpoint Mortg. Funding*, 681 F.Supp.2d 564 (D.N.J. 2010) ................................. 17

*Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281 (D.N.J. Dec. 2, 2007)................................... 31

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) ......................................................... 11, 12

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439 (S.D.N.Y. 2005) .................. 23

*Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005)....................................................... 23

*Phillips v. County of Alleghany*, 515 F.3d 224 (3d Cir. 2008) ..................................................... 4

*Rios v. State Farm Fire & Cas. Co.*, 469 F.Supp.2d 727 (S.D. Iowa 2007)................................... 6

*Rollins, Inc. v. Butland*, 951 So. 2d. 860 (Fla. 2d DCA 2006) .................................................. 18

*Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984)....................................................... 18

*Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344 (1992) .................... 30

*Saltzman v. Pella Corp.*, 257 F.R.D. 471 (N.D. Ill. 2009)......................................................... 10

*Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489 (Fla. 4th DCA 2001)............... 18

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984) ... 16

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108 (9th Cir. 1989)................ 29

*Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555 (Ch. Div. 2002) .................................... 30

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) ............................................................... 23

*Snyder v. Farnam Companies*, 792 F.Supp.2d 712 (D.N.J. 2011) ....................................... 26, 28

*Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997) ....................................................... 37

*South Broward Hospital District v. Medquist Inc.*, 516 F.Supp.2d 370 (D.N.J. 2007)................. 7

*Spartanburg Hotel Corp. v. Alexander Smith, Inc.*, 97 S.E.2d 199 (S.C. 1957).......................... 28

*Speedway Superamerica LLC v. Tropic Enterprises, Inc.*, 966 So.2d 1 (Fla. 2d DCA 2007)...... 39

*Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069 (Del. 1983) .................................................... 22

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000).......................................................................... 23

*Sullivan v. DB Investments*, 677 F.3d 273 (3d Cir. 2011)(en banc) .......................................... 12

*Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ....................... 36

*Taylor v. Ams. Corp.*, 2008 WL 2242451 (D.N.J. May 29, 2008) ............................................. 28

*U.S. LEC Communications, LLC v. Qwest Communications Co., LLC*,
    2011 WL 2474262 (D.N.J. June 20, 2011)............................................................................ 39

*Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J.Super 617 (App. Div. 2002) .................................. 28
*Viking Yacht Co. v. Composites One, LLC*, 496 F.Supp.2d 462 (D.N.J. 2007)...................... 26, 27
*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ........................................................................ 11
*Weiler v. SmithKline Beecham Corp.*,
    2001 WL 1807382, 53 Pa. D. & C.4th 449, 452-55 (Pa.Com.Pl. 2001) ................................. 21
*Weinberg v. Sun Co., Inc.*, 777 Pa. 612 (2001)........................................................................... 21
*Whouley v. Shoreham*, 2009 WL 762315 (D.R.I. Mar. 23, 2009) ............................................... 25
*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965) .............................. 31
*Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010) .................... 12
*Yarger v. ING Bank, FSB*, 285 F.R.D. 308 (D.Del. 2012)............................................................ 22
*Yvon v. Baja Marine Corp.*, 495 F.Supp.2d 1179 (N.D. Fla. 2007) ........................................... 36
*Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441 (Law Div. 1968) ................................ 33, 34

## Statutes

6 Del. Laws. § 2511 *et seq.* ........................................................................................................ 22
73 Pa. Cons. Stat. § 201-1 *et seq.*.............................................................................................. 20
Fl. Stat. Ann. § 501.201 *et seq* .................................................................................................. 18
Mich. Comp. Laws § 445.901 *et seq.* ......................................................................................... 19
N.J.S.A. § 12A:2-313...................................................................................................................... 26
N.J.S.A. § 12A:2-314...................................................................................................................... 33
N.J.S.A. § 12A:2-302...................................................................................................................... 30
N.J.S.A. 56:8-1 *et seq* .................................................................................................................. 16
N.Y. Gen. Bus. Law § 349 ............................................................................................................. 23
R.I. Gen. Laws § 6-13.1-1 *et seq.* .............................................................................................. 24
UCC § 1-203 .................................................................................................................................. 37

## Rules

Fed.R.Civ.P. 8(d)(2)....................................................................................................................... 39
Fed.R.Civ.P. 9(b) ........................................................................................................................... 15
Fed.R.Civ.P. 23(b)(3)...................................................................................................................... 9
Fed.R.Civ.P. 23(c) ......................................................................................................................... 12

## Treatises

5A Charles A. Wright and Arthur R. Miller, § 1298, at 648 (1990)............................................ 16
Bartkus & Sher, N.J. Federal Civil Procedure, § 7-6:3.3 (2013)................................................... 9
W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109 (5th ed. 1984) .............. 28

## PRELIMINARY STATEMENT

This suit alleges that Defendants have failed to provide coverage under their warranties for the inherent defect that has plagued Plaintiffs and many other purchasers of Azek decking. This defect continues to exist despite Plaintiffs' use of the remedies Defendants promise as a cure.  Instead of instituting a product recall, Defendants have stonewalled Plaintiffs.  Based on these allegations, the FAC asserts claims for breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), breach of the implied covenant of good faith and fair dealing (Count III), violations of the New Jersey Consumer Fraud Act (Count IV), the Florida Deceptive and Unfair Trade Practices Act (Count V), the New York General Business Law § 349 (Count VI), the Michigan Consumer Practices Act, MCL §§ 445.901, *et seq*., Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1-201-9.3, Rhode Island's Deceptive Trade Practices Act, Rhode Island Gen. Law § 6-13.1-1 *et seq*., Delaware's Consumer Fraud Act, 6 Del. C. §§ 2511-27, 2580-84 and for declaratory relief pursuant to 28 U.S.C. § 2201.

## FACTUAL BACKGROUND

### A.   Azek Decking Material and the Defect

Defendants manufacture and market a decking product for residential use.  Azek Decking is not a natural wood product.  Rather it is a manufactured synthetic decking made of polyvinylchloride (PVC).  FAC ¶ 4.  Defendants marketed Azek Decking as low-maintenance decking that only required periodic cleaning and, unlike wood and composite decking, would retain its appearance under all outdoor conditions.   FAC ¶ 5.   In addition, Defendants affirmatively represented that Azek Decking:

- Would resist stains; FAC ¶ 6(c)

1

- Would resist scratching; FAC ¶ 6(d), (h), (i)

- That "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold." FAC ¶ 6(c)

- Would maintain "long lasting color;" FAC ¶ 6(a)

- Would maintain its grain better than conventional wood or composite boards; FAC ¶ 6(d)

- Would "weather very slightly over time and will look luxurious for years to come;" FAC ¶ 6(b)

- That AZEK Building Products are "Designed to last beautifully;" FAC ¶ 6(e)

- "[W]ill stand the test of time gracefully and with minimal upkeep;" FAC ¶ 6(f)

- Was a "low maintenance decking;" FAC ¶ 6(i)

- That "Azek has invested years of technical expertise to develop decking that . . . is designed to last beautifully;" FAC ¶ 6(i)

- "AZEK deck is the embodiment of durability;" FAC ¶ 6(j)

- "outdoor applications in direct sunlight constituted appropriate use of their PVC decking and that consumers could reasonably expect that outdoor usage in direct sunlight would not result in the degradation of their decks, porches, and docks;" FAC ¶ 12.

- Because of the low maintenance, owners will save money by using Azek decking instead of wood decking which requires significantly more upkeep than mere cleaning;  FAC ¶ 8.

Plaintiffs allege that, within months of purchasing Azek Decking, they began to experience serious problems as the inherent defect began to manifest itself on the decking in the form of staining, streaking, scratches, discoloration, chalking, and fading.  FAC ¶¶ 64, 72, 80, 88, 98, 106, 114, 122, 138.  Plaintiffs also had to engage in significant resurfacing maintenance. FAC ¶¶ 67, 75, 83, 93, 101, 109, 117, 125, 141.  Plaintiffs also allege that the staining, streaking, scratches, chalking, discoloration and fading on the deck could not be successfully cleaned or

otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendants.  FAC ¶¶ 64, 72, 88, 98, 109, 122, 130, 138.

**B.**     **Defendants' Institutional Knowledge of the Defect and Attempts to Conceal It**

The FAC alleges that Defendants had full knowledge of the existence of the defect prior to the sales to Plaintiffs.  FAC ¶¶ 17, 61.  Defendants knew or should have known that PVC decking is highly susceptible to color and performance degradation as a result of exposure to solar ultraviolet radiation and heat as this is well known in the scientific and industrial communities.  FAC ¶ 11.  Defendants also knew that as a direct result of using AZEK decking in outdoor applications exposed to solar UV radiation and heat, AZEK decking would prematurely discolor, stain, scratch, chalk and deteriorate as a result of photo and thermal degradation.  FAC ¶ 15.  In addition, Defendants knew that AZEK decking had a history of failures and was prone to premature wear and discoloration.  FAC ¶ 59.  Rather than informing customers of these failures, Defendants directly misled consumers by representing to them that discoloration, fading and lack of appearance durability would not occur in outdoor applications.  *Id.*  Defendants further misled consumers by representing to them that if these failures occurred, they were the result of weather and environmental circumstances rather than the chemical characteristics of Azek decking.  *Id.*  Accordingly, Defendants should not be able to argue that they lacked information about the problems inherent defect in Azek Decking during the Class Period.

**C.**     **Plaintiffs Purchased Azek Decking in Reliance upon Defendants' Misrepresentations and Omissions**

The FAC alleges that each Plaintiff purchased Azek Decking after Defendants had knowledge of the inherent defects in Azek Decking, but failed to disclose it.  FAC ¶ 15, 17, 59-61. It also alleges that each Plaintiff had the defect manifest in his or her decking, and that problems have reoccurred despite following the care and maintenance directions provided by

Defendants.   FAC ¶¶ 64, 72, 80, 88, 98, 106, 114, 122, 138.   Based on these allegations, Defendants' failure to disclose the defect while continuing to market and sell Azek decking violates the consumer fraud statutes of New Jersey and other states, and Defendants' delivery of the decking served to breach its express and implied warranties and the implied covenant of good faith and fair dealing.

### D.   Defendants' Inability and Unwillingness to Correct the Defect and Failed Temporary Solution

The FAC alleges that Defendants' wrongful acts extended beyond their marketing and sale of Azek decking, as Defendants' response to the defect was entirely inadequate, and failed to comply with the undertaking in its warranties, as well as state and federal law.   Specifically, the FAC alleges that, despite its knowledge of the problem, Defendants have continued to deny that that the decking is defective and have refused to provide coverage under their warranty. FAC ¶¶ 45-54, 59.   Defendants refuse to repair or replace Plaintiffs' decking, claiming that the warranty covers only "performance" and not "aesthetic" characteristics.   FAC ¶ 19.   It is further alleged that Defendants have only offered a band-aid solution to the problem by instructing consumers to use after-market products in an attempt to re-surface the decking.   FAC ¶ 23.   This is a temporary solution at best.   *Id.*

### LEGAL ARGUMENT

### I)   The Rule 12(b)(6) Legal Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the allegations in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."   *Phillips v. County of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008).   At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).   A contention , as here, that the plaintiff cannot *prove* the allegations in his complaint is a classic example of an inappropriate basis for dismissal under Rule 12(b)(6).

> While these cautious lawyers, who have been encouraged by *Twombly* and *Iqbal*, have parsed the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly*: "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  Blinded by the *Twombly/Iqbal* compulsion, many lawyers fail to appreciate the distinction between determining whether a claim for relief is "plausibly stated," the inquiry required by *Twombly/Iqbal*, and divining whether actual proof of that claim is "improbable", a feat impossible for a mere mortal, even a federal judge.

*Meyer v. Snyders Lance, Inc.*, 2012 WL 6913724, at *1 (M.D.Ga. Dec. 12, 2012) (internal citations omitted).  As explained below, many of Defendants' arguments involve consideration of matters outside of the complaint and thus are inappropriate on a motion to dismiss. To the extent they are ripe they should be rejected as Plaintiffs have plausibly pleaded their claims.

**II)**     **Defendants' Motion To Strike Plaintiffs' Class Allegations Is Premature**

Defendants seek to strike Plaintiffs' class action allegations based on factual assertions that are nowhere to be found in the record.  Efforts to strike class allegations at the Rule 12 stage are nearly always premature. "Courts in this District have held that dismissal of class action allegations is only appropriate 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Ehrhart v. Sythes (USA)*, 2007 WL 4591276, at *4 (D.N.J. Dec. 28, 2007).  The Complaint here does not fit into this category. To the contrary, discovery and Plaintiffs' class certification motion will demonstrate that the requirements of Rule 23, including class member ascertainability, will be satisfied.

5

## A.    Azek's Motion to Strike Class Allegations Before Discovery Has Occurred is Premature

The Third Circuit has made clear that it views efforts to strike class allegations on a motion to dismiss in the absence of discovery and a motion for class certification are typically premature.  In *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 640 F.3d 72, 92-93 (3d Cir. 2011), for example, the Third Circuit held that the district court cannot conduct the "rigorous analysis" required by Rule 23 on the pleadings, as it requires the district court to delve beyond the pleadings to determine if the Rule 23 requirements have been met.  "In most cases, some level of discovery is essential to such an evaluation.  *Id*. at 93.  Indeed, the Third Circuit has previously "emphasized the importance of discovery as part of the class certification process." *Id*.  Thus, the law in this Circuit requires "that the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues."  *Id*.  Consistent with *Landsman*, "district courts in the Third Circuit typically deny as premature motions to strike class action allegations filed before the plaintiff moves for class certification."  *P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia*, 2011 WL 5127850, at *3-4 (E.D.Pa. 2011) (discussing cases).[1]  *See also Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, 2011 WL 2489954, at *11-12 (D.N.J. June 20, 2011) ("Plaintiffs

---

[1]    Other Circuits take the same approach.  *See, e.g.*, *Chong v. State Farm Mut. Auto. Ins. Co.,* 428 F.Supp.2d 1136, 1147 (S.D. Cal. 2006) (denying defendant's motion to strike class allegations as premature).  *Munch v. Sears, Roebuck & Co.,* 2008 WL 4450307, at *8 n. 12 (N.D. Ill. Sept. 30, 2008) (denying defendant's motion to strike class allegations as premature); *Rios v. State Farm Fire & Cas. Co.,* 469 F.Supp.2d 727, 741 (S.D. Iowa 2007) (holding that defendant's motion to strike class allegations was premature prior to the completion of discovery); *Mitchell v. Frank Bank, S.S.B.,* 2006 WL 1132408 (D. Minn. Mar. 15, 2006) (denying defendant's motion to strike class allegations and holding that plaintiff should have the benefit of discovery before class certification issues).  As one court explained, "[e]ven though the arguments of [the defendant] may ultimately prove persuasive, the court declines to address issues of class certification at the present time.  Piece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties."  *In re Jamster Mktg. Litig.*, 2009 WL 1456632 (S.D. Cal. May 22, 2009)

argue that Aetna's motion is premature, and the Court agrees. Decisions from this District as well as others "have made clear that dismissal of class allegations at this sta[g]e should be done rarely and that the better course is to deny such motion because 'the shape and form of a class action evolves only through the process of discovery.");  *South Broward Hospital District v. Medquist Inc.*, 516 F.Supp.2d 370, 401 (D.N.J. 2007) ("other decisions in this District teach that a dismissal of class certification allegations should be ordered only 'in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met'");  *Myers v. Medquist*, 2006 WL 3751212, at *5 (D.N.J. Dec. 20, 2006) ("As a practical matter, the court's certification decision usually should be predicated on more information than the complaint itself affords, and thus, courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis.")

**B.      The First Amended Complaint Is Not The Exception To The General Rule**

**1.      Plaintiffs' proposed classes are objectively ascertainable on the face of the complaint**

Defendants argue that the face of the First Amended Complaint establishes that the identity of class members is objectively ascertainable, based on three recent Third Circuit Court of Appeals cases, *Marcus v. BMW of North America LLC*, 687 F.3d 583, 593 (3d Cir. 2012), *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013), and *Carrera v. Bayer Corp.*, -- F.3d --, 2013 WL 4437225 (3d Cir. Aug. 21, 2013).[2]

---

[2]      Defendants include a tome explaining the facts of these cases.  These three cases, however, are not only factually distinguishable but actually demonstrate the unreliability of determining ascertainability solely on the pleadings.  Each of these cases were decided after full class certification where abundant discovery records were considered with respect to ascertainability issues.  In both *Marcus* and *Hayes*, it was impossible to tell from the defendant's records how many sales of the offending products fell within the class definition.  In *Marcus*, the class was found to lack ascertainability because plaintiffs failed to submit evidence from the

As a starting point, ascertainability requires that membership in the class be determined by objective criteria.  *Marcus*, 687 F.3d at 593.  The proposed class definition is provides for determining class membership by objective criteria.  For each state, the classes are defined as:

    a.      Statutory Consumer Fraud Class

        All individuals and entities in the State of [ ] who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    b.      The Implied and Express Warranty Class includes:

        All persons and entities in the State of [ ] who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

FAC ¶¶ 145-152.  Here, whether a person falls within the class is determined by objective criteria, rather than by the class member's subjective relief or based upon the merits of the class member's claim.  *Marcus,* 687 F.3d at 593.  Indeed, Defendants do not contend that the class is not defined by objective criteria.  Rather, they argue that on the face of the complaint, the process of identifying individual class members is administratively impractical.  (Def. Br. at 12).

First, Defendants' statements in their brief as to what their records will or will not show are not properly considered on a motion to dismiss, since those are not facts contained in the

---

defendants' business records or other sources identifying which BMW vehicles were ultimately sold with Bridgestone run-flat tires, and which had gone flat and had to be replaced.  *Marcus*, 687 F.3d at 593-94.  In *Hayes*, the challenge was to determine which customers purchased "as is" products along with an extended warranty that was not honored. The only way to identify "as is" sales was from sales made by overriding the price at the register, but there were a number of reasons other than sale of an "as is" product why a particular purchase might be subject to a price override.  *Hayes,* 725 F.3d at 352-53.  Further, there was no evidence submitted identifying which of the "as is" products were covered by a manufacturer's warranty, or how many service plans on "as is" products were either not honored or not refunded.  *See id.* at 356. In *Carrera,* the Third Circuit again relied on an extensive discovery record where it was revealed that defendant kept no records which would identify class members who purchased a weight loss product in Florida.  *Carrera*, 2013 WL 4437225 at *1.  The Circuit remanded the case to the district court to determine whether there was a reliable way to determine class membership.  *Id.* at *8.

FAC.  *See* Bartkus & Sher, N.J. Federal Civil Procedure, § 7-6:3.3, at 257 (2013).  More to the point, it is premature, if not impossible, for the Court to determine, on the pleadings, whether there exists an administratively feasible methodology for identifying class members at the appropriate time with no motion for class certification before the Court, nor any methodology with respect to identifying class members presented to the Court.  The Court cannot perform the "rigorous analysis" required for class certification on *no* record.  *See In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 318 (3d Cir. 2008).  If the Court cannot accept a plaintiffs assurance that a solution will be found for some class certification issue on a plaintiff's class certification motion, then it likewise cannot accept a defendant's assertion that no solution can be found on the defendant's motion to dismiss.  *See id.*

Second, the supposed individual issues identified by Defendants, Def. Br. at 13, have nothing to do with ascertainability, but, rather, whether individual issues predominate over common issues for a class action under Fed.R.Civ.P. 23(b)(3).  The Court cannot make a determination as to predominance from the face of the complaint.  "Particularly when a court has to consider predominance, it may have to venture into the territory of a claim's merits and evaluate the nature of the evidence.  In most cases, some level of discovery is essential to such an evaluation."  *Landsman*, 640 F.3d at 93.

Here, Plaintiffs intend to take discovery from Defendants and from third-party distributors seeking to develop lists of purchasers of the defective materials at issue, to the extent that is even necessary for class certification, which Plaintiffs do not concede.  Decking is not an over-the-counter consumable product.  Azek decking is pricey, costing hundreds, if not thousands, of dollars for a whole deck.  It is the type of product for which consumers are likely to keep receipts or some other proofs of purchase.  Further, it has a written warranty and, in fact, the warranty document requests that customers register their purchase with Azek. FAC Ex. A.

Logically, Azek must have some administratively feasible method of verifying warranty claims from its own records or otherwise, that does not involve individual interrogation, bright lights and rubber hoses, and that same method should be able to be used to identify class members here.  There also may be administratively feasible methods of identifying class members from retailer records and Azek distributors given the size of purchases.  None of this information could ever be derived from the face of a complaint.  Rather, it must be obtained in discovery.[3]

Indeed, other construction products cases endorse the proposition that discovery can be used to identify class members. In a case involving windows, the court found the class ascertainable where "[t]here is some evidence that Pella and its distributors keep some records of purchasers and warranty claims data" and rejected "Defendants' concern that individual inquiry would be required to verify that particular class members have the windows in question."

> Plaintiffs persuasively argue that determining class membership would not be significantly distinct from Pella's routine administration of the PSEP program, and would therefore be effective and impose little burden. First, the same visual inspection done by Pella following a warranty claim can be conducted by the homeowner himself. The notice to class members can include information necessary to conduct a self-inspection, whereby a homeowner could identify his windows as the Pella variety at issue here.  Second, Pella currently accepts photos to assess damage to windows, and there is precedent for the use of photos to document claims in class actions.

*Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009) (internal citations omitted).

### 2.    Plaintiffs' proposed classes satisfy Article III standing requirements

Defendants also argue that the face of the complaint precludes establishing standing on a class-wide basis.  That is wrong.  As a general proposition, standing is determined as of the time

---

[3]    Defendants contend that the process of identification of class members would impermissibly create an "opt-in" class.  (Def. Br. at 12-13)  That is nonsense.  It is common to require class members to submit proofs of claim in order to share in the recovery of the case.  *See* Manual for Complex Litigation, 4th, § 21.66 (2004).  However, a class member who does not submit a claim form is still bound by the class judgment.  *See* Fed.R.Civ.P. 23(c)(3)(B).  He or she simply recovers nothing from the suit.

of the filing of the complaint.  However, there is an exception with respect to class actions.  In the class-action context, where a standing issue would not arise but for class certification, those class certification issues are logically antecedent to Article III standing and should be decided in advance of any standing issues.  *Ortiz v. Fibreboard Corp*. 527 U.S. 815, 831 (1999);  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997).  If the standing issue in question arises solely because of class certification, then the class certification issue should be decided first and the standing question is determined with respect to the class as a whole, not just with respect to the named plaintiffs.  *Clark v. McDonalds, Inc.*, 213 F.R.D. 198, 204 (D.N.J. 2003).  *See also In re Chocolate Confectionary Antitrust Litigation*, 602 F.Supp.2d 538, 579-80 (M.D.Pa. 2009) (deferring whether plaintiffs could represent class members from other states until class certification); *In re Lord Abbett Mutual Funds Fee Litigation*, 407 F.Supp.2d 616, 624 (D.N.J. 2005) (denying motion to dismiss claims relating to funds plaintiffs did not own.  "In the class action context, however, a named plaintiff's lack of standing to assert each and every putative class claim is not grounds for dismissal of those claims if plaintiff otherwise has standing to sue the defendant against whom these claims are asserted.") *vacated on other grounds* 463 F.Supp.2d 505 (D.N.J. 2006), *rev'd* 553 F.3d 248 (3d Cir. 2009).

It is irrelevant – even on a motion for class certification – that the class might include members who cannot establish an injury.  *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998) ("Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.").  As the Seventh Circuit noted, "[w]hile it is almost inevitable that a class will include some people who have not been injured by the defendant's conduct because at the outset of the case many members may be unknown, or the facts bearing on their claims may be unknown, this possibility does not preclude class certification."  *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010)**Error! Bookmark not defined.**; *see also DG v. Devaughn*,

594 F.3d 1188, 1198 (10th Cir. 2010) (same).   This is so because the function of class certification is preclusive: to bind the members of an objectively defined class to the determinations of common questions in the case.   Fed.R.Civ.P. 23(c)(2)(B)(iii); 23(c)(3).   It is not, on the other hand, intended to guarantee that all in the class will prevail or recover on their claim.[4]   *See Sullivan v. DB Investments*, 677 F.3d 273, 299 (3d Cir. 2011)(en banc) ("the focus is on whether the defendant's conduct was common to all class members, not whether each plaintiff has a 'colorable' claim").

Defendants are essentially arguing that a class can never be certified in a case involving a design defect which may not have manifested yet for the entire class.   That is not the law in the Third Circuit or elsewhere.   It is well established that where certain class members purchased a product with an inherent design defect that has not yet manifested, a court may nevertheless certify a class.   Here, Plaintiffs allege Azek's decking was defectively designed, not defectively manufactured.   This means that the issue of a defective design is uniform across the class, and the fact that some class members' decking has not yet manifested the defect can easily be addressed through sub-classes.

Courts typically address this situation by certifying a "damages" subclass under Rule 23(b)(3) for those class members whose decking has manifested the defect, and an "injunctive" subclass under Rule 23(b)(2) of those whose decking has not yet manifested the defect.   *See Pella*, 606 F.3d at 395.   In addition to *Pella*, the Seventh Circuit took just this approach in *Butler v. Sears, Roebuck & Co.,* -- F.3d --, 2013 WL 4478200 (7th Cir. Aug. 22, 2013), finding that the issue of defective manufacture creates single, central issue of liability.   *See also Wolin v. Jaguar*

---

[4]     Defendants' contention that the class definitions include contractors or other resellers, who are not "consumers" under applicable consumer protection statutes, and, thus, have no standing to sue under those statues, is a red herring. (*See* Def. Br. at 15-16)  Such persons are not included within the class definitions.

*Land Rover North America, LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("The district court erred when it concluded, without discussion, that certification is inappropriate because [plaintiffs] did not prove that the defect manifested in a majority of the class'[] vehicles."), or the court may certify appropriate subclasses.).

C.      **Defendants Misread Plaintiffs' Complaint**

Defendants additionally argue in its alternative motion to strike class allegations that Plaintiffs have not adequately plead facts to support their allegations (Def. Br. at 16), that Plaintiffs cannot demonstrate that the defect exists across all Azek products (Def. Br. at 17) and that Plaintiffs have not adequately pled that Azek knew or should have known of the defect in its products (Def. Br. at 17-18).   The contention that Plaintiffs cannot prove that the defect is uniform across all Azek products is inappropriate on a Rule 12 motion.  *See Meyer*, 2012 WL 6913724, at *1.  Discovery, not the pleadings or Defendants' say-so, will determine what the Plaintiffs can or cannot prove.

1.      **Plaintiffs have pleaded numerous facts in support of their claims**

Defendants' argument that Plaintiffs have not pled adequate factual bases for their allegations is belied by a reading of the allegations in the FAC.  The FAC contains numerous factual allegations rising well above speculation, indeed too numerous to recount each in the present briefing.  Paragraphs 41 through 61 of the FAC allege facts common to the class, none of which are speculative.  For example, Plaintiffs allege:

45.     Defendants provided an express warranty to Plaintiffs and Class Members, including purchasers and property owners with original AZEK PVC decking installed or applied. A true and accurate copy of the warranty is attached hereto as Exhibit A and incorporated herein by reference.

…

47.     In their materials, Defendants uniformly marketed AZEK PVC decking as a more durable and lower maintenance alternative to wood decking, specifically because

it is "low maintenance decking," in spite of the fact that they knew that their PVC decking was susceptible to solar ultraviolet and heat degradation.

…

49.     Defendants uniformly represented that, unlike the alternative decking products of natural wood or composites from their competitors, Defendants' deck boards have "richer, longer lasting colors" that "don't fade" and "are "stain resistant;" "scratch resistant;" and only require cleaning for their "care and maintenance."

50.     In particular, Defendants expressly represented that, "Wood and Composites Rot, Stain and Fade. AZEK DOES NOT."

51.     Defendants have released numerous videos on their website and YouTube page promoting their decking's maintenance-free attributes and the propriety of its outdoor applications involving direct solar and thermal exposure. In one video, for example, Defendants advertise that, "AZEK deck is the #1 best-selling brand of stain-resistant decking." Defendants further represent that, "Our unique cellular PVC formulation makes AZEK deck stain resistant against even stubborn stain-makers." Furthermore, "With a strong, dense surface, AZEK deck resists scratching from everyday things such as lawn furniture, dog claws, and general traffic wear."

…

54.     At no point have Defendants disclosed that (1) the chemical composition of this PVC decking makes it susceptible to photo and thermal degradation if used in direct sunlight; (2) the photo and thermal degradations characteristics are inherent in the chemical composition of polyvinylchloride; (3) photo and thermal degradation is progressive and cannot be remediated; and (4) that all of its decking will experience discoloration, fading, chalking, and loss of stain scratch resistance where exposed to sunlight and heat.

None of the above allegations, and indeed none of Plaintiffs' allegations, are speculative.

### 2.     Plaintiffs will demonstrate the defect is one of design which exists across all Azek decking

As with the above argument, Defendants' argument that Plaintiffs "implicitly recognize their inability to demonstrate . . . that the purported defect exists across all AZEK Deck" depends on a misunderstanding of Plaintiffs' Complaint. The inspection program referenced by Defendants which Plaintiffs seek as part of their class claims is not intended to determine whether a defect *exists* in Defendants' product, it is intended to determine whether the defect

14

which Plaintiffs will demonstrate exists in Azek's product has *manifested* in class members' homes.  That is a critical distinction that Defendants attempt to blur.

> ### 3.      Plaintiffs have pled facts supporting their allegation that Azek knew or should have known about the defect

Lastly, Defendants argue that it is not sufficient for Plaintiffs to have alleged that Defendants "knew or should have known" of the defect without support.  (Def. Br. at 17)  Defendants simply ignore the fact that Plaintiffs have pleaded quite a bit more than the conclusory statement that Defendants "knew or should have known," and have pleaded numerous facts demonstrating precisely *why* Defendants knew or should have known of the defect.   For example, Plaintiffs allege:

> 10.   Defendants uniformly represented to consumers that they had years of experience in the manufacture of PVC material and were in effect experts in the manufacture and use of PVC materials.
>
> …
>
> 58.   At the time of sale to Plaintiffs, the known chemical characteristics of Defendants' PVC decking made them of not good and merchantable quality for the applications to be reasonably anticipated by Defendants' consumers.  Such characteristics rendered the decking defective for the ordinary purposes for which the decking was used.

Plaintiffs have more than met their burden of pleading on this and each of their claims.

## III)   Plaintiffs' Statutory Claims Are Pleaded With Sufficient Specificity

Despite filing a 72-page First Amended Complaint filled with specific statements made by Defendants in various forms of media about the characteristics and benefits of Azek decking, Defendants surprisingly assert that they do not have ***enough*** information to form a responsive pleading.  An examination of the FAC however, reveals that Plaintiffs have provided Defendants with more than sufficient notice of the precise misconduct and fraudulent behavior about which they are complaining.  Therefore, Defendants' motion must be denied.

### A.      Standard for Statutory Fraud Claims Pursuant to Fed.R.Civ.P. 9(b)

Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."   The purpose of the rule is to "place the defendant[ ] on notice of the precise misconduct with which [it] is charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."  *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).  "[I]n applying [Rule 9(b)], focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.'"  *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983).

The most basic consideration in judging the sufficiency of a pleading is whether it provides adequate notice to an adverse party to enable it to prepare a responsive pleading.  *See* 5A Charles A. Wright and Arthur R. Miller, § 1298, at 648 (1990).  "It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Seville Indus. Mach. Corp.* 742 F.2d at 791.  Plaintiffs' FAC need only inject sufficient precision to put Gerber on notice of the "precise misconduct with which [it is] charged."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  This standard can be satisfied by alleging "the 'who, what, when, where and how' of the events at issue," *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006), or by "otherwise inject[ing] precision or some measure of substantiation" in the allegations.  *See Frederico*, 507 F.3d at 200.  Nevertheless, as is noted, although it is unsettled whether the heightened pleading standard of Rule 9(b) actually applies to certain state consumer protection laws, Plaintiffs have satisfied the Rule here.

### B.     Plaintiffs' Beucler and Esposito Sufficient Plead a Claim Under New Jersey Consumer Fraud Act

To establish a prima facie case under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.*, a plaintiff must allege: (1) unlawful conduct by the defendant; (2) an ascertainable loss by plaintiff; and (3) a causal connection between the defendant's unlawful practice and the plaintiff's ascertainable loss.  *Payan v. Greenpoint Mortg. Funding*, 681 F.Supp.2d 564, 572 (D.N.J. 2010) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).  Unlawful practices fall into one of three general categories: affirmative acts, knowing omissions, and regulatory violations.  *Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994)).

In the instant case, both Plaintiffs Beucler and Esposito have pleaded their claims under the NJCFA with sufficient particularity to provide Defendants with notice.  Plaintiffs assert that they saw and reviewed marketing materials and/or pamphlets created by Defendants prior to and in conjunction with their purchase of Azek decking in April 2009 and June 2007, respectively. FAC ¶¶ 62-63, 70-71, 216.   Plaintiffs affirmed that the advertisements that they saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of Plaintiffs' FAC.  FAC ¶¶ 63, 71.  Moreover, Plaintiffs allege that these specific statements constitute affirmative false or misleading acts and/or knowing omissions of material fact made by Defendants upon which Plaintiffs relied when purchasing Azek decking. FAC ¶¶ 11-12, 17-18, 47, 54-60, 64, 67, 72, 75, 202-222.   Because of Defendants' misrepresentations and marketing, Plaintiffs decided to purchase Azek decking, and in fact, paid more for Azek than they would have paid for a competitors' product.   FAC ¶¶ 21, 67, 69, 75, 77, 217-218, 222.  Plaintiffs suffered further ascertainable loss from their reliance on Defendants' misrepresentations in that their purchased

decking has prematurely discolored, faded, chalked, scratched, stained and degraded and, therefore, requires replacement and remediation.  FAC ¶¶ 20, 69, 77, 222.

Accordingly, Plaintiffs have sufficiently plead a prima facie case under NJCFA and have injected adequate precision and some measure of substantiation into their allegations of consumer fraud to satisfy Rule 9(b)'s heightened pleading standard.  Therefore, Defendants' motion should be denied.

### C.   Plaintiffs Edmonds and Dalpiaz Sufficiently Pleads a Claim Under Florida Deceptive and Unfair Business Practices Act

In order to plead a prima facie case under the Florida Deceptive and Unfair Business Practices Act ("FDUTPA"), Fl. Stat. Ann. § 501.201 *et seq.*, a plaintiff must allege: (1) a deceptive act or unfair practice by the defendant[5]; (2) causation; and (3) actual damages[6]. *Rollins, Inc. v. Butland*, 951 So. 2d. 860, 869 (Fla. 2d DCA 2006) (citations omitted).  Again, Defendants challenge that Plaintiffs have not pleaded their allegations with sufficient specificity to provide sufficient notice to Defendants of their claims.  Nevertheless, both Plaintiffs Edmonds and Dalpiaz have pleaded their claims with sufficient precision to put Defendants on notice.

Plaintiffs assert that they saw and reviewed deceptive marketing materials and/or pamphlets created by Defendants prior to and in conjunction with their purchase of Azek decking in November 2010 and December 2010, respectively.  FAC ¶¶ 78-79, 86-87.  Plaintiffs affirmed that the advertisements they saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of the FAC.  FAC ¶¶ 79, 87.  Moreover, Plaintiffs allege that these specific statements

---

[5]     An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Samuels v. King Motor Co. of Fort Lauderdale*, 782 So.2d 489, 499 (Fla. 4th DCA 2001).

[6]     "[T]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties."  *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984).

were false and misleading, and were specifically relied upon by Plaintiffs when purchasing Azek decking. FAC ¶¶ 11-12, 17-18, 47, 54-60, 80, 83, 88, 93, 230-238.   Because of Defendants' misrepresentations and deceptive marketing, Plaintiffs decided to purchase Azek decking, and in fact, paid more for Azek than they would have paid for a competitors' product and/or than they would have paid for Azek if they knew the truth about the quality of the decking.  FAC ¶¶ 21, 79, 83, 87, 93, 238, 242.

Accordingly, Plaintiffs have sufficiently plead a prima facie case under FDUTPA and have injected adequate precision and some measure of substantiation into their allegations of consumer fraud to satisfy Rule 9(b)'s heightened pleading standard.   Therefore, Defendants' Motion should be denied.

### D. Plaintiff Derwich Sufficiently Pleads a Claim Under The Michigan Consumer Protection Act

For a claim under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.901 *et seq.*, a plaintiff must allege that defendant committed unfair, unconscionable, or deceptive acts or practices.[7]  "An individual asserting a claim under subsection (s) of the MCPA for a defendant's failure to "reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" must establish reliance."  *In re OnStar Contract Litig.*, 278 F.R.D. 352, 378 (E.D. Mich. 2011). Defendants assert that Plaintiff's allegations are not specific enough with respect to these criteria.

---

[7]       The prohibited acts and practices include inter alia:  1. [§ 445.903(c)] representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have or that a person has sponsorship, approval, status, affiliation, or connection, which he does not have;  2. [§ 445.903(s)] failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;  3. [§ 445.903(bb)] making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and 4. [§ 445.903(cc)] failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner.

Plaintiff Derwich, however, has supplied the requisite specificity required under Rule 9(b). Plaintiff asserted that she saw and reviewed marketing materials and/or pamphlets created by Defendants prior to and in conjunction with her purchase of Azek decking in May 2008. FAC ¶¶ 104-105, 272. Plaintiff affirmed that the advertisements that she saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of Plaintiffs' FAC. FAC ¶¶ 105. Moreover, Plaintiff alleges that these specific statements constitute affirmative false or misleading acts and/or knowing omissions of material fact made by Defendants upon which Plaintiff relied when purchasing her Azek decking. FAC ¶¶ 11-12, 17-18, 47, 54-60, 105-106, 109, 266-272. Because of Defendants' misrepresentations and marketing as well as Plaintiff's reliance upon them, Plaintiff decided to purchase Azek decking, and in fact, paid more for Azek than she would have paid for a competitors' product. FAC ¶¶ 21, 105, 109, 272-273. Plaintiff suffered further damage in that her purchased decking has prematurely discolored, faded, chalked, scratched, stained and degraded and, therefore, requires replacement and remediation. FAC ¶¶ 20, 111, 278.

Accordingly, Plaintiff has sufficiently pleaded a prima facie case under the MCPA and has injected adequate precision and some measure of substantiation into her allegations of consumer fraud to satisfy Rule 9(b)'s heightened pleading standard. Therefore, Defendants' Motion should be denied.

### E. Plaintiff Berkowitz Sufficiently Plead a Claim Under Pennsylvania Unfair Trade Practices and Consumer Protection Law

To assert a private right of action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq.*, plaintiff must meet three criteria: (1) that defendant's business constitutes a "trade" or "commerce" within the Act; (2) that the Act grants her a private cause of action for injuries sustained; and (3) that actions of

which she complains are either unfair or deceptive and fall within one of the 21 specific acts enumerated by statute.[8]  *In re Cruz*, 441 B.R. 23 (Bankr. E.D.Pa. 2004).  Furthermore, a plaintiff must allege that he suffered an ascertainable loss as a result of the defendant's prohibited action.  *Weinberg v. Sun Co., Inc.*, 777 Pa. 612, 618 (2001).  Indeed, a plaintiff needs to establish a causal connection between the defendant's allegedly deceptive conduct and the harm the plaintiff suffered. *Weiler v. SmithKline Beecham Corp.*, 2001 WL 1807382, 53 Pa. D. & C.4th 449, 452-55 (Pa.Com.Pl. 2001).

Yet again, Defendants generally and vaguely criticize Plaintiff's claims as broad and non-specific without citing to any specific paragraphs.  Nevertheless, Plaintiff has sufficiently and specifically asserted his claim under the PUTPCPL.  Plaintiff alleges that he saw and reviewed marketing materials and/or pamphlets, ***both*** at his home and at Sequoia Supply, created by Defendants prior to and in conjunction with his purchase of Azek decking in January 2010.  FAC ¶¶ 112-113, 291.  Plaintiff affirmed that the advertisements that he saw included the ***specific*** statements identified in paragraphs 5, 6, 8, 10, and 12 of Plaintiff's FAC.  FAC ¶ 113. Moreover, Plaintiff alleges that these statements constitute fraudulent or deceptive practices by Defendants upon which Plaintiff *relied* when purchasing Azek decking, thus establishing the causal connection.  FAC ¶¶ 111-12, 17-18, 47, 54-60, 113-114, 117, 286-291.  Because of Defendants' deceptive practices, Plaintiff decided to purchase Azek decking, and in fact, paid more for Azek than he would have paid for a competitors' product.  FAC at ¶¶ 21, 113, 117, 293, 297.  Plaintiff suffered further ascertainable loss from his reliance on Defendants' misrepresentations in that his decking has prematurely discolored, faded, chalked, scratched,

---

[8]    An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive. *Chiles v. Ameriquest Mortg. Co.*, 551 F.Supp.2d 393 (E.D.Pa. 2008).

stained and degraded and, therefore, requires replacement and remediation.  FAC ¶¶ 20, 119, 297.

Accordingly, Plaintiff has injected sufficient precision and some measure of substantiation into his allegations of consumer fraud to satisfy Rule 9(b)'s heightened pleading standard, and therefore, Defendants' Motion should be denied.

**F.      Plaintiff Mayhew Sufficiently Plead a Claim Under
Delaware Consumer Fraud Act**

To establish a prima facie case under the Delaware Consumer Fraud Act ("DCFA"), 6 Del. Laws. §  2511 *et seq.*, a plaintiff must allege: (1) that defendants' marketing/advertisements contained a false representation and/or omitted a material fact; (2) that defendant intended for plaintiffs to rely on the representation or omission; and (3) damages.[9]  *Yarger v. ING Bank, FSB,* 285 F.R.D. 308, 326 (D.Del. 2012).   Negligent misrepresentation is sufficient to violate the statute.  *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del. 1983) (citation omitted). The defendant need not have intended to misrepresent or to make a deceptive or untrue statement; rather, the defendant need only have intended that others rely on the statement or omission. *Id.*   The statute, however, does not require proof of such intent.   *Id.*   Moreover, violation of § 2513(a) is committed regardless of actual reliance by the plaintiff.  *Id.*

In the instant case, Plaintiff Mayhew asserts that he saw and reviewed marketing materials and/or pamphlets created by Defendants prior to and in conjunction with his purchase of Azek decking in May 2010.  FAC ¶¶ 120-21.   Plaintiff affirmed that the advertisements that he saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of the FAC. FAC ¶ 121.    Moreover, Plaintiff alleged that these statements constitute false or misleading

---

[9]      Fraudulent intent in connection with the making of such unlawful practice is not requisite to the availability of the remedies of the statute.  *In Re Brandywine Volkswagen, Ltd.*, 306 A.2d 24 (Del. Super. 1973), *aff'd* 312 A.2d 632 (Del. 1973).

representations and/or omissions of material fact made by Defendants.  FAC ¶¶ 11, 15, 57, 59, 124, 324-28.  Plaintiff alleges that Defendants intended for Plaintiff and other consumers to rely on their representations.  FAC ¶ 330.  Finally, Plaintiff also asserts damages.  Because of Defendants' misrepresentations and marketing, Plaintiffs decided to purchase Azek decking, and in fact, paid more for Azek than he would have paid for a competitors' product.  FAC ¶¶ 21, 125, 127, 331.  Plaintiff suffered further ascertainable loss because of Defendants' misrepresentations in that his decking has prematurely discolored, faded, chalked, scratched, stained and degraded and, therefore, requires replacement and remediation.  FAC ¶¶ 20, 127, 335.

Accordingly, Plaintiff has injected sufficient precision and some measure of substantiation into his allegations of consumer fraud to satisfy Rule 9(b)'s heightened pleading standard, and therefore, Defendants' Motion should be denied.

### F. Plaintiff Fennell Sufficiently Plead a Claim Under New York Consumer Protection Act

To establish a prima facie case under the New York Consumer Protection Act ("NYCPA"), N.Y. Gen. Bus. Law § 349, a plaintiff must allege: (1) that the act, practice, or advertisement was consumer-oriented; (2) that the act, practice, or advertisement was misleading in a material respect; and (3) that the plaintiff was injured as a result of the deceptive act, practice, or advertisement.  *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.Supp.2d 439, 444 (S.D.N.Y. 2005).  "Regardless of whether a claim under § 349 is predicated on a "representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  *DeBlasio v. Merrill Lynch & Co., Inc.*, 2009 WL 2242605 (S.D.N.Y July 27, 2009) (*citing Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).  Reliance is not an element of a § 349 claim.  *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999) ("Intent to defraud and justifiable reliance by the plaintiff are not elements of the

statutory claim").  Moreover, a claim under § 349 is only subject to **notice pleading**, and not to the heightened standard of Rule 9(b).  *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (New York's deceptive practices act, N.Y. G.B.L. § 349 does not require proof of the same elements as common law fraud and is only subject to the pleading requirements of Rule 8(a)).

In the instant case, Plaintiff Fennell asserts that he affirmatively saw and reviewed marketing materials and/or pamphlets created by Defendants prior to and in conjunction with his purchase of Azek decking in the summer of 2010 from Park Supply in Schenectady, New York, respectively.  FAC ¶¶ 96-97.  Plaintiff affirmed that the advertisements that he saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of Plaintiffs' FAC.  FAC ¶ 97.  Moreover, Plaintiff alleges that these specific statements constitute affirmative false or misleading acts and/or knowing omissions of material fact made by Defendants upon which Plaintiff relied when purchasing Azek decking.  FAC ¶¶ 11, 15, 57, 59, 98, 246-250.  Because of Defendants' misrepresentations and marketing, Plaintiff decided to purchase Azek decking, and in fact, paid more for Azek than he would have paid for a competitors' product.  FAC ¶¶ 21, 101, 253, 257.  Plaintiff suffered further injury from Defendants' misrepresentations in that his decking has prematurely discolored, faded, chalked, scratched, stained and degraded and, therefore, requires replacement and remediation.  FAC ¶¶ 20, 103, 257.

Accordingly, even if this Court were to apply the heighted pleading standard of Rule 9(b) to Plaintiff's NYCPA claim, contrary to Second Circuit precedent, Plaintiff has injected sufficient precision and some measure of substantiation into their allegations of consumer fraud to satisfy his obligations. Therefore, Defendants' Motion should be denied.

G.    **Plaintiff Niedelman Sufficiently Plead a Claim Under Rhode Island Deceptive Trade Practices Act**

To establish a prima facie case under the Rhode Island Deceptive Trade Practices Act ("RIDTPA"), R.I. Gen. Laws § 6-13.1-1 *et seq.*, a plaintiff must allege: (1) he/she is a consumer, and (2). defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce. *Whouley v. Shoreham*, 2009 WL 762315, at *3 (D.R.I. Mar. 23, 2009) (citing *Kelley v. Cowesett Hills Associates*, 768 A.2d 425, 431 (R.I. 2001)).[10] A plaintiff under the RIDTPA must also prove an ascertainable loss of money or property. R.I. Gen. Laws § 6–13.1–5.2(a). There is no case law to support Defendants' proposition that claims brought under RIDTPA are subject to the heightened pleading standard of Rule 9(b). Notably, cases discussing the RIDPTA have not applied or even discussed Rule 9(b)'s pleading standard. *See e.g. Whouley*, 2009 WL 762315, at *5 ("Plaintiff has at least raised a plausible claim for relief under the [RIDPTA] with enough ***general*** facts plead[ed] to raise a reasonable expectation that discovery could reveal evidence supporting this element of the claim") (emphasis added).

Nevertheless, in the instant case, Plaintiff Niedelman asserts that he saw and reviewed marketing materials and/or pamphlets created by Defendants prior to and in conjunction with his purchase of Azek decking in July 2011 from Arnold Lumber in West Kingston, Rhode Island. FAC ¶¶ 136-137. Plaintiff affirmed that the advertisements that he saw included the specific statements identified in paragraphs 5, 6, 8, 10, and 12 of Plaintiffs' FAC. FAC ¶¶ 137. Moreover, Plaintiff alleges that these statements constitute affirmative false or misleading acts

---

[10]    "Although not defined by [the Rhode Island] Supreme Court, an act is deceptive under the RIDTPA if (1) there is a representation, omission, or practice; (2) the representation, omission, or practice is likely to mislead consumers acting reasonably under the circumstances; and (3) the representation, omission, or practice is material." *Motley v. Jaguar Land Rover North America, LLC*, 2012 WL 5860477, at * 15 (Conn. Super., Nov. 1, 2012), *citing Long v. Dell Computer Corp.*, Docket No. 03–2636 (R.I. Super. April 2, 2012). "[A] material representation is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Id.*

and/or knowing omissions of material fact made by Defendants upon which Plaintiff relied when purchasing Azek decking.  FAC ¶¶ 11, 15, 57, 59, 138, 141, 303-307.  Because of Defendants' misrepresentations and marketing, Plaintiff decided to purchase Azek decking, and in fact, paid more for Azek than he would have paid for a competitors' product.  FAC ¶¶ 21, 141, 311, 315.  Plaintiff suffered further ascertainable loss from Defendants' misrepresentations in that his decking has prematurely discolored, faded, chalked, scratched, stained and degraded and, therefore, requires replacement and remediation.  FAC ¶¶ 20, 143, 315.

Accordingly, even if a claim under RIDTPA is subject to the heightened pleading standard of Rule 9(b), *a proposition no case law supports*, then Plaintiff has nonetheless injected sufficient precision and some measure of substantiation into their allegations of fraud to satisfy his obligation.  Therefore, Defendants' Motion should be denied.

**IV)** **Plaintiffs Have Stated Claims Under The Applicable Warranty Laws**

**A.** **Plaintiffs' Complaint Alleges Every Element of a**
**Breach of Warranty Claim Under New Jersey Law (Count I)**

Defendants contend that Plaintiffs' breach of warranty claims fail because Plaintiffs have not alleged any "defect" that is covered by the Lifetime Warranty.  Def. Br. at 38.  To establish a breach of express warranty claim under New Jersey law, "Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise, or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Companies*, 792 F.Supp.2d 712, 717 (D.N.J. 2011) (citing N.J.S.A. § 12A:2-313).  It is not necessary to "use formal words such as 'warrant' or 'guarantee'" to create an express warranty.  N.J.S.A. § 12A:2-313.  This means that "[a] statement can amount to warranty . . . if it could be fairly understood . . . to constitute an affirmation or representation that the

26

[product] possesse[s] a certain quality or capacity relating to future performance." *Avram v. Samsung Electronics America*, Inc., 2013 WL 3654090, at * 8 (D.N.J. July 11, 2013); *see also Viking Yacht Co. v. Composites One*, *LLC*, 496 F.Supp.2d 462, 469 (D.N.J. 2007) (a representation is presumed to be part of the basis of the bargain "once the buyer has become aware of the affirmation of fact or promise.")  As discussed below, Defendants' representations regarding Azek decking constitute an express warranty.

### 1.    Defendants' representations and affirmations regarding Azek decking are an express warranty under N.J.S.A. § 12A:2-313

Among other representations, Defendants represented and affirmed that Azek Decking (1) does not stain; (2) does not fade; (3) is scratch resistant;  (4) is stain resistant; (5) maintains grain better than conventional wood or composite brands; (6) is designed to last beautifully; (7) maintains a beautiful condition; (8) "weather[s] only slightly"; and (9) is a low maintenance decking. FAC ¶¶ 5, 6, 8, 10, 12. The above-referenced descriptions, representations and affirmations became part of the basis of the bargain because Plaintiffs would "not have purchased AZEK PVC decking at the price charged" had they known that AZEK Decking did not meet these representations.  FAC ¶¶ 67, 75, 83, 93, 101, 109, 117, 125, 133, 141.[11]

The Decking did not conform to Defendants' representations because Plaintiffs' decking exhibited staining, streaking, scratches, chalking, discoloration, and fading that could not be successfully cleaned, or otherwise remedied by employing the methods indicated in the care and maintenance instructions provided by Defendants.  FAC ¶¶ 64, 72, 80, 88, 98, 106, 114, 122, 130, 138.  These allegations are sufficient to create an express warranty.  *See*, *e.g., Viking Yacht Co*., 496 F.Supp.2d at 470 (representations in product bulletin that "high performance, ISO/NPG products which display HIGH GLOSS BUFFBACK qualifies similar to our 952 series, except

---

[11]    Exclusion of "normal weathering of surfaces" is inconsistent with express warranties that the Decking would "*weather very slightly over time* and will look *luxurious for years* to come."

27

the 953's *have improved flexibility and weathering characteristics*" were "part of the basis of the bargain" and concluding that disclaimer of additional warranties was ineffective to the extent it was inconsistent with the promise of "improved flexibility"); *George Campbell Painting Corp. v. Tennant Co.*, 1995 WL 224410, at *3 (D.N.J. Apr. 7, 1995) (representations that "the [floor coating] system was suitable for the site," that "the system would perform as represented," and "that it would 'hold up' in the future," constituted express warranties); *Spartanburg Hotel Corp. v. Alexander Smith, Inc.*, 97 S.E.2d 199, 201 (S.C. 1957) (concluding that oral representation that carpeting was "colorfast and would not fade" amounted to an express warranty).

Defendants' arguments to the contrary at most create a disputed issue of fact, and therefore, are not grounds for dismissal.  *See*, *e.g.*, *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, 2008 WL 4126264, at *4 (D.N.J. Sept. 3, 2008) ("whether a given statement constitutes an express warranty is normally a question of fact for the jury"); *Snyder*, 792 F.Supp.2d at 721-22; *Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J.Super 617, 645 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact.").[12]

---

[12]     In a footnote, Defendants contend that affirmative representations regarding Azek decking are "classic sales puffery."  (Def. Br. 26, n. 9).  "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language . . . The 'puffing' rule amounts to a seller's privilege to lie his head off, so *long as he says nothing specific*."  *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993) *quoting* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 109, at 756-57 (5th ed. 1984) (emphasis added).  Thus, specific statements referencing items that are measurable are likely to be affirmations of fact or promises. *Snyder*, 792 F.Supp.2d at 722.  Defendants' representations that Azek decking would NOT fade or discolor, was scratch and stain resistant, would maintain long lasting color, would maintain its grain better than conventional wood or composite boards, would "weather very slightly . . . ," was "designed to last beautifully," "was low maintenance decking," "would retain its appearance in all outdoor applications in direct sunlight . . ." are the type of specific promises that courts have found to be actionable.  *See*, *e.g.*, *In re Ford Motor Co. E-350 Van*, 2008 WL 4126264, at * 4-5 (finding allegation that Ford described a van as a "15-passenger" van survived a motion to dismiss, as statement could constitute an "objective representation warranting the van's design and safety"); *Taylor v. Ams. Corp.*, 2008 WL 2242451, at *5-6 (D.N.J. May 29, 2008) (allegation

### 2. Defendants' limited warranty is inoperable because it is "unreasonably inconsistent" with the express warranties given

Defendants argue that as the language of the Limited Warranty did not warrant against Plaintiffs' problems with Azek Decking, Plaintiffs' breach of express warranty claim should be dismissed. (Def. Br. at 27). Defendants are wrong. "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other . . . *negation or limitation is inoperative to the extent that such construction is unreasonable*." N.J.S.A. 12A:2-316 (emphasis added). "A warranty disclaimer inconsistent with an express warranty is inoperative." *L.S. Health & Son, Inc. v. AT&T Info. Sys.*, *Inc*. 9 F.3d 561, 570 (7th Cir. 1993); *see also Avram*, 2013 WL 3654090, at *10 (Energy Star logo representation found to constitute express warranty could not be disclaimed); *Gladden v. Cadillac Motor Car Div.*, *Gen. Motors Corp.*, 83 N.J. 310, 330 (1980) ("The complete exclusion of express warranties is strongly disfavored in the UCC."); *Sierra Diesel Injection Serv.*, *Inc. v. Burroughs Corp.*, 890 F.2d 108 (9th Cir. 1989) (finding that a disclaimer of warranties in a "printed form contract was ineffective to void [prior] express warranties").

---

that television was sold as a "1080" television but did not accept a 1080p signal was sufficient to survive motion to dismiss). Thus, Defendants' reliance on decisions that analyzed broad and vague statements is misplaced. *See*, *e.g.*, *In re Ford Motor Co.*, at * 3 (vehicle "is a very safe vehicle" and "America's Most Trustworthy" deemed non-actionable opinion). Moreover, "whether a given statement constitutes an express warranty is normally a question of fact for the jury." *Id.*, at * 13.

Finally, Defendants erroneously assert that Plaintiffs failed to identify which allegations they saw and relied upon. Def. Br. 26, n. 9. Each Plaintiff asserts that he or she "saw and reviewed Defendants' representations and marketing . . . about AZEK decking in pamphlets and information sheets including the same claims and representations referenced *supra* in Paragraphs 5, 6, 8, 10 and 12 and in reliance thereon, Plaintiff[s] decided to purchase and install AZEK decking." FAC ¶¶ 63, 79, 87, 97, 105, 113, 121, 129, 137.

Here, the disclaimer in the Limited Warranty is neither reasonable nor consistent with the express warranties for Azek Decking given by Defendants as set forth in the FAC.  It disclaims the benefits touted by Defendants in its marketing and advertising, relied upon by Plaintiffs in their decision to purchase Azek decking and which became part of the basis of the bargain.  *See* FAC ¶¶ 63, 71, 79, 87, 97, 105, 113, 121, 129, 137.

### 3. Defendants' knowledge of the defect renders the limitations of its written and implied warranty unconscionable

The FAC alleges that Defendants' specific knowledge of the defect, FAC ¶¶ 11, 54, 56, their prior experience with the defect, FAC ¶19, 59, and their failure to disclose that the defect is likely to appear, FAC ¶ 59, renders these limitations unconscionable.  Such allegations support the unconscionability of these warranty terms, rendering them unenforceable.

Under the Uniform Commercial Code, "[i]f [a] court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.J.S.A. 12A:2–302.   Whether a contractual provision is unconscionable is considered on a case-by-case basis.  *Muhammed v. County Bank of Rehboth Beach, Del.*, 189 N.J. 1, 16 (2006).  In determining whether such a provision is unconscionable, "courts look to two factors: 1) unfairness in the formation of the contract, or procedural unconscionability, and 2) excessively disproportionate terms, or substantive unconscionability." *Sitogum Holdings, Inc. v. Ropes,* 352 N.J. Super. 555, 564 (Ch. Div. 2002).  Any contract of adhesion, such as Defendants' form contract here, necessarily contains some degree of procedural unconscionability.  *Muhammed*, 189 N.J. at 15 (citing *Rudbart v. North Jersey District Water Supply Commission*, 127 N.J. 344, 356 (1992)).  In determining whether a

contract of adhesion is unconscionable, the court must consider 1) the subject matter of the contract, 2) the parties relative bargaining positions, 3) the degree of economic compulsion motivating the "adhering" party; and 4) the public interest affected by the contract.  *Id.* at 15-16; *Rudbart,* 127 N.J. at 356.  Whether a contract is unconscionable is determined on a sliding scale, weighing both procedural and substantive unconscionability.  *Muhammed*, 189 N.J. at 16, n. 3.

It is well recognized that a defendant's alleged knowledge of a defect and failure to disclose it to consumers can render limitations in a warranty unconscionable.  *See*, *e*.*g*., *Carlson v*. *Gen*. *Motors*, 883 F.2d 287, 292 (4th Cir. 1989) (denying motion to dismiss breach of warranty for defect not covered by warranty based upon allegations of unconscionability); *Payne v*. *Fujifilm U*.*S*.*A*., *Inc*., 2007 WL 4591281, at *5, n.4 (D.N.J. Dec. 2, 2007) (denying defendant's Rule 12(b)(6) motion in a consumer class action based upon manifestation of latent defect in digital camera after warranty period finding that plaintiff had "alleged sufficiently that the limitations of the implied warranties is unconscionable.")

Moreover, "unconscionability claims should but rarely be determined on the bare-bones pleadings."  *Carlson*, 883 F.2d at 292 (reversing lower court's decision, based solely on the pleadings, that warranty limitations were 'reasonable' and 'conscionable' and noting that court would only be equipped to make this decision after plaintiffs had opportunity to present evidence regarding whether they had a meaningful choice to accept limitations on warranty); *see also Williams v*. *Walker-Thomas Furniture Co*., 350 F.2d 445, 449 (D.C. Cir. 1965) (full development of record is prerequisite to consideration of unconscionability claim because "[w]hether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction.")*; Cooper v*. *Samsung Elec*. *Am*. *Inc*., 2008 WL 4513924, at * 3 (D.N.J. Sept. 30, 2008) (denying motion to dismiss claims involving limitations on express warranty where plaintiff pled defendant's knowledge of the defect and because at

motion to dismiss stage "much of the information required to decide the issue of unconscionability is either not properly before the court . . . or not sufficiently developed by discovery").

Plaintiffs have adequately alleged the unconscionability of Defendants' limitations on the express and implied warranties. In *Carlson*, the plaintiffs similarly alleged that the limitations imposed by defendants on the implied warranty were tainted by the 'concealment of relevant facts,' and that plaintiffs had no 'meaningful choice' when they accepted the limitations. *Carlson*, 883 F.2d at 294. When presented with the claim that the inclusion of certain contractual terms constituted unconscionable overreaching, courts typically look to the parties' relevant "bargaining power," sophistication, "knowledge" and "expertise," all of which constitute relevant evidence of whether their ultimate transaction was tainted by an "absence of meaningful choice." *Id*. at 295. Here, the FAC contains abundant allegations that demonstrate unconscionability: (1) Defendants knew about the defect at the time of sale; (FAC ¶¶ 16, 17, 59); (2) Defendants concealed the defect from consumers; (FAC ¶¶ 56, 59); (3) there was unequal bargaining power between Defendants and the purchasers of Azek decking due to Plaintiffs' and the class members' lack of knowledge about PVC decking, of which Defendants were aware[13] (FAC ¶ 55); (4) there was no meaningful choice relating to the limitations on the warranties (FAC ¶ 9, 12, 21); (5) as a result, Azek decking was unknowingly purchased after Defendants knew of the defect (FAC ¶¶ 15-17, 20-21, 62, 70, 78, 86, 96, 104, 112, 120, 128, 136); and (6) for a particular purpose which could not be met. (FAC ¶¶ 5-7, 11, 15-17). Accordingly, Plaintiffs have adequately alleged unconscionability of Defendants' warranty limitations.

---

[13]     "Evidence of the knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits from the contract – or any related showing that 'the transaction involved elements of deception – should in most 'contribute to a finding of unconscionability in the bargaining process.' Restatement (Second of Contracts) § 208 comment d (1981)." *Carlson*, 883 F.2d at 296.

**B.      Plaintiffs Have Alleged Every Element of Implied Warranty**
**Under New Jersey Law**

Under New Jersey law, the implied warranty of merchantability requires goods to "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; . . . and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." N.J.S.A. § 12A:2-314. Goods with "remarkable defects" breach the implied warranty, but "minor defects" do not. *Zabriskie Chevrolet*, *Inc. v. Smith*, 99 N.J.Super. 441, 457 (Law Div. 1968) (finding a breach of the implied warranty due to a "remarkable defect" where a new car was "practically inoperable and endowed with a defective transmission").

Here, the failures of Azek decking are a "remarkable defect" that constitutes a breach of the implied warranty of merchantability under New Jersey law. First, Azek decking does not conform to the promises or affirmations of fact on the labeling and packaging of the decking. Second, Azek decking is not adequately contained, packaged, and labeled because the representations therein are false. Third, Azek decking does not pass without objection under the contract description because it fails to adhere to the description of the decking. Fourth, the mislabeled decking is not of fair average quality because it fails to meet representations on the labeling and advertising of the decking. Finally, Azek decking is not fit for the ordinary purpose for which such goods are used. The central bargaining or selling point of Azek decking was that it was a low maintenance, wood-alternative decking that would retain its appearance in all outdoor applications and would not fade, was stain and scratch resistant, would "last beautifully; and "weather only slightly." Plaintiffs knew of these representations, intentionally paid a "price

premium" for their decking and would not have purchased Azek decking if they had known it did not meet the representations advertised.  FAC ¶¶ 67, 75, 83, 93, 98, 109, 117, 125, 133, 141.

Defendants also argue that Plaintiffs' implied warranty claim fails because "Plaintiffs do not allege that their decking no longer performs "the general purpose for which it is manufactured and sold" i.e. to be a deck.  Def. Br. at 32.[14]  This is an oversimplification of Plaintiffs' claims.  Plaintiffs' allege that they purchased not just any ordinary decking, but rather they purchased "decking [that] only required low maintenance periodic cleaning, and was an alternative to wood and composite decking[,] . . . would retain its appearance in all outdoor application," would not fade, was stain and scratch resistant, would "last beautifully, and "weather only slightly."  FAC ¶¶ 5, 6, 7, 47, 48, 49, 50, 51, 52, 53.  Defendants proudly touted the unique and distinguishing features of Azek decking in its labeling, advertising and marketing. *Id*.  Plaintiffs purchased decking that purported to have the unique advertised qualities.  The failure of the decking to meet the representations and affirmations made by Defendants is a "remarkable defect."  *See Zabriskie*, 99 N.J.Super. at 457.  As alleged by Plaintiffs, this defect cannot be remedied with minor adjustments.  *See* FAC ¶¶ 67, 75, 83, 93, 101, 109, 117, 125, 133, 141.

In contrast to the authorities cited by Defendants, Azek decking failed to meet the minimum levels of quality for the type of decking it purported to be i.e., low-maintenance, stain and scratch resistant, non-fading, beautiful, long lasting decking.  Each case relied upon by Defendants involves a relatively minor deficiency that was not central to the bargain.  *See*, *e.g.*,

---

[14]     Moreover, Defendants did not represent that its decking would perform as a deck and would merely help prevent staining, scratching, and fading.  Rather, Defendants affirmatively represented that the deck was in fact scratch-resistant and stain-resistant and would not fade or discolor.  Thus, Defendants' citation to *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F.Supp.2d 529, 543 (D.N.J. 2011) (purchaser of baby shampoo and lotion likely purchased product for its cleansing and moisturizing abilities, not its ability to put baby to sleep) is inapposite.

*In re Ford Motor Co.*, *Ignition Switch Prods. Liab. Litig.*, 2001 WL 1266317 (D.N.J. Sept. 30, 1997) (that Ford vehicles had small chance of ignition switch failure and where none of the named plaintiffs had experienced the problem, grounds for recovery for breach of the implied warranty of merchantability did not exist); *Caronia v. Philip Morris USA*, *Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (concluding that lower court's grant of summary judgment on issue of implied warranty of merchantability was proper where plaintiffs argued that cigarettes could have been manufactured to be safer because implied warranty is not breached because cigarettes were minimally safe."); *Montgomery v. Kraft Foods Global*, *Inc.*, 2012 WL 6084167, at *16 (W.D. Mich. Dec. 6, 2012) (concluding that where single-serve coffee maker that used T-discs and brewed various brands of coffee continued to brew coffee but no longer brewed Starbucks coffee because agreement with Starbucks terminated, implied warranty was not breached because "the unavailability of Starbucks coffee did not 'transform the general purpose' of the brewer").[15]

Moreover, this is not a case where Plaintiffs allege that the subject product failed to be perfect and was intended to last forever. Rather, Plaintiffs allege that within as little as months of purchasing Azek decking, they began to notice staining, streaking, scratches, chalking, discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance that could not be remedied due to an inherent defect in the decking. FAC ¶¶ 64, 72,

---

[15] Additional authorities relied upon by Defendants also do not support their position. *Henningsen v. Bloomfield Motors*, *Inc.*, 32 N.J. 358 (1960) (concluding that disclaimer of implied warranty did not apply); *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F. Supp. 2d 1092, 1099 (11th Cir. 1983) (holding that implied warranty did not apply based on evidence presented at trial by plaintiffs regarding the industry standards for the copier at issue); *Osness v. Lasko Prods.*, *Inc.*, 868 F.Supp.2d 402, 414 (E.D. Pa. 2012) (concluding that implied warranty was not breached where fan was subject to recall for potential fire hazard, but plaintiff did not allege that her fan ever malfunctioned during five year period after recall or that she was otherwise unable to use the fan). *Keenan v. Cherry & Web*, 131 A. 309, 311-12 (R.I. 1925) is also inapposite as the court only held that whether a coat was merchantable or fit to wear at the time of purchase was a question for the jury.

80, 88, 98, 106, 114, 122, 130.  However, at the time of purchase, Plaintiffs were promised a decking that would not stain, scratch or fade, was low-maintenance and would last beautifully. Thus, Defendants' citations to various authorities involving minor defects that were not central to the parties' bargain is readily distinguishable.  *See Greene v. BMW of N. Am., LLC*, 2012 WL 5986457, at *3-4 (D.N.J. Nov. 28, 2012) (implied warranty not breached where run flat tired developed bubbles but still functioned); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011) (implied warranty not breached where plaintiffs drove their respective vehicles without incident for several years before any radiator problem manifested itself); *Hannon v. Original Gunite Aquatech Pools, Inc.*, 434 N.E.2d 611, 616 (Mass. 1982) (concluding that implied warranty was not breached where repairs would only take half a day and defendant offered to make repairs).

### 1.    Plaintiffs Edmonds, Dalpiaz, and Fennel Have Alleged Constructive Privity With Defendants Sufficient to Sustain Warranty Claims in Florida and New York

Defendants argue that Plaintiffs Edmonds, Dalpiaz and Fennel lack privity in Florida, and New York, and therefore their implied warranty claims in those states should be dismissed.  Def. Br. at 32.  Plaintiffs Edmonds, Dalpiaz and Fennel acknowledge that none of them is in literal privity with Defendants because none engaged in a direct transaction with Defendants to purchase Azek Decking.  That fact, however, is not dispositive of the privity issue especially on a motion to dismiss.  *See, e.g., Yvon v. Baja Marine Corp.*, 495 F.Supp.2d 1179, 1183 (N.D. Fla. 2007)("the complaint does not allege an absence of privity, and whether there was or was not privity is a factual question that cannot be properly resolved on a motion to dismiss.").

In addition, Plaintiffs have alleged sufficient facts to establish an agency relationship between Defendants and the authorized distributors from whom Plaintiffs purchased their

Decking.  Such a relationship is an alternative to privity that establishes the requisite connection between Plaintiff Fennel and Defendants, even in the absence of literal privity.  *See, e.g., Budd v. Quinlan,* 860 N.Y.S.2d 802, 804 (Sup. Ct., Suffolk Co., 2008) (privity requirement satisfied when the defendant is "in business" with the buyer's immediate seller, where the seller is an authorized dealer).

### V)    **Plaintiffs Allege A Claim For Breach Of Covenant Of Good Faith And Fair Dealing**

In addition to arguing that Plaintiffs fail to allege claims for breach of warranty, Defendants also contend that Plaintiffs have failed to allege a claim for breach of the implied covenant of good faith and fair dealing.  (Def. Br. at 34) That contention also fails.

Every contract includes an implied covenant of good faith and fair dealing.  UCC § 1-203; *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997).  The covenant of good faith and fair dealing prevents parties to a contract from destroying or injuring the right of the other party to receive the fruits of the contract.  *Sons of Thunder, id.*  While the covenant of good faith and fair dealing cannot override the express terms of a contract, *id.* at 419, a party may breach the covenant of good faith and fair dealing without breaching any express term.  *Id.* at 422-24. Examples of bad faith include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."  *Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F.Supp.2d 562, 583 (E.D.Pa. 2009).  A party may also breach the covenant of good faith and fair dealing by exercising contractual discretion unreasonably or in bad faith.  *Lowe's Home Centers, Inc. v. LL & 127 LLC*, 147 Fed.Appx. 516, 523-24 (6th Cir. 2005); *Donaldson v. Informatica Corp.*, 2009 WL 4348819, at *11 (W.D.Pa. Nov. 30, 2009).

Defendants contend that Plaintiffs' breach of covenant of good faith and fair dealing relies solely upon two paragraphs in the FAC alleging that Defendants sold defective products

and failed to cure the defects in Plaintiffs deck.  (Def. Br. at 35) That position simply cherry picks the FAC for Defendants' own convenience.  The FAC alleges much more.  First, Plaintiffs incorporate all of their prior allegations into the count for breach of the covenant of good faith and fair dealing.  FAC ¶ 192.  In addition to selling a defective product, Plaintiffs allege that Defendants knew the product was defective, and provided a warranty for the product, notwithstanding the fact that they had no intention of honoring the warranty.  *See* FAC ¶¶ 195-200.  The Azek Lifetime Warranty provides that, after a customer provides notice of a claimed defect:

> It is a further condition of this Warranty that the Manufacturer will, within a reasonable period of its receipt of such notice, be permitted to inspect the claimed defect.  If, after inspection, the Manufacturer determines that the claim is in accordance with the terms of this Lifetime Limited Warranty, the Manufacturer will repair or replace the defective material, or will refund the original purchase price of the defective material.  The choice of remedy is in the Manufacturer's sole discretion.

FAC Ex. A.  The Lifetime Warranty gives Defendants the sole discretion to determine whether to honor the warranty for the conditions set forth in the FAC.  Plaintiffs allege that they are exercising this discretion in bad faith by unreasonably or in bad faith failing to honor legitimate warranty claims.  Those facts give rise to a claim for breach of the covenant of good faith and fair dealing.

Defendants also contend that the law of the states of New York, Florida, Michigan and Pennsylvania do not support independent claims for a breach of the covenant of good faith and fair dealing.  This is more a matter of semantics rather than of law.  All of these states recognize the existence of the duty of good faith and fair dealing.  New York, Michigan and Florida recognize a claim for a breach of covenant of good faith and fair dealing where a party acts in bad faith with respect to performance of their obligations under a contract; they simply call it a claim for breach of contract.  *Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 125 (2d Cir. 2013)

38

("Under New York law, parties to an express contract are bound by a duty of good faith, but breach of that duty is merely a breach of the underlying contract"); *Lowes*, 147 Fed.Appx. at 523-24; *Speedway Superamerica LLC v. Tropic Enterprises, Inc.*, 966 So.2d 1, 3-5 (Fla. 2d DCA 2007). Pennsylvania holds that a claim for a breach of the covenant of good faith and fair dealing is part and parcel of a breach of contract claim, with the covenant of good faith and fair dealing being a factor to be considered as to whether the allegedly breaching party performed their contractual obligations. *See, e.g., Hershey Entertainment & Resorts Co. v. Interactive Rides, Inc.*, 2005 WL 3320843, at *8 (M.D.Pa. Dec. 7, 2005).

For the reasons set forth above, Plaintiffs have stated a claim for breach of the covenant of good faith and fair dealing. With respect to New York, Florida, Michigan and Pennsylvania, there is no question that Plaintiffs and other class members have such a claim, the only question is the title that should be applied to it.

## VI) **Plaintiffs Properly Allege A Claim For Declaratory Relief**

Defendants further argue that Plaintiffs' count for declaratory judgment should be dismissed because it is duplicative of the other claims in the Complaint. Fed.R.Civ.P. 8(d)(2) expressly allows a party to make claims in the alternative. Plaintiffs acknowledge the difference between alternative pleading and redundant pleading. *See U.S. LEC Communications, LLC v. Qwest Communications Co., LLC*, 2011 WL 2474262, at *4 (D.N.J. June 20, 2011). The declaratory relief sought here on behalf of Class members is not duplicative of damages claims because it provides different relief. *Id.*; *Davis v. Capital Records*, 2013 WL 1701746, at *3 (N.D.Cal. April 18, 2013).

Among the issues raised by Defendants as to why the complaint should be dismissed is that not all members of the class have had problems with the decking material manifest themselves as of the filing of the complaint. That is where the declaratory relief comes in. As is

alleged in the FAC the defendants' decking material is made by a uniform process and will inevitably, over time, develop the problems described in the complaint. The only open question is how long it will take for the problems to manifest themselves.

For those class members whose decks have already manifested problems that Defendants have refused to cover under their Lifetime Warranty, they have a claim for damages which will make them whole. However, for those class members whose decks have not yet manifested problems, the claim for breach of contract for damages will not make them whole, since 1) Defendants have not breached the contract by failing to repair a covered condition and 2) they have not yet suffered any resulting damages to be recompensed. On the other hand, they still have a live controversy with Defendants as to what conditions the Lifetime Warranty does or does not cover. A declaration as to what the Lifetime Warranty is supposed to cover will provide relief to those class members whose decks will manifest problems in the future since they would have the benefit of a judgment of the Court that Defendants are obliged under the Lifetime Warranty to repair or replace their deck. While all class members seek to get the benefit of their bargain under the Lifetime Warranty, the relief to provide that benefit to different class members differs. Class members whose decks have already had problems get money damages; class members whose decks will manifest problems in the future will have a judgment that Defendants are obliged to repair or replace the defects at no cost to the class member.

## CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied.[16]

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff

---

[16] Although Plaintiffs believe that their claims do not suffer from any deficiency, to the extent the Court finds any deficiency, Plaintiffs request leave to amend pursuant to Rule 15(a).

By:___/s/ James E. Cecchi_____
JAMES E. CECCHI

Date:  October 7, 2013

Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

Christopher A. Seeger
Jonathan Shub
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
(212) 584-0700

Paul Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
(847) 433-4500

Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING, EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Matthew B. Weisberg Esq.
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030

*Attorneys for Plaintiffs and the Putative Classes*