James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

Jonathan Shub
Scott Allan George
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
550 Broad Street, Suite 920
Newark, NJ 07102
(973) 639-9100

*Attorneys for Plaintiffs*
[Additional Counsel on signature page]

Jamie Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
(847) 433-4500

Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING,**
**EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Matthew B. Weisberg Esq.
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030

Charles J. LaDuca
Brendan Thompson
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
(202) 789-3960

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE AZEK DECKING SALES PRACTICES LITIGATION | Civil Action No.: 12-6627 (KM)(MCA) <br><br> **CONSOLIDATED AMENDED COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Daniel Berkowitz, Mel Beucler, Kathleen Dalpiaz, Barbara Derwich, John

Edmonds, Michael Esposito, Michael Fennell, Joseph Marino, Kevin Mayhew, Christine

Merriam, William Murdoch, Joseph Rule, Joseph Solo, and Jeffrey Wayne,  (together

"Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and other persons similarly situated, allege the following facts and claim upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this Consolidated Amended Complaint (the "CAC"), allege as follows:

<u>**INTRODUCTION AND SUMMARY OF ACTION**</u>

1.      This is a consumer class action challenging the deceptive marketing of polyvinylchloride synthetic decking sold and distributed by the Defendant.

2.      Defendant AZEK Building Products, Inc. ("ABP") designed, manufactured, warranted, advertised and sold AZEK decking to homeowners, builders, and contractors, which was installed on the property owners' structures.

3.      Plaintiffs purchased the AZEK decking material manufactured by Defendant for their homes to be used as outdoor decks and docks, applications represented by Defendant as appropriate for its AZEK decking material.

4.      The AZEK decking at issue is not a natural wood product, but a manufactured synthetic decking made of polyvinylchloride (PVC).

5.      Defendant uniformly marketed AZEK PVC decking (herein "AZEK decking") by representing that the decking only required low maintenance periodic cleaning, and was an alternative to wood and composite decking, because, unlike alternative natural wood and composite decking, AZEK decking would retain its appearance in all outdoor application. Defendant further represented, marketed, and warranted uniformly that AZEK decking was exceptionally durable and resistant to staining, fading, mold, water, and scratches.

6.      Defendant uniformly represented to consumers as follows:

(a)      That AZEK decking would maintain "Richer, Long Lasting Color."

(b)      That AZEK decking would only "weather very slightly over time and will look luxurious for years to come."

(c)      That "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."

(d)      That "AZEK deck surfaces resist scratching and maintain their grain better than conventional wood or composite boards."

(e)      That AZEK Building Products are "Designed to last beautifully," a phrase which Defendant have trademarked.

(f)      That AZEK decking "will stand the test of time gracefully with minimal upkeep."

(g)      That consumer need only "Sit back and enjoy the lasting beauty" of AZEK decking and that its "Strong good looks are just the beginning."

(h)      That AZEK decking is "Scratch Resistant," and "Mold Resistant;"

(i)      That "[m]arket demand is moving from wood and composites to a new category of low maintenance decking.  With stain and scratch resistance that makes life on the deck easy and a broad palette of shades to complement any exterior.   AZEK is the smart and beautiful low maintenance decking.  And with over 25 years of experience in cellular PVC manufacturing, AZEK Decking is no stranger to better performance.

Manufactured in the USA, AZEK has invested years of technical expertise to develop decking that . . . is designed to last beautifully."[1]

    (j)    "WOOD AND COMPOSITES ROT, STAIN AND FADE.   AZEK DOESN'T.   AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . .   AZEK deck is the embodiment of durability.   At the end of the day all you have to do is enjoy it." (Capitalization in the original)

7.    For these reasons, Defendant charged a price for AZEK decking that was well in excess of the price charged for natural lumber materials, and competitors' materials.

8.    In its instructions to consumers on the care and maintenance of their decks, Defendant represented that the only maintenance required was to clean the deck.  Moreover, Defendant represented that, because of the low maintenance, owners will save money by using AZEK decking instead of wood decking which requires significantly more upkeep than mere cleaning.

9.    Each of the Plaintiffs and Class Members saw or heard these representations from Defendant about AZEK decking prior to purchasing and installing their decking.

10.    Defendant uniformly represented to consumers that it had years of experience in the manufacture of PVC material and were in effect experts in the manufacture and use of PVC materials.

---

[1]    In small print at the end of a brochure concerning the color palette there appears the following "Depending on environmental conditions, AZEK Deck colors may appear to lighten over time as part of the natural weathering [process.]" Thus, Defendant actively sought to minimize the fallout from their other representations.

11.     Despite the marketing representations and warranties to the contrary, Defendant knew, or should have known:

(a)     That because its decking was made of PVC, it was particularly susceptible to photo and thermal degradation, especially if exposed to sunlight or heat;

(b)     That the chemical pathways by which PVC photo-degrades were well known in the scientific and industrial community;

(c)     That the chemical process in PVC, when exposed to ultraviolet would result in color change that was progressive;

(d)     That all synthetic polymers undergo UV induced discoloration;

(e)     That PVC is a polymer well known for its tendency to undergo photo-degradation;

(f)     That as the surface layers of PVC materials degrade, opacifiers used by Defendant, namely  titanium dioxide powder, would be released and form a surface layer known as "chalking," as a direct result of exposure to solar UV radiation; and

(g)     That both the tensile strength and the extensibility of rigid PVC surfaces would become embrittled with the duration of exposure to solar UV radiation making the material more susceptible to scratching and impact damage.

12.     In spite of the foregoing knowledge Defendant represented to consumers that outdoor applications in direct sunlight constituted appropriate use of their PVC decking and that consumers could reasonably expect that outdoor usage in direct sunlight would not result in the degradation of their decks, porches, and docks.

13.     Defendant knew that consumers' primary concern in purchasing AZEK PVC decking was that the decking be durable and low maintenance.

14.     In spite of this knowledge, AZEK PVC decking is highly susceptible to color and performance degradation as a result of exposure to solar ultraviolet radiation and heat, conditions likely to occur in the outdoor applications in which Defendant expected and anticipated their consumers to use their PVC products.

15.     Defendant also knew that as a direct result of using AZEK decking in outdoor applications exposed to solar UV radiation and heat, AZEK decking would prematurely discolor, stain, scratch, chalk, and deteriorate as a result of photo and thermal degradation.

16.     At the time of sale, AZEK PVC decking contained chemical and biochemical characteristics which result in photo and thermal degradation, deterioration and loss of appearance, durability, and eventually surface integrity.  These defects reduced the effectiveness and performance of AZEK decking and rendered it unable to perform the ordinary purposes for which it was marketed and used.

17.     Indeed, Defendant knew about the defects while simultaneously placing the AZEK PVC decking in the market and continuing its marketing campaign and representations.

18.     Plaintiffs' AZEK PVC decking is discoloring, fading, chalking, and degrading, and will continue to do so.   Plaintiffs' AZEK PVC decking requires significantly more maintenance than what Defendant represented.  It does not and cannot maintain its color, which is neither durable nor long lasting, and is in fact failing well before the time periods advertised, marketed and warranted by Defendant.

19.     Defendant's AZEK decking provided a "Lifetime Limited Warranty" that warrants the product as being free of defects in material and workmanship.  As stated above,

AZEK PVC decking is made of polyvinylchloride (PVC), which is a product long known in the scientific and industrial community to be highly susceptible to degradation when exposed to solar UV radiation and heat.  Nevertheless, Defendant, despite knowing that its PVC products are susceptible to solar ultraviolet and thermal degradation, have denied that its PVC decking is defective and therefore has refused to provide coverage under its warranty.  Defendant has refused to repair or replace Plaintiffs' decking in spite of the Lifetime Warranty, and has claimed that its warranties only cover "performance" and not "aesthetic" characteristics.  This distinction does not appear in the language of the warranties, and is contrary to Defendant's numerous representations of "designing lasting beauty" and appearance durability.

20.    As a result, Plaintiffs and the Classes have suffered actual damages in that the decking purchased or installed on their property prematurely discolors, fades, chalks, scratches, stains and degrades under normal conditions of exposure to solar ultraviolet radiation and heat. Further, Plaintiffs and the Classes have suffered or will suffer damages in the form of, *inter alia*, out-of-pocket expenditures for the replacement, and attempted remediation of AZEK PVC decking purchased or installed on their property as a direct and proximate result of the known chemical characteristics of polyvinylchloride use by Defendant in its products.

21.    Had Plaintiffs and the Classes known the true facts regarding the inherent characteristics of PVC products manufactured, sold and distributed by Defendant, those facts would been material to their and any reasonable consumer's decisions to purchase the AZEK PVC decking at the price they paid for it.

22.    Because of the relatively small size of the typical individual Class members' claims, it is unlikely that individual Class members could afford to seek recovery on their own.

This is especially true in light of the size and resources of Defendant.   A class action is, therefore, the only reasonable means by which Class members can obtain relief.

23.     As stated above, all AZEK PVC decking suffers from the propensity for photo and thermal degradation, the propensity for which is inherent in and directly attributable to its chemical composition.   Despite receiving numerous complaints during the Class Period from consumers such as Plaintiffs and other Class members, Defendant has refused to effectively disclose to consumers the defective characteristics of their PVC decking in the presence of outdoor applications, and Defendant has refused to repair, replace, remediate, or refund the purchase price.   Instead, Defendant has used or suggested that owners use after-market products in an attempt to re-surface the decking, which is a temporary solution at best.   Defendant has also characterized the defects in AZEK PVC decking as merely "weathering," an undefined, vague, misleading, and contradictory term to consumers in light of Defendant's numerous representations that AZEK PVC decking has durability of appearance and performance.

## JURISDICTION AND VENUE

24.     On February 21, 2014, the Judicial Panel on Multidistrict Litigation ordered all related actions filed outside this District to be transferred here for consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407.

25.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are more than 100 members in one or more of the proposed classes, at least one class member is a citizen of a state different from Defendant and the amount in controversy exceeds $5,000,000.00.

26.     Defendant transacts business in New Jersey, advertises and markets its products in New Jersey, disseminated the afore-described representations and deceptions throughout New Jersey, and derives substantial income from the sale of products in New Jersey.

8

27.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, *et seq.* because a substantial part of the events or omissions giving rise to this claim occurred in the state of New Jersey.  Additionally, venue is appropriate for the claims arising out of New Jersey's Consumer Fraud Act because the statute applies to any company engaging in any of the activities regulated by the Act within the State of New Jersey.

## THE PARTIES

28.     Plaintiff Daniel Berkowitz ("Plaintiff Berkowitz" or "Mr. Berkowitz."), at all relevant times hereto, has been a citizen and resident of Devon, Pennsylvania.

29.     Plaintiff Mel Beucler ("Plaintiff Beucler" or "Mr. Beucler"), at all relevant times hereto, has been a citizen and resident of Bergen County, New Jersey.

30.     Plaintiff Kathleen Dalpiaz ("Plaintiff Dalpiaz" or "Ms. Dalpiaz"), at all relevant times hereto, has been a citizen and resident of Belleair Beach, Florida.

31.     Plaintiff Barbara Derwich ("Plaintiff Derwich" or "Ms. Derwich"), at all relevant times hereto, has been a citizen and resident of Livingston County, Michigan.

32.     Plaintiff John Edmonds ("Plaintiff Edmonds" or "Mr. Edmonds"), at all relevant times hereto, has been a citizen and resident of Cape Coral, Florida.

33.     Plaintiff Michael Esposito ("Plaintiff Esposito" or "Mr. Esposito"), at all relevant times hereto, has been a citizen and resident of Somerset County, New Jersey.

34.     Plaintiff Michael Fennell ("Plaintiff Fennell" or "Mr. Fennell"), at all relevant times hereto, has been a citizen and resident of Albany County, New York.

35.     Plaintiff Joseph Marino ("Plaintiff Marino" or "Mr. Marino"), at all relevant times hereto, has been a citizen and resident of Chelmsford, Massachusetts.

36.     Plaintiff Kevin Mayhew ("Plaintiff Mayhew" or "Mr. Mayhew"), at all relevant times hereto, has been a citizen and resident of Newark, Delaware.

37.     Plaintiff Christine Merriam ("Plaintiff Merriam" or "Ms. Merriam"), at all relevant times hereto, has been a citizen and resident of Dighton, Massachusetts.

38.     Plaintiff William Murdoch ("Plaintiff Murdoch" or Mr. Murdoch"), at all relevant times hereto, has been a citizen and resident of Belair, Maryland.

39.     Plaintiff, Joseph Rule ("Plaintiff Rule" or "Mr. Rule"), at all relevant times hereto, has been a citizen and resident of the Commonwealth of Virginia.

40.     Plaintiff, Joseph Solo ("Plaintiff Solo" or Mr. Solo"), at all relevant times hereto, has been a citizen and resident of San Marcos, California.

41.     Plaintiff, Jeffrey Wayne ("Plaintiff Wayne" or "Mr. Wayne"), at all relevant times hereto, has been a citizen and resident of North Haven, Connecticut.

42.     Defendant AZEK Building Products, Inc., is a wholly owned subsidiary of CPG. ABP makes and markets exterior building products, including AZEK PVC decking, under the AZEK Brand.

43.     Defendant holds itself out to both the construction materials industry and the public at large as being knowledgeable in the design and manufacture of PVC exterior building products and as being providers of quality PVC building products intended for outdoor use and application, including the decking that is the subject of this litigation.

## COMMON FACTUAL ALLEGATIONS

44.     Defendant sold, directly or indirectly (through distributors and other retail outlets), thousands of linear feet of AZEK PVC decking nationwide, including the states of New

Jersey, California, Connecticut, Delaware, Florida, Maryland, Massachusetts, Michigan, New York, Pennsylvania, and Virginia to homeowners, developers, contractors or subcontractors.

45.     Defendant designed, manufactured, marketed, advertised, warranted and sold, through distributors, AZEK PVC decking to Plaintiffs, Class Members, and their builders, contractors, subcontractors or agents.

46.     Defendant, through its distributors, also designed, manufactured, marketed, advertised, warranted and sold AZEK decking to Plaintiffs, Class Members, and their builders, contractors, subcontractors, or agents.

47.     Subsequently, Plaintiffs, Class Members or their builders, contractors, subcontractors or agents installed AZEK PVC decking on Plaintiffs' and Class Members' structures.

48.     Defendant provided an express warranty to Plaintiffs and Class Members, including purchasers and property owners with original AZEK PVC decking installed or applied. A true and accurate copy of the warranty is attached hereto as **Exhibit A** and incorporated herein by reference.

49.     In conjunction with each sale and through various forms of media, Defendant uniformly marketed, advertised, represented and warranted, as afore-described, that the AZEK decking was durable in appearance and fit for the ordinary purpose for which such goods were used and free from defects in materials and workmanship.

50.     In their materials, Defendant uniformly marketed AZEK PVC decking as a more durable and lower maintenance alternative to wood decking, specifically because it is "low maintenance decking," in spite of the fact that they knew that their PVC decking was susceptible to solar ultraviolet and heat degradation.

51.     Defendant expressly and uniformly represented the durability of the product in appearance and performance as described above.

52.     Defendant uniformly represented that, unlike the alternative decking products of natural wood or composites from their competitors, Defendant's deck boards have "richer, longer lasting colors" that "don't fade" and "are "stain resistant;" "scratch resistant;" and only require cleaning for their "care and maintenance."

53.     In particular, Defendant expressly represented that, "Wood and Composites Rot, Stain and Fade. AZEK DOES NOT."

54.     Defendant released numerous videos on its website and YouTube page promoting its decking's maintenance-free attributes and the propriety of its outdoor applications involving direct solar and thermal exposure.  In one video, for example, Defendant advertises that, "AZEK deck is the #1 best-selling brand of stain-resistant decking."  Defendant further represents that, "Our unique cellular PVC formulation makes AZEK deck stain resistant against even stubborn stain-makers."  Furthermore, "With a strong, dense surface, AZEK deck resists scratching from everyday things such as lawn furniture, dog claws, and general traffic wear."

55.     In another video, titled "AZEK Deck Double Dare," the company compares its cellular PVC decking to other wood and composite deck boards.  The video demonstrates how AZEK PVC decking is stain-resistant and scratch-resistant through a series of hands-on demonstrations by Defendant's representative.  http://www.azek.com/double-dare/. (last visited Feb. 17, 2012).

56.     Another version of the Double Dare Challenge states that "every day stains can be cleaned with ordinary cleaners."  The video compares staining and scratching of AZEK PVC decking vs. wood and wood composite decks.

12

57.    At no point has Defendant disclosed that (1) the chemical composition of this PVC decking makes it susceptible to photo and thermal degradation if used in direct sunlight; (2) the photo and thermal degradations characteristics are inherent in the chemical composition of polyvinylchloride; (3) photo and thermal degradation is progressive and cannot be remediated; and (4) that all of its decking will experience discoloration, fading, chalking, and loss of stain and scratch resistance where exposed to sunlight and heat.

58.    Defendant knew that Plaintiffs, Plaintiffs' builders, contractors, subcontractors, or agents, as well as Class Members, Class Members' builders, contractors, subcontractors or agents, would rely upon Defendant's representations, marketing and warranties regarding the propriety of outdoor applications that would subject AZEK PVC decking to high levels of solar ultraviolet and thermal radiation. In fact, Defendant knew, or should have known, and should have reasonably anticipated that Plaintiffs, Plaintiffs' builders, contractors, subcontractors, or agents, as well as Class Members, Class Members' builders, contractors, subcontractors, or agents, would rely upon Defendant's representations, marketing and warranties as material representations when purchasing the AZEK decking, and that information concerning the propensity of polyvinylchloride to experience progressive photo and thermal degradation when exposed to sunlight was material information to any reasonable consumer of its products.

59.    At no time did Defendant disclose to consumers of their PVC products that its PVC decking material was susceptible to solar ultraviolet and thermal radiation, and that exposure to such radiation would result in the discoloration, fading, and loss of appearance durability of the decking.  Defendant also failed to disclose that as a result of such progressive degradation, the decking would experience progressive chalking, embrittlement, and loss of

13

stain, scratch and impact resistance, none of which could be remediated during the anticipated service life of the decking.

60.     Contrary to Defendant's representations, however, AZEK PVC decking is not durable, cannot maintain durable color fastness, and cannot maintain resistance to stains, scratches, or impact damage.  Indeed, AZEK PVC decking, at the time of leaving Defendant's control, was highly susceptible to photo and thermal degradation which would absolutely result in premature discoloration, fading, chalking, staining, and scratching under normal, anticipated and expected use.  These characteristics were known by Defendant to be material considerations of consumers in making their decision to purchase its products.

61.     At the time of sale to Plaintiffs, the known chemical characteristics of Defendant's PVC decking made them of not good or merchantable quality for the applications to be reasonably anticipated by Defendant's consumers.  Such characteristics rendered the decking defective for the ordinary purposes for which the decking was used.

62.     Defendant also knew that AZEK decking had a history of failures and was prone to premature wear and premature discoloration, yet Defendant failed or omitted to inform its distributors, customers and the eventual owners of the product of these issues.  To the contrary, Defendant directly misled consumers by representing to them that discoloration, fading and lack of appearance durability would not occur in outdoor applications, and that if such did occur, it was the result of weather and environmental circumstances rather than the chemical characteristics of their decking.

63.     Defendant knew or should have known that the benefits of using resurfacing chemical to restore the color of the deck would be transient, would likely void their warranty, and would flake, chip and fade.

14

64.     Despite knowing of these defects in AZEK PVC decking, Defendant has not notified distributors, contractors, owners, subcontractors or purchasers of AZEK PVC decking of the defect and have not provided a workable solution.

### FACTS SPECIFIC TO PLAINTIFFS

***Plaintiff Berkowitz***

65.     In or about January 2010, Plaintiff Berkowitz purchased AZEK decking and had it installed in February 2010 at his home in Devon, Pennsylvania.

66.     Between August 2009 and October 2009, prior to purchasing AZEK PVC decking through his contractor, Plaintiff saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking. Plaintiff Berkowitz saw and reviewed Defendant's representations and marketing as afore-described at his home in Devon, Pennsylvania and at Sequoia Supply in Bucks County, Pennsylvania.

67.     Plaintiff was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient.  Within approximately several months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

15

68.     Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

69.     Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

70.     Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure. If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented he would not have purchased AZEK decking at the price charged.

71.     Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

72.     As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Beucler***

73.     In April 2009, Plaintiff Beucler purchased AZEK PVC decking and had it installed on the deck at his residence located in Mantoloking Shores, New Jersey.

74. Prior to purchasing his AZEK decking, Plaintiff Beucler saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

75. Plaintiff Beucler was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient. Beginning approximately a year after purchasing the decking, Plaintiff and his wife began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

76. Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

77. Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

78. Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance and that not deteriorate with outdoor exposure. If

Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK PVC decking at the price charged.

79.     Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

80.     As a direct and proximate result of the defective decking and Defendant's deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Dalpiaz***

81.     In December of 2010, Plaintiff purchased AZEK decking and had it installed at her home in Belleair Beach, Florida.

82.     Prior to purchasing her AZEK decking, Plaintiff Dalpiaz saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

83.     Plaintiff Dalpiaz was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can

only retain its appearance by periodic re-surfacing, the results of which are transient.  Within six to eight months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

84.    Plaintiff notified Defendant of the problems with her AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

85.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

86.    Defendant instructed Plaintiff to purchase Mr. Clean Magic Erasers or Simple Green to clean the discoloration and rust on her deck.  Defendant also informed her that she should purchase Deck Max and that she should apply this product to the decking once a year to help with the fading. She followed Defendant's instructions exactly and saw no improvements.

87.    These instructions were not included in any brochures or manuals Plaintiff received regarding maintenance to remediate fading and discolorations of the decking.

88.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that she would have to do re-surfacing maintenance

19

beyond the limited care and maintenance Defendant had represented, she would not have purchased AZEK decking at the price charged.

89.     Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

90.     As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what she paid and what she received.

### ***Plaintiff Derwich***

91.     In May of 2008, Plaintiff purchased AZEK decking and had it installed at her home in Pinckney, Michigan.

92.     Prior to purchasing her AZEK decking, Plaintiff Derwich saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

93.     Plaintiff Derwich was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient.  Within approximately a year after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned

or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

94.    Plaintiff notified Defendant of the problems with her AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

95.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

96.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that she would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented she would not have purchased AZEK decking at the price charged.

97.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

98.    As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what she paid and what she received.

*__Plaintiff Edmonds__*

99.     In November of 2010, Plaintiff purchased AZEK decking and had it installed at his home in Cape Coral, Florida.

100.     Prior to purchasing his AZEK decking, Plaintiff Edmonds saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

101.     Plaintiff Edmonds was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient. Within a year after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

102.     Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

103.     Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

104.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK decking at the price charged.

105.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

106.    As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

### *Plaintiff Esposito*

107.    In June 2007, Plaintiff Esposito purchased AZEK PVC decking and had it installed on the deck at his residence located in Brick, New Jersey.

108.    Prior to purchasing his AZEK PVC decking, Plaintiff Esposito saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK PVC decking.

109.    Plaintiff Esposito was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient. Within a year after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

110.    Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

111.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

112.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK decking at the price charged.

113.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

114.    As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Fennell***

115.    In the summer of 2011, Plaintiff Fennell purchased AZEK PVC decking from Park Supply in Schenectady, New York.  Plaintiff installed the decking at his home in Saratoga County, New York.

116.    Prior to purchasing his AZEK PVC decking, Plaintiff Fennell saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

117.    Plaintiff Fennell was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient. Within months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or

otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

118.    Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

119.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

120.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK decking at the price charged.

121.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

122.    As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

### *Plaintiff Marino*

123.    In approximately September through November 2011, Plaintiff Marino purchased AZEK PVC decking from ABC Supply Co, Inc., and Chelmsford Lumber Company in Chelmsford, Massachusetts.  Mr. Marino had AZEK PVC decking installed on his home in Chelmsford, Massachusetts.

124.    Prior to purchasing AZEK PVC decking, Plaintiff saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in his home on Defendant's website at www.azek.com and in AZEK decking brochures including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12.  In reliance thereon, Plaintiff purchased and had AZEK decking installed in his home.

125.    Plaintiff was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient. Within approximately eight months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

126.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

127.   Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented he would not have purchased AZEK decking at the price charged.

128.   Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

129.   As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

### *Plaintiff Mayhew*

130.   In May of 2010, Plaintiff Mayhew purchased AZEK PVC decking from Quality Roofing Supply Co., Inc. in Lewes, Delaware and had it installed on his home in Fenwick Island, Delaware.

131.   Prior to purchasing AZEK PVC decking through his contractor, Plaintiff saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets he obtained from a business distributing such materials, including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12,

and in reliance thereon, Plaintiff decided to have AZEK decking purchased and installed in his home.

132.    Plaintiff was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing the results of which are transient. Within months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

133.    Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

134.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

135.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance

beyond the limited care and maintenance Defendant had represented he would not have purchased AZEK decking at the price charged.

136.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

137.    As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Merriam***

138.    Between September of 2010 and February of 2011, Plaintiff Merriam's home builder purchased and installed AZEK decking on her custom built home in Dighton, Massachusetts.

139.    Prior to purchasing her AZEK decking, Plaintiff Merriam saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

140.    Plaintiff Merriam was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient. Within approximately one to two years after purchasing the decking, Plaintiff began to notice staining,

streaking, scratches, chalking, discoloration, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

141.   Plaintiff notified Defendant of the problems with her AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

142.   Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

143.   Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance that would not deteriorate with outdoor exposure.  If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that she would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented she would not have purchased AZEK decking at the price charged.

144.   Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

145.   As a direct and proximate result of the defective decking, and Defendant's deceptive practices in the marketing and sale of AZEK decking, Plaintiff has suffered and will continue to suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what she paid and what she received.

31

***Plaintiff Murdoch***

146.   In September 2009, Plaintiff Murdoch purchased AZEK PVC decking and had it installed on the deck at his residence located in Bel Air, Maryland.

147.   Prior to purchasing his AZEK decking, Plaintiff Murdoch saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

148.   Plaintiff Murdoch was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient. Beginning approximately two years and eighth months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

149.   Plaintiff notified Defendant of the problems with his AZEK decking shortly after they were noticed and filed a warranty claim in the manner and within time frame prescribed in Defendant's express warranty.

150.   Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

151.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance and that not deteriorate with outdoor exposure. If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK PVC decking at the price charged.

152.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

153.    As a direct and proximate result of the defective decking and Defendant's deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

### *Plaintiff Rule*

154.    In August 2011, Plaintiff Joseph Rule purchased AZEK PVC decking and had the decking installed at his residence located in Virginia Beach, Virginia.

155.    Prior to purchasing his AZEK decking, Plaintiff Rule saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking on the AZEK website by viewing numerous videos and in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

156.    Plaintiff Rule was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient.  Beginning approximately two years and eighth months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

157.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

158.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance and that not deteriorate with outdoor exposure. If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant had represented, he would not have purchased AZEK PVC decking at the price charged.

159.    Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

160.    As a direct and proximate result of the defective decking and Defendant's deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Solo***

161.    In June 2012, Plaintiff Joseph Solo purchased AZEK PVC decking from Pine Tree Lumber in Escondido, California and installed the deck at his residence located in San Marcos, California.

162.    Prior to purchasing his AZEK decking, Plaintiff Solo saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking on the Defendant's website at www.azek.com by viewing numerous videos and in pamphlets and information sheets including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

163.    Plaintiff Solo was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient.  Beginning approximately two years and eighth months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

164.   Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

165.   Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance and that not deteriorate with outdoor exposure. If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant represented, he would not have purchased AZEK PVC decking at the price charged.

166.   Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

167.   As a direct and proximate result of the defective decking and Defendant's deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

***Plaintiff Wayne***

168.   In approximately June 2012, Plaintiff Jeffrey Wayne purchased AZEK PVC decking and had the deck installed at his residence located in North Haven, Connecticut.

169.   Prior to purchasing his AZEK decking, Plaintiff Wayne saw and reviewed Defendant's representations and marketing as afore-described about AZEK decking on the Defendant's website by viewing numerous videos and in pamphlets and information sheets

36

including the same claims and representations referenced above in Paragraphs 5, 6, 8, 10, and 12, and in reliance thereon, Plaintiff decided to purchase and install AZEK decking.

170.    Plaintiff Wayne was not told by, nor did Defendant disclose, that AZEK decking is constructed of polyvinylchloride that will experience photo and thermal degradation when exposed to sunlight resulting in progressive discoloration, fading, loss of appearance durability, chalking, and loss of stain and scratch resistance which cannot be remediated and at best can only retain its appearance by periodic re-surfacing, the results of which are transient.  Beginning approximately eleven months after purchasing the decking, Plaintiff began to notice staining, streaking, scratches, discoloration, chalking, and fading on the deck that could not be successfully cleaned or otherwise resolved by employing the methods indicated in the care and maintenance instructions provided by Defendant.

171.    Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information regarding the photo and thermal degradation propensity of Defendant's decking products.

172.    Plaintiff purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the Defendant as a no-maintenance decking option with durable appearance and that not deteriorate with outdoor exposure. If Plaintiff had known that the PVC was inherently susceptible to photo and thermal degradation due to outdoor exposure resulting in discoloration, fading, chalking, loss of stain and scratch resistance and appearance durability, and that he would have to do re-surfacing maintenance beyond the limited care and maintenance Defendant represented, he would not have purchased AZEK PVC decking at the price charged.

37

173.  Plaintiff is within the applicable statute of limitations for the claims presented hereunder.

174.  As a direct and proximate result of the defective decking and Defendant's deceptive practices in the marketing and sale of AZEK PVC decking, Plaintiff has suffered and will suffer damages including but not limited to the cost of replacement, remediation, and the price difference between what he paid and what he received.

## CLASS ACTION ALLEGATIONS

175.  Plaintiffs bring this class action on behalf of themselves and as a class action under Federal Rule of Civil Procedure 23 on behalf of individuals from New Jersey, California, Connecticut, Delaware, Florida, Massachusetts, Maryland, Michigan, New York, Pennsylvania, and Virginia.

176.  The New Jersey Classes include:

(a)  Statutory Consumer Fraud Class includes:

All individuals and entities in the State of New Jersey who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

(b)  The Implied and Express Warranty Class includes:

All persons and entities in the State of New Jersey who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

177.  The California Classes include:

(a)  Statutory Consumer Fraud Class includes:

All individuals and entities in the State of California who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

All persons and entities in the State of California who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

178.   The Connecticut Classes include:

    (a)    Statutory Consumer Fraud Class includes:

All individuals and entities in the State of Connecticut who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

All persons and entities in the State of Connecticut who through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

179.   The Delaware Classes include:

    (a)    Statutory Consumer Fraud Class includes:

All individuals and entities in the State of Delaware who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

All persons and entities in the State of Delaware who through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

180.   The Florida Classes include:

    (a)    Statutory Consumer Fraud Class includes:

All individuals and entities in the State of Florida who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

     (b)     The Implied and Express Warranty Class includes:

     All persons and entities in the State of Florida who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

181.    The Maryland Classes includes:

     The Implied and Express Warranty Class includes:

     All persons and entities in the State of Maryland who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

182.    The Massachusetts Classes include:

     (a)     Statutory Consumer Fraud Class includes:

     All individuals and entities in the State of Massachusetts who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

     (b)     The Implied and Express Warranty Class includes:

     All persons and entities in the State of Massachusetts who through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

183.    The Michigan Classes include:

     (a)     Statutory Consumer Fraud Class includes:

     All individuals and entities in the State of Michigan who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

     (b)     The Implied and Express Warranty Class includes:

     All persons and entities in the State of Michigan who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

184.    The New York Classes include:

    (a)    Statutory Consumer Fraud Class includes:

        All individuals and entities in the State of New York who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

        All persons and entities in the State of New York who, through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

185.    The Pennsylvania Classes includes:

    (a) Statutory Consumer Fraud Class includes:

        All individuals and entities in the Commonwealth of Pennsylvania who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

        All persons and entities in the Commonwealth of Pennsylvania who through the date of notice of the litigation, purchased AZEK PVC decking, or who own real, residential property upon which AZEK PVC decking was installed.

186.    The Virginia Classes include:

    (a)    Statutory Consumer Fraud Class includes:

        All individuals and entities in the Commonwealth of Virginia who, through the date of notice of the litigation, purchased AZEK PVC decking for any consumer or household outdoor use.

    (b)    The Implied and Express Warranty Class includes:

        All persons and entities in the Commonwealth of Virginia who through the date of notice of the litigation, purchased

AZEK PVC decking, or who own real, residential property
upon which AZEK PVC decking was installed.

187.    Excluded from all Classes are:

(a)     Any Judge presiding over this action and members of their families;

(b)     Defendant and any entity in which Defendant has a controlling interest or
which has a controlling interest in Defendant and its legal representatives,
assigns and successors of Defendant; and

(c)     All persons who properly execute and file a timely request for exclusion
from the Classes.

188.    **Numerosity**:  The Classes are composed of hundreds of persons who purchased AZEK PVC decking, the joinder of whom in one action is impractical.   Moreover, upon information and belief, the members of the Classes are identifiable from Defendant's records or identifying marks on AZEK PVC decking.

189.    **Commonality**:  The critical questions of law and fact common to the Classes that will materially advance the litigation is whether AZEK PVC decking is inherently defective, because it is not of good and merchantable quality and does not perform according to the reasonable expectations of consumers imparted to them by Defendant through its representations and omissions; whether Defendant deceived consumers under the statutory consumer protection laws identified in the pleadings; and whether the manifestations of the photo and thermal degradation characteristics are warrantable either expressly or impliedly under state law.   The resolution of these common questions of law and fact will, in turn, drive the resolution of the litigation.

190.    Additional common legal and factual questions that will also drive the resolution of the litigation include, but are not limited to:

(a)    Whether AZEK PVC decking has not or will not perform in accordance with the reasonable expectations of ordinary consumers;

(b)    Whether Defendant knew or should have known of the defect;

(c)    Whether Defendant concealed from consumers or failed to disclose to consumers the defect;

(d)    Whether the AZEK PVC decking was susceptible to photo and thermal degradation;

(e)    Whether Defendant express warranty against defects in material and workmanship included photo or thermal degradation of its PVC decking;

(f)    Whether Defendant breached the express warranty given to Plaintiffs and the Classes;

(g)    Whether Defendant breached any implied warranties under applicable state law;

(h)    Whether Defendant failure to inform purchasers that its AZEK PVC decking was susceptible to photo or thermal degradations was a material omission, the nondisclosure of which was a deceptive sales practice under the consumer protection statutes of applicable state law; and

(i)    Whether Plaintiffs and Members of the Classes were damaged.

191.    **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Classes, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective AZEK decking and Defendant's

conduct in concealing the defect in AZEK PVC decking from consumers, purchasers, owners, contractors, developers, and suppliers.

192. **Adequate Representation**:  Plaintiffs will fairly and adequately protect the interests of the members of the Classes and have no interests antagonistic to those of the Classes. Plaintiffs have retained counsel experienced in the prosecution of complex class actions, including but not limited to consumer class actions involving, *inter alia*, breach of warranties, product liability and product design defects.

193. **Predominance and Superiority**:  This class action is appropriate for certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members.  The resolution of such common questions will resolve predominant questions of law and or fact.  A Class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all members of the Classes is impracticable.  Should individual Class members be required to bring separate actions, this Court or courts throughout the state and country would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments.  In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

194. Defendant is estopped from relying on any statutes of limitation by virtue of Defendant's acts of fraudulent concealment, which include Defendant's intentional concealment from Plaintiffs and the general public that their AZEK PVC decking was defective, while

continually marketing AZEK PVC decking as durable in appearance and surface integrity, and suitable for outdoor uses and applications.  Defendant's acts of fraudulent concealment include, but are not limited to, failing to disclose that AZEK PVC decking was highly susceptible to photo and thermal degradations and as a result would prematurely discolor, fading, loss of scratch and stain resistance, chalking, and loss of appearance durability, and otherwise degrade under normal conditions and natural, outdoor exposure.  Through such acts, Defendant was able to conceal from the public the truth concerning their product.

195.    Defendant committed affirmative acts of concealment related to these defects by making the representations, warranties, and marketing claims described above at Paragraphs 5, 6, 8, 10, and 12, to Plaintiffs, the Classes, and the public at large, and omitting material information known to them concerning the propensity of its PVC decking to photo and thermal degradation when exposed to sunlight.

196.    Defendant expected and anticipated that Plaintiffs and Class Members would rely upon its representations and omissions in their decisions to purchase and install AZEK PVC decking on their structures.

197.    Defendant issued a "Life Time Warranty" that its product was free of defects in material and workmanship when it knew or should have known that its PVC decking was susceptible to photo and thermal degradation, and that such degradation was going to occur in all the outdoor uses and applications.  Defendant also knew that its PVC decking would not maintain its appearance durability but would fade, discolor, and would release its opacifier material in the form of chalking, all as a result of exposure to sunlight and heat, normal and anticipated conditions of outdoor applications.  Defendant knew that although its product was highly susceptible to photo and thermal degradation, they had no intention of honoring their

warranty for those consequences. Defendant knew that its PVC decking would maintain neither a durable appearance nor surface integrity in the presence of sunlight, and as a result would in fact require repeated and frequent re-surfacing to maintain its appearance durability, yet Defendant omitted these material facts from the public and consumers.  When warranty applications were made to them for the anticipated results of photo and thermal degradation, Defendant denied such warranty claims falsely asserting that chemical degradations were mere "aesthetic issues" and not a "performance" issue even though that distinction is provided neither in their warranty nor in any of the representations made by the Defendant to consumers.

198.   Defendant had a duty to disclose that AZEK PVC decking was defective, unreliable and inherently flawed in its design or manufacture.

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (On Behalf of All Plaintiffs and Warranty Classes)

199.   Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

200.   As set forth in **Exhibit A**, Defendant expressly warranted, for the lifetime of the product, that AZEK PVC decking would be free from defects in material and workmanship.

201.   Defendant also extended express warranting to consumers, including Plaintiffs and the Classes, by way of product descriptions and representations as to product qualities and characteristics made in sales literature at retailers, on their website, and via advertisements, among other methods, including the representations regarding appearance durability as afore-described.

202.   Defendant represent in its warranty that "AZEK Products are intended for decks, boardwalks and piers," all applications of outdoor exposure to sunlight, ultraviolet and thermal

radiation.  In spite of this representation of the suitability of outdoor applications, AZEK PVC decking does not perform as represented because its chemical composition results in premature discoloration, fading, chalking, loss of scratch and stain resistance, and loss of appearance durability due to ultraviolet and thermal radiation.  This defect is due to fundamental chemical characteristics of the material used and was known by the Defendant prior to the sale and distribution of the AZEK PVC decking to Plaintiffs and the Classes. Accordingly, the AZEK decking purchased by Plaintiffs and the Classes was not free from defects in material and workmanship.

203.    Defendant's express lifetime warranty provides that they will repair or replace the defective product or refund the purchase price.

204.    Defendant has breached the written warranty, as set forth above, by failing to replace the defective product or refund the purchase price.

205.    Plaintiffs did not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein.  Upon information and belief, the distributors, contractors, and other customers of Defendant did not and could not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein.  Instead, Defendant stood in a position of domination and control over the terms.

206.    Under these circumstances, Defendant's purported exclusions or limitations of liability and remedies are invalid because they fail of their essential purpose in providing Plaintiffs and Class members the benefit of the bargain *i.e.*, defect-free decking materials.

207.    At the time that Defendant extended these express warranties to Plaintiffs and the Classes, Defendant knew that AZEK PVC decking would degrade in the presence of sunlight and heat.  Nevertheless, Defendant continued to place the defective product on the market and

failed and omitted to inform their distributors, customers, Plaintiffs and Class Members, on whose structures AZEK PVC decking was installed, of these inherent chemical characteristics.

208.    Defendant has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and Defendant's knowledge of the defect in AZEK PVC decking, Defendant has failed and refused to honor their express warranty.

209.    Defendant's failure to remedy the defective AZEK decking and all associated damages constitutes a breach of express warranty.

210.    The foregoing breaches of express warranty at issue were substantial factors in causing damages to Plaintiffs and the Classes.

211.    As a result of the foregoing, Plaintiffs and the members of the Classes have suffered damages (in the form of, *inter alia*, out-of-pocket expenditures for the replacement of AZEK PVC decking or installation of replacements) that were directly and proximately caused by the defective design and manufacture of AZEK PVC decking.  Moreover, if Plaintiffs and the members of the Classes had known the true facts about the defects in AZEK PVC decking, they would have considered that information material in their decisions to purchase AZEK PVC decking.

212.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by New Jersey and other states, as well as all other applicable remedies.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of All Plaintiffs and Warranty Classes)

213.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

214.     Defendant is a merchant who sold decking products to Plaintiffs and the Classes for residential use.

215.     Defendant impliedly represented and warranted that AZEK PVC Decking was free of defects, was of good and merchantable quality, fit for its intended purpose and fit for the ordinary purposes for which such goods are used.

216.     In fact, Defendant sold, directly or indirectly (through distributors and other retail outlets), thousands of board feet of AZEK decks in the states of New Jersey, Connecticut, Delaware, Florida, Maryland, Massachusetts, Michigan, New York, Pennsylvania and Virginia to homeowners, developers, contractors or subcontractors.

217.     Defendant, through distributors, designed, manufactured, marketed, advertised, warranted and sold AZEK PVC decking to Plaintiffs or Plaintiffs' builders, contractors, subcontractors or agents.

218.     Defendant, generally through distributors, designed, manufactured, marketed, advertised, warranted and sold AZEK PVC decking to Class Members, Class Members' builders, contractors, subcontractors or agents, and AZEK PVC decking was installed on Class Members' structures.

219.     Plaintiffs and the Class Members were in privity with Defendant because (1) they purchased their AZEK PVC decking from an actual or apparent agent of Defendant, and (2) have a contractual relationship stemming from Defendant's lifetime warranty provided in conjunction with the purchase of the AZEK PVC decking.

220.     Any limitation, or attempt at limitation, on the implied warranty of merchantability is unconscionable under all of the circumstances, and is unenforceable.

221.    Defendant breached the aforementioned representations and implied warranties, as the AZEK PVC decking contains and suffers from defects because its chemical characteristics result in premature discoloration, fading, chalking, loss of scratch and stain resistance, and loss of appearance durability, and otherwise degrade when exposed to sunlight and heat under all outdoor exposures in the structures in which it is installed.  These defects are due to fundamental chemical composition of the PVC decking which was known to Defendant prior to its manufacture, sale and distribution of the AZEK PVC decking at the time it left Defendant's control.

222.    These defects rendered the decking unsuitable for the ordinary purposes for which it was used and purchased.

223.    Plaintiffs provided notice to Defendant of the defects in their AZEK decking and requested that Defendant repair the defects.  In addition, members of the Classes, by virtue of claims for replacement made pursuant to the express warranties, also notified Defendant of the defects in their AZEK PVC decking.  By virtue of the foregoing, Defendant has received notice of the breach of the warranties.

224.    As a result of the foregoing, Plaintiffs and the members of the Classes have suffered damages (in the form of, *inter alia*, out-of-pocket expenditures for replacement of AZEK PVC decking or installation of replacement decking) that were directly and proximately caused by the defective AZEK PVC decking.  Moreover, if Plaintiffs and the members of the Classes had known the true facts about the defects, they would not have had AZEK PVC decking installed in their residences.

225.    Plaintiffs and members of the Classes are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by New Jersey, Connecticut,

Delaware, Florida, Maryland, Massachusetts, Michigan, New York, Pennsylvania, and Virginia as well as all other applicable remedies.

<div align="center">

**COUNT III**
**BREACH OF THE IMPLIED COVENANT**
**OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of All Plaintiffs and Warranty Classes)**

</div>

226.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

227.    Plaintiffs and the Classes had an express, enforceable contract with Defendant in the form of written warranty. *See* **Exhibit A**.

228.    Defendant's conduct in selling and marketing a defective product, which by virtue of its inherent chemical composition would prematurely discolor, fade, chalk, and result in loss scratch and stain resistance, loss of appearance durability, and degrade under all normal conditions and natural, outdoor exposure, while failing to honor its obligations to repair or replace decking with these conditions, is a breach of Defendant's obligation of good faith and fair dealing.

229.    Defendant knew or should have known that AZEK PVC decking had the aforesaid properties and was defective, un-merchantable, and unfit for its intended use or purpose.

230.    Defendant had reasonable and adequate notice of Plaintiffs and the Classes' claims for breach of express and implied warranty of merchantability, and Defendant has failed to cure those claims.

231.    Defendant acted intentionally and in bad faith to frustrate the benefits owed to Plaintiffs and the Classes, despite a duty to refrain from doing so.

232.    At the time that Defendant made its express warranties regarding AZEK PVC decking, Defendant knew that its AZEK PVC decking would degrade when exposed to sunlight and heat and that the product was defective for all outdoor use.

233.    Nonetheless, Defendant continued to place the defective products on the market and made representations to Plaintiffs, the Classes, and the public that the product was durable in appearance and performance.  While doing so, Defendant actively concealed information about the defects from Plaintiffs and the Classes.

234.    Defendant's conduct unfairly frustrated the purpose of its warranty and disappointed the reasonable expectations of Plaintiffs and Class Members concerning the warranty on their decking, thereby depriving them of the benefits of Defendant's warranty.  As such, Defendant failed to deal fairly and in good faith with Plaintiffs and Class Members and caused damage to Plaintiffs and the Classes.

235.    Plaintiffs and members of the Classes are entitled to the full remedies provided under the law or in equity.

**COUNT IV**
**VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. §§ 56:8-1, *et seq.***
**(On Behalf of Plaintiffs Beucler and Esposito and**
**the New Jersey Statutory Consumer Fraud Class)**

236.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

237.    This claim is brought by Plaintiffs Beucler and Esposito on behalf of themselves and the New Jersey Statutory Consumer Fraud Class.

238.    Plaintiffs Beucler and Esposito, and all other members of the New Jersey Class, and Defendant are "persons" within the meaning of the New Jersey Consumer Fraud Act N.J.S.A. §§ 56:8-1, *et seq*. ("CFA").

239.    Plaintiffs Beucler and Esposito and all other members of the New Jersey Class are "consumers" within the meaning of the CFA.

240.    At all relevant times hereto, Defendant conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

241.    The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

242.    The conduct described above and throughout this Complaint took place within the State of New Jersey and constitutes unfair business practices in violation of the CFA.

243.    The CFA applies to the claims of all of the Class members because the conduct which constitutes violations of the CFA by Defendant occurred within the State of New Jersey.

244.    Defendant engaged in deceptive practices related to the sale of its product, including consciously making misleading representations and material omissions regarding the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

245.    Defendant made various affirmative representations concerning the appearance durability of its PVC decking which it knew to be inconsistent with the known chemical characteristics of PVC to degrade in the presence of sunlight and heat as afore described.

246.    In fact, and contrary to Defendant's representations, AZEK PVC decking does discolor, fade and chalk, and loses appearance durability, scratch and stain resistance due to photo and thermal exposure.  As a result, Defendant knew that its PVC decking would fade,

discolor, chalk and embrittle, was not low maintenance, and would not maintain its appearance, color, or stain and scratch resistance in the presence of sunlight and heat.

247.    Defendant knew that its representations about AZEK PVC decking were false, and misleading, that they omitted material facts concerning the durability of their products, and that the decking materials had chemical characteristics that made them defective when used in the outdoor applications Defendant recommended.  At the time of leaving Defendant's control, Defendant knew that AZEK PVC decking contained the defects afore described and that its products were highly susceptible to degradation in all outdoor applications.  At the time of sale, Defendant knew that its AZEK PVC decking did not have the appearance and performance durability characteristics that it represented to consumers, and that its effectiveness and performance rendered it unable to perform the ordinary purposes for which it was used.

248.    Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning their decking product. Defendant was in a superior position to know, and actually did know, the true facts about the inherent defects of AZEK PVC decking and the known consequences to and reasonable expectations of consumers with respect to the appearance durability of their product.

249.    Defendant intended that Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the product, so that Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class would purchase the defective decking product.

250.   Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class did, in fact, rely on the acts of deception, concealment, omissions, and misrepresentations regarding the nature of the decking material.

251.   Had Defendant disclosed all the material information regarding AZEK PVC decking to Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class, they would have considered those facts material to their decision to purchase Defendant's decking products at the price for which they were charged.

252.   As a direct and proximate cause of the violation of the CFA, described above, Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class have been injured in that they have purchased AZEK PVC decking based on nondisclosure of material facts alleged above.

253.   Defendant used unfair methods of competition and unfair or deceptive acts or practices in conducting their business.  This conduct, which is continuing, constitutes fraud within meaning of the CFA.

254.   Defendant's actions in connection with the manufacturing and distributing of AZEK PVC decking as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the CFA.

255.   Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of consumer fraud.

256.   The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class to suffer an ascertainable loss in the form of the

difference in value with respect to what was promised, decking that did not rot, scratch, stain or fade, and what they received, defective decking products that, contrary to Defendant's representations, do prematurely rot, scratch, stain or fade.  Plaintiffs Beucler and Esposito and other members of the New Jersey Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

<div align="center">

**COUNT V**
**VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT**
**CAL. CIV. CODE § 1750 *et seq*.**
**(On Behalf of Plaintiff Solo and the California Statutory Consumer Fraud Class)**

</div>

257.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

258.    This claim is brought by Plaintiff Solo on behalf of himself and the California Statutory Consumer Fraud Class.

259.    This cause of action is brought pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "CLRA").

260.    Plaintiff is a consumer as defined by the CLRA.

261.    Defendant is a supplier or seller as defined by the CLRA.

262.    The AZEK Decking that Plaintiff and other members of the California Statutory Consumer Fraud Class purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

263.    Defendant's conduct described herein involves consumer transactions as defined in CLRA.

264.    Plaintiff is given the right to bring the suit himself under Cal. Civ. Code § 1780 and on behalf of the California Statutory Consumer Fraud Class under Cal. Civ. Code § 1781.

265.    Defendant has engaged in deceptive practices, unlawful methods of competition, and or unfair acts as defined by Civ. Code § 1750, *et seq.* to the detriment of the Plaintiff, members of the general public and the California Statutory Consumer Fraud Class.  Plaintiff, the general public and members of the California Statutory Consumer Fraud Class have suffered harm as a proximate result of the wrongful conduct of Defendant as alleged herein.

266.    Defendant intentionally, knowingly and unlawfully perpetrated a harm upon Plaintiff and members of the California Statutory Consumer Fraud class by the above-described facts.

267.    Cal. Civ. Code § 1770(a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."  Defendant violated this provision by failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

268.    Defendant is in a position to actually know, or should know, that its various affirmative representations concerning the appearance durability of its PVC decking were inconsistent with the known chemical characteristics of PVC to degrade in the presence of sunlight and heat as afore described.

269.    Cal. Civ. Code § 1770(a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular, standard, quality, or grade or that goods are of a particular style or model, if they are another."  Defendant violated this provision by failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

270.     Cal. Civ. Code § 1770(a)(9) prohibits one who is involved in a transaction from "[a]dvertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

271.     Defendant violated the CLRA by engaging in the practices proscribed by the California Consumer Legal Remedies Act, § 1770(a) and in consumer transactions with the Plaintiff and the California Statutory Consumer Fraud Class, which were intended to result in, and did result in the sale of AZEK Decking to the Plaintiff and the California Statutory Consumer Fraud Class.

272.     Defendant's policies and practices are unlawful, unethical, oppressive, fraudulent and malicious.  The gravity of the harm to all consumers and to the general public from Defendant's policies and practices far outweighs any purported utility those policies and practices have.

273.     Pursuant to CLRA § 1780 (a), Plaintiff seeks an order enjoining Defendant from engaging in the methods, acts, or practices alleged herein.

274.     Pursuant to CLRA § 1782, if Defendant does not rectify its conduct within 30 days, Plaintiff intends to amend this Complaint to add claims for:

(a)     Actual damages;

(b)     Restitution of money to Plaintiff, the Class members and the general public;

(c)     Punitive damages;

(d)     Attorneys' fees and costs; and

(e)     Other relief that this Court deems proper.

## COUNT VI
### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW,
### BUSINESS AND PROFESSIONS
### CODE SECTIONS 17500, *ET SEQ.*
**(On Behalf of Plaintiff Solo and the California Statutory Consumer Fraud Class)**

275. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

276. Plaintiff Solo asserts this claim individually and on behalf of the California Statutory Consumer Fraud Class.

277. The California False Advertising Law, Cal. Bus. & Prof. Code § 17500 makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, . . . any statement concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

278. Throughout the Class Period, Defendant committed acts of false advertising as defined by Cal. Bus. & Prof. Code § 17500, by failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

279. Defendant's deceptive omissions were likely to deceive reasonable consumers and the public as it deceptively represented the quality and nature of AZEK Decking.

280. Defendant, knew or reasonably should have known, that it was deceptively omitting material information.

281. Plaintiff and the California Statutory Consumer Fraud Class are entitled to injunctive and equitable relief and restitution.

282. Plaintiff and the California Statutory Consumer Fraud Class would not have purchased AZEK Decking had they known about the deceptive omissions discussed above.

## COUNT VII
**VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT, CONNECTICUT GENERAL STATUTES, § § 42-110a, *et seq*.**
**(On Behalf of Plaintiff Wayne and the Connecticut Statutory Consumer Fraud Class)**

283. Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

284. This claim is brought by Plaintiff Wayne on behalf of himself and the Connecticut Statutory Consumer Fraud Class.

285. Defendant's actions alleged herein were carried out in the conduct of its primary business described above, which includes "the offering for sale . . . [of a] commodity or thing of value in this state." Conn. Gen. Stat. § 42-110(a)(4). Thus, Defendant's actions occurred "in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110(b)(a).

286. Defendant's actions alleged herein violated the Connecticut Unfair Trade Practices Act ("CUTPA") in that they constituted unfair acts and/or deceptive practices prohibited by CUPTA. Defendant has engaged in deceptive practices related to the sale of its product, including consciously making misleading representations and material omissions regarding the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

287. Defendant is in a position to actually know, or should know, that its various affirmative representations concerning the appearance durability of its PVC decking were inconsistent with the known chemical characteristics of PVC to degrade in the presence of sunlight and heat as afore described.

288.     Thus, Defendant's acts and/or practices as alleged herein were unfair and/or deceptive, in part, because:

(a)     They violate Conn. Agencies Regs. § 42-110b-18**,** which prohibits false advertising in that Defendant made untrue and misleading statements relating to AZEK Decking, made with intent to induce consumers to purchase AZEK Decking, regarding which statements Defendant knew, or which by the exercise of reasonable care should have known, to be untrue and misleading;

(b)     They offended public policy or within at least the penumbra of common laws or statutes and/or other established concepts of unfairness, were immoral, unethical, oppressive or unscrupulous; and /or

(c)     They were done with a reckless indifference to the rights of Plaintiff Wayne and the other members of the Connecticut Statutory Consumer Fraud Class or were an intentional and wanton violation of those rights.

289.     Plaintiff Wayne and the other members of the Connecticut Statutory Consumer Fraud Class suffered ascertainable loss of money or property as a result of Defendant's unfair acts/or deceptive practices.  Specifically, Plaintiff Wayne and the other Connecticut Statutory Consumer Fraud Class members suffered injury as a result of Defendant's false advertising because they were induced to purchase and or paid a price premium due to the misleading advertising, marketing, packaging, labeling and other promotion of AZEK Decking.

290.     Because of Defendant's false advertising, Plaintiff Wayne and the other members of the Connecticut Statutory Consumer Fraud Class did not receive what they bargained for.

Defendant's conduct is the sole proximate cause of the harm suffered by Plaintiff Wayne and the other members of the Connecticut Statutory Consumer Fraud Class.

291.    Upon the filing of the CAC, Plaintiff Wayne mailed a copy of the complaint to the Connecticut Attorney General and the Connecticut Commissioner of Consumer Protection.

**COUNT VIII**
**VIOLATION OF DELAWARE'S CONSUMER FRAUD ACT,**
**6 DEL. C. §§ 2511-27, 2580-84**
**(On Behalf of Plaintiff Mayhew and the Delaware Statutory Consumer Fraud Class)**

292.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

293.    This claim is brought by Plaintiff Mayhew on behalf of himself and the Delaware Statutory Consumer Fraud Class.

294.    Plaintiff Mayhew and all other members of the Delaware Statutory Consumer Fraud Class are "persons" as defined by 6 Del. C. § 2511(7).

295.    Each Defendant is a "person" within the meaning of 6 Del. C. § 2511(7).

296.    AZEK Decking is "merchandise" within the meaning of 6 Del. C. § 2511(6).

297.    AZEK Decking is, and has been, the subject of "advertisement" and "sale" within the meaning of 6 Del. C. § 2511(1) & (8).

298.    The Delaware Consumer Fraud Act is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory scheme.

299.    The Delaware Consumer Fraud Act applies to the claims of all of the Delaware Statutory Consumer Fraud Class members because the conduct which constitutes violations of the Delaware Consumer Fraud Act by Defendant occurred "in the conduct of any trade or commerce in part or wholly within this State" under the Delaware Consumer Fraud Act as at

least some of the deceiving conduct that violates 6 Del. C. § 2513 originated, arose, was directed, an emanated from Delaware.

300.    Defendant is violating and has been violating the Delaware Consumer Fraud Act's prohibition against "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease or advertisement of any merchandise . . . ."  6 Del. C. § 2513.

301.    Defendant violated the Delaware Consumer Fraud Act's proscription against the act, use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of material fact by, *inter alia,* consciously making misleading representations and material omissions regarding the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

302.    Defendant made various affirmative representations concerning the appearance durability of its PVC decking which it knew to be inconsistent with the known chemical characteristics of polyvinylchloride to degrade in the presence of sunlight and heat as described above.

303.    In fact, and contrary to Defendant's representations, AZEK PVC decking does discolor, fade and chalk, and loses appearance durability, scratch and stain resistance due to photo and thermal exposure.  As a result, Defendant knew that its PVC decking would fade, discolor, chalk and embrittle, was not low maintenance, and would not maintain its appearance, color, and was not stain and scratch resistant in the presence of sunlight and heat.

304.    Defendant knew that its representations about AZEK decking were false, and misleading, that it omitted material facts concerning the durability of its products, and that the

decking materials had chemical characteristics that made them defective when used in the outdoor applications Defendant recommended.  At the time of leaving Defendant's control, Defendant knew that AZEK decking contained the defects afore described and that its products were highly susceptible to degradation in all outdoor applications.  At the time of sale, Defendant knew that its PVC decking did not have the appearance and performance durability characteristics it represented to consumers, and that its effectiveness and performance rendered it unable to perform the ordinary purposes for which it was used.

305.    Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning their decking product. Defendant was in a superior position to know, and actually did know, the true facts about the inherent defects of AZEK PVC decking and the known consequences to and reasonable expectations of consumers with respect to the appearance durability of its product.

306.    Defendant intended that Plaintiff Mayhew and the other members of the Delaware Statutory Consumer Fraud Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the product, so that Plaintiff Mayhew and other members of the Delaware Statutory Consumer Fraud Class would purchase the defective decking product.

307.    Had Defendant disclosed all the material information regarding AZEK decking to Plaintiff Mayhew and other members of the Delaware Statutory Consumer Fraud Class, they would have considered those facts material to their decision to purchase Defendant's decking products at the price at which they were charged.

308.    As a direct and proximate cause of the violation of the Delaware Consumer Fraud Act, described above, Plaintiff Mayhew and other members of the Delaware Statutory Consumer

Fraud Class have been injured in that they have purchased AZEK PVC decking based on nondisclosure of material facts alleged above.

309.   Defendant used unfair methods of competition and unfair or deceptive acts or practices in conducting its business.  This conduct, which is continuing, constitutes fraud within meaning of the CFA.

310.   Defendant's actions in connection with the manufacturing and distributing of AZEK decking as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unfair or deceptive commercial practices, in violation of the Delaware Consumer Fraud Act 6 Del. C. §§ 2511-27, 2580-84.

311.   Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of consumer fraud.  The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff Mayhew and other members of the Delaware Statutory Consumer Fraud Class to suffer an ascertainable loss in the form of monies paid to Defendant for defective decking products that, contrary to Defendant's representation, do prematurely rot, scratch, stain or fade.  Plaintiff Mayhew and other members of the Delaware Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

312.   Elderly or disabled members of the Delaware Statutory Consumer Fraud Class are entitled to a civil penalty of $10,000, court costs, attorneys' fees, and treble damages for each violation of the Delaware Consumer Fraud Act.  6 Del. C. § 2581, 2583.

<u>COUNT IX</u>
**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE
PRACTICES ACT ("FDUTPA") - F.S. §§ 501.201, *et seq.*
(On Behalf of Plaintiffs Edmonds and Dalpiaz
and the Florida Statutory Consumer Fraud Class)**

313.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

314.    This claim is brought by Plaintiffs Edmonds and Dalpiaz on behalf of themselves and the Florida Statutory Consumer Fraud Class.

315.    Plaintiffs and all other members of the Florida Statutory Consumer Fraud Class are "consumers" within the meaning of FDUPTA.

316.    At all relevant times hereto, Defendant engaged in "trade or commerce" in Florida and elsewhere within the meaning of the FDUPTA.

317.    The FDUPTA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

318.    The conduct described above and throughout this Complaint took place within the State of Florida and constitutes unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Florida's Deceptive and Unfair Trade Practices Act, F.S. § 501.201 et seq.

319.    The FDUPTA applies to the claims of the Florida Statutory Consumer Fraud Class because the above described violations of FDUPTA occurred within the State of Florida.

320.    Defendant engaged in deceptive practices related to the sale of its product, including consciously failing to disclose material facts regarding the defective AZEK PVC decking to Plaintiffs and members of the Florida Statutory Consumer Fraud Class.  Defendant

also engaged in deceptive practices by misrepresenting to Plaintiffs and the Florida Statutory Consumer Fraud Class the nature of the appearance durability of its product.

321.    Defendant omitted and concealed material facts from their communications and disclosures to Plaintiffs and all members of the Florida Statutory Consumer Fraud Class regarding the defects inherent in the decking and the need to conduct re-surfacing maintenance on the decking.

322.    Defendant made false or misleading statements or omissions of material fact regarding the decking, which statements or omissions were likely to mislead a reasonable consumer to his or her detriment.

323.    Defendant knew, or was reckless in not knowing, that its statements or omissions regarding the decking were false or misleading.

324.    In fact, and contrary to Defendant's representations, AZEK PVC decking does discolor, fade, stain, scratch, and degrade when exposed to sunlight and heat.

325.    Defendant either knew or should have known that AZEK PVC decking was defectively designed or manufactured.

326.    Defendant knew or should have known that AZEK PVC decking, at the time of leaving Defendant's control, contained a defect because it  photo degraded with outdoor exposure, the normal application for which it was intended. At the time of sale, AZEK PVC decking contained design and construction defects that resulted in chemical degradation. The defects reduced the effectiveness and appearance durability AZEK PVC decking.  Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning its decking product.

327.    Defendant was in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK PVC decking.

328.    Had Defendant disclosed all the material information regarding AZEK PVC decking to Plaintiffs and members of the Florida Statutory Consumer Fraud Class, they would have considered the omitted information material to their decision to purchase Defendant's products at the price charged for them.

329.    As a direct and proximate cause of the violation of FDUPTA, described above, Plaintiffs and members of the Florida Statutory Consumer Fraud Class have suffered losses and been aggrieved in that they have purchased AZEK PVC decking that was defective and did not contain the characteristics and qualities Defendant represented that it had or was a condition that a reasonable consumer would not have expected.

330.    Defendant committed unfair acts or practices in conducting its business in that in marketing and selling its decking in Florida, Defendant's conduct caused or was likely to cause substantial injury to consumers that was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition; or Defendant's conduct offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

331.    Defendant's actions in connection with the manufacturing and distributing of AZEK PVC decking as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable practices, in violation of the State of Florida's Deceptive and Unfair Trade Practices Act, F.S. § 501.201, *et seq.*.

332.    The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiffs and other members of the Florida Statutory Consumer

Fraud Class to suffer an ascertainable loss in the form of monies paid to Defendant for defective decking products that, contrary to Defendant's representations, do prematurely rot, scratch, stain, spot or fade.  Plaintiffs and the Florida Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.  The foregoing conduct and violations of FDUTPA are continuing.

<div align="center">

**COUNT X**
**VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION ACT**
**M.G.L.A. 93A § 1, et seq.**
**(On Behalf of Plaintiffs Marino and Merriam and**
**the Massachusetts Statutory Consumer Fraud Class)**

</div>

333.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

334.    This claim is brought by Plaintiffs Marino and Merriam on behalf of themselves and the Massachusetts Statutory Consumer Fraud Class.

335.    M.G.L. c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  M.G.L. c. 93A, § 9 permits any consumer injured by a violation M.G.L. c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

336.    Plaintiffs Marino and Merriam allege that Defendant engaged in unfair and deceptive acts and/or practices in violation of M.G.L. § 93A, §§ 2 and 9.

337.    Defendant's unfair and deceptive scheme to mislead consumers comprised numerous unfair and deceptive acts or practices, including, but not limited to making uniform misrepresentations and omissions regarding the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

<div align="center">

69

</div>

338.    Defendant's misrepresentations and omissions were made to Plaintiffs Marino and Merriam and other members of the Massachusetts Statutory Consumer Fraud Class, by means of advertising, marketing and other promotional materials.

339.    Defendant is in a position to actually know, or should know, that its various affirmative representations concerning the appearance durability of its PVC decking were inconsistent with the known chemical characteristics of PVC to degrade in the presence of sunlight and heat as afore described.

340.    Defendant's acts and practices also violate 940 C.M.R. 3.05 M.G.L. c. 94 § 187, M.G.L. c. 106, § 2-313 and M.G.L. c. 106 § 2-314 and, as such, are unfair and deceptive in violation of M.G.L. c. 93A, § 2.

341.    Pursuant to M.G.L. c. 93A, § 9, Plaintiffs Marino and Merriam, on behalf of themselves and members of the Massachusetts Statutory Consumer Fraud Class, seek an order of this Court:

> (a)    Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to its promoting, marketing and advertising of AZEK Decking in the manner set forth in detail above; and

> (b)    Disgorging and restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

342.    Plaintiffs Marino and Merriam are members of the Massachusetts Statutory Consumer Fraud Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

343.    The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiffs Marino and Merriam and members of the Massachusetts Statutory Consumer Fraud Class.

344.    Plaintiffs Marino and Merriam both made demands for relief, in writing, to Defendant at least thirty (30) days prior to filing this complaint, as required by M.G.L. c. 93A §

345.    Based on the foregoing, Plaintiffs Marino and Merriam and the other members of the Massachusetts Statutory Consumer Fraud Class are entitled to remedies available pursuant to M.G.L. c. 93A including, but not limited to, refunds, actual damages, or statutory damages in the amount of twenty five dollars per violation, which is greater, double or treble damages, attorneys' fees and other reasonable costs.

346.    Pursuant to M.G.L. c. 231, § 6B, Plaintiffs Marino and Merriam and other members of the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.  The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiffs Marino and Merriam and Massachusetts Statutory Consumer Fraud Class Members are entitled to interest in an amount according to proof.

<u>COUNT XI</u>
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT ("CPA")**
**MCL §§ 445.901, *et seq*.**
**(On Behalf of Plaintiff Derwich and the Michigan Statutory Consumer Fraud Class)**

347.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

348.    This claim is brought by Plaintiff Derwich on behalf of herself and the Michigan Statutory Consumer Fraud Class.

349.    Plaintiff and all other members of the Michigan Statutory Consumer Fraud Class and Defendant are "persons" within the meaning of the CPA.

71

350.    Plaintiff and all other members of the Michigan Statutory Consumer Fraud Class are "consumers" within the meaning of the CPA.

351.    At all relevant times hereto, Defendant conducted trade and commerce in Michigan and elsewhere within the meaning of the CPA.

352.    The CPA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

353.    The conduct described above and throughout the CAC took place within the State of Michigan and constitutes unfair business practices in violation of Michigan's Consumer Protection Act, MCL §§ 445.901, *et seq.*.

354.    The CPA applies to the claims of all of the Class members because the conduct which constitutes violations of the CPA by Defendant occurred within the State of Michigan.

355.    Defendant engaged in deceptive practices related to the sale of its product, including consciously failing to disclose material facts regarding the defective AZEK PVC decking to Plaintiff and members of the Michigan Statutory Consumer Fraud Class, and misrepresenting to Plaintiff and the Michigan Class the appearance durability and maintenance requirements of the AZEK PVC decking.

356.    In fact, and contrary to Defendant's representations, AZEK PVC decking degrades when exposed to sunlight and heat.

357.    Defendant knew that its representations about AZEK PVC decking were false, and that the decking materials were defectively designed or manufactured.

358.    At the time of leaving Defendant's control, Defendant knew that AZEK PVC decking contained defects because it discolors, fades, chalks, and loses appearance durability and

otherwise photo degrades under normal conditions and natural, outdoor exposure in which it is installed.

359.   Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning their decking product. Defendant was in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK PVC decking.

360.   Defendant intended that Plaintiff and other members of the Michigan Statutory Consumer Fraud Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the product, so that Plaintiff and other members of the Michigan Statutory Consumer Fraud Class would purchase the defective decking product.

361.   Plaintiff and other members of the Michigan Statutory Consumer Fraud Class did, in fact, rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the decking material.

362.   Had Defendant disclosed all the material information regarding AZEK PVC decking to Plaintiff and other members of the Michigan Statutory Consumer Fraud Class, they would have considered the omitted information material to their decision to purchase Defendant's products at the price for which it was charged.

363.   As a direct and proximate cause of the violation of the CPA, described above, Plaintiff and other members of the Michigan Statutory Consumer Fraud Class have been injured in that they have purchased AZEK PVC decking based on deceptive representations, and nondisclosure of material facts alleged above.

364.   Defendant used unfair methods of competition and unfair or deceptive acts or practices in conducting its business.  This conduct, which is continuing, constitutes fraud within meaning of the CPA.

365.   Defendant's actions in connection with the manufacturing and distributing of AZEK PVC decking as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the State of Michigan Consumer Protection Act, MCL §§ 445.901, *et seq.*

366.   Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of consumer fraud.

367.   The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff and other members of the Michigan Statutory Consumer Fraud Class to suffer an ascertainable loss in the form of monies paid to Defendant for defective decking products that, contrary to Defendant's representations, degrade when exposed to sunlight and heat.  Plaintiff and other members of the Michigan Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

<div align="center">

**COUNT XII**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(On Behalf of Plaintiff Fennell and the New York Statutory Consumer Class)**

</div>

368.   Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

369.   This claim is brought by Plaintiff Fennell on behalf of himself and the New York Statutory Consumer Fraud Class.

<div align="center">74</div>

370.   Plaintiff Fennell and all other members of the New York Class are "persons" and "consumers" under New York General Business Law § 349.

371.   Defendant engaged in deceptive practices related to the sale of their decking product, including consciously failing to disclose material facts regarding the defective AZEK PVC decking to Plaintiff and members of the Class, and misrepresenting to Plaintiff and the Class members the appearance durability characteristics of their AZEK PVC decking products.

372.   Contrary to Defendant's representations, AZEK decking photo degrades under all outdoor exposures.

373.   The deceptive acts and practices engaged in by Defendant were consumer-oriented.

374.   Defendant knew that AZEK PVC decking was defectively designed or manufactured.

375.   Defendant knew that AZEK PVC decking, at the time of leaving Defendant's control, contained a defect because it discolored, faded, chalked, and lost scratch and stain resistance, and lost appearance durability under normal conditions and natural, outdoor exposure in which it was installed. At the time of sale, AZEK decking contained design and construction defects that resulted in deterioration and loss of surface integrity. The defects reduced the effectiveness and performance of AZEK decking and rendered it unable to perform the ordinary purposes for which it was used.

376.   Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning its decking product.

377.    Defendant was in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK decking and the known chemical degradation resulting from exposure to sunlight and heat.

378.    Defendant intended that Plaintiff and members of the Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the product, so that Plaintiff and members of the Class would purchase the defective decking product.   Had Defendant disclosed all the material information regarding AZEK PVC decking to Plaintiff and members of the Class, they would have considered that information material to their decision to purchase Defendant's decking products at the price charged.

379.    These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in the state of New York.   Defendant's conduct was not a unique, one-time occurrence without possibility of replication or recurrence and without implication for the broader consuming public.   To the contrary, the deceptive conduct set forth herein is part of a regular and recurring practice that impacts all of the Class members.

380.    Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of deception.

381.    As a direct and proximate cause of the violation of NY GBL § 349, described above, Plaintiff and members of the New York Statutory Consumer Fraud Class have been injured in that they have purchased AZEK decking based on nondisclosure of material facts alleged above.

382.    As a result of Defendant's practices in violation of NY GBL § 349, Plaintiff and the other members of the Class suffered an ascertainable loss in the form of monies paid to Defendant for defective decking products that, contrary to Defendant's representations,

prematurely discolor, fade, chalk, and lose appearance durability and scratch and stain resistance. Plaintiff and the New York Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

## COUNT XIII
## VIOLATION OF PENNSYLVANIA'S UNFAIR TRADE PRACTICES
## AND CONSUMER PROTECTION LAW ("UTPCPL")
## 73 P.S. § 201-1 – 201-9.3
### (On Behalf of Plaintiff Berkowitz and the Pennsylvania Statutory Consumer Fraud Class)

383.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

384.    This claim is brought by Plaintiff Berkowitz on behalf of himself and the Pennsylvania Statutory Consumer Fraud Class.

385.    Plaintiff Berkowitz and all other members of the Pennsylvania Class are "persons" and "consumers" within the meaning of the UTPCPL.

386.    At all relevant times hereto, Defendant conducted trade and commerce in Pennsylvania and elsewhere within the meaning of the UTPCPL.

387.    The UTPCPL is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

388.    The conduct described above and throughout the CAC took place within the Commonwealth of Pennsylvania and constitutes unfair business practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 – 201-9.3.

389.    The UTPCPL applies to the claims of all of the Pennsylvania Statutory Consumer Fraud Class members because the conduct which constitutes violations of the UTPCPL by Defendant occurred within the Commonwealth of Pennsylvania.

390.    Defendant have engaged in deceptive practices related to the sale of its product, including consciously failing to disclose material facts regarding the defective AZEK PVC decking to Plaintiff and members of the Pennsylvania Statutory Consumer Fraud Class, and misrepresenting to Plaintiff and the Statutory Consumer Fraud Class Members the appearance durability of AZEK PVC decking.

391.    Defendant knew that its representations about AZEK PVC decking were false, and that the decking materials were defectively designed or manufactured.

392.    At the time of leaving Defendant's control, Defendant knew that AZEK PVC decking contained defects because it discolors, fades, chalks, and photo degrades under normal conditions and natural, outdoor exposure in which it is installed.

393.    Defendant's unconscionable conduct alleged herein included the omission and concealment of material facts and misrepresentations concerning its decking product.  Defendant was in a superior position to know, and actually did know, the true facts about the hidden defects of AZEK PVC decking.

394.    Defendant intended that Plaintiff Berkowitz and other members of the Pennsylvania Statutory Consumer Fraud Class rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the product, so that Plaintiffs Berkowitz and other members of the Pennsylvania Statutory Consumer Fraud Class would purchase the defective decking product.

395.    Plaintiff Berkowitz and other members of the Pennsylvania Class did, in fact, rely on the acts of concealment, omissions, and misrepresentations regarding the nature of the decking material.

396.    Had Defendant disclosed all the material information regarding AZEK PVC decking to Plaintiff and other members of the Pennsylvania Statutory Consumer Fraud Class, they would considered the omitted information material to their decision to purchase Defendant's decking products at the price charged.

397.    As a direct and proximate cause of the violation of the UTPCPL, described above, Plaintiffs and other members of the Pennsylvania Statutory Consumer Fraud Class have been injured in that they have purchased AZEK PVC decking based on nondisclosure of material facts alleged above.

398.    Defendant used unfair methods of competition and unfair or deceptive acts or practices in conducting its business.  This conduct, which is continuing, constitutes fraud within meaning of the UTPCPL.

399.    Defendant's actions in connection with the manufacturing and distributing of AZEK PVC decking as set forth herein evidences a lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the Commonwealth of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 – 201-9.3.

400.    Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when they committed these acts of consumer fraud.

401.    The foregoing acts, misrepresentations, omissions, and unconscionable commercial practices caused Plaintiff Berkowitz and other members of the Pennsylvania Statutory Consumer Fraud Class to suffer an ascertainable loss in the form of monies paid to Defendant for defective decking products that, contrary to Defendant's representations, do prematurely rot, scratch, stain or fade.   Plaintiff Berkowitz and other members of the

Pennsylvania Statutory Consumer Fraud Class are entitled to recover such damages and appropriate penalties (including attorneys' fees, and costs of suit) permitted under the law.

<div align="center">

**COUNT XIV**
**VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code. § 59.1-200, *et seq*.**
**(On Behalf of Plaintiff Rule and the Virginia Statutory Consumer Fraud Class)**

</div>

402.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

403.    This claim is brought by Plaintiff Rule on behalf of himself and the Virginia Statutory Consumer Fraud Class.

404.    The Virginia Consumer Protection Act ("VCPA") prohibits a supplier in connection with a consumer transaction from "misrepresenting that goods . . . have certain quantities, characteristics . . . uses, or benefits" and "misrepresenting that goods are of a particular standard, quality, grade, style . . . ." Va. Code. Ann. §§ 59.1-200A.5-6

405.    The VCPA also prohibits a supplier in connection with a consumer transaction from "[a]dvertising goods or services with intent not to sell them as advertised" and "[u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."  Va. Code. Ann. §§ 59.1-200A. 8, 14.

406.    Defendant is a "supplier" within the meaning of the VCPA.  *See* Va. Code. Ann. § 59.1-198.

407.    AZEK Decking is a "good" within the meaning of the VCPA.  *See* Va. Code. Ann. § 59.1-198.

408.    The above described actions by Defendant concern a "Consumer transaction" within the meaning of the VCPA because they involve the "advertisement, sale" "or offering for

<div align="center">80</div>

sale . . . of goods  . . . to be used primarily for personal, family, or household purposes." *See* Va. Code. Ann. § 59.1-198.

409.    Defendant violated the VCPA by engaging in the practices proscribed by Va. Code. Ann. §§ 59.1-200A.5, 6, 8, 14 and in consumer transactions with the Plaintiff and the Virginia Statutory Consumer Fraud Class, which were intended to result in, and did result in the sale of AZEK Decking to the Plaintiff and the Virginia Statutory Consumer Fraud Class.

410.    Throughout the Class Period, as described above, Defendant violated the above provisions of the VCPA by making misrepresentations and failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

411.    Throughout the Class Period, as described above, Defendant committed acts of false advertising as defined by the VCPA by failing to make disclosures relating to the inherent propensity of its PVC decking to degrade under all anticipated outdoor usage.

412.    Defendant is in a position to actually know, or should know, that its various affirmative representations and advertising concerning the appearance durability of its PVC decking were inconsistent with the known chemical characteristics of PVC to degrade in the presence of sunlight and heat as afore described.

413.    Defendant's policies and practices are unlawful, unethical, oppressive, fraudulent and malicious.  The gravity of the harm to all consumers and to the general public from Defendant's policies and practices far outweighs any purported utility those policies and practices have.

414.    Had Defendant disclosed all the material information regarding AZEK decking to Plaintiff Rule and other members of the Virginia Statutory Consumer Fraud Class, they would

have considered those facts material to their decision to purchase Defendant's decking products at the price at which they were charged.

415.    As a direct and proximate cause of the violation of the VCPA, described above, Plaintiff Rule and other members of the Virginia Statutory Consumer Fraud Class have been injured in that they have purchased AZEK PVC decking based on nondisclosure of material facts alleged above.

416.    Pursuant to Va. Code. Ann. § 59.1-204(A), Plaintiff Rule and members of the Virginia Statutory Consumer Fraud class seek statutory damages in an amount of $500 per person.  Plaintiff Rule will also seek to have this amount increased to $1,000 per person at trial upon a showing of Defendant's willful violation of the VCPA.

417.    Plaintiff Rule also requests that this Court award his costs and reasonable attorneys' fees pursuant to Va. Code. Ann § 59.1-204(B).

## COUNT XV
### DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201
### (On Behalf of Plaintiffs And All Classes Defined Herein)

418.    Plaintiffs repeat the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

419.    Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole within the meaning of Fed. R. Civ. P. 23.

420.    There is an actual controversy between Defendant, Plaintiffs, and the Classes concerning the validity of the Defendant's limitations contained in their Lifetime Limited Warranty issued by Defendant, and in particular Defendant's rejection of warranty claims related

to photo and thermal degradation of its AZEK PVC decking.  A copy of Defendant's Lifetime Limited Warranty is attached as **Exhibit A**.

421.    Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

422.    Defendant wrongfully denied warranty claims as unwarranted "aesthetic" defects despite this distinction not appearing in the warranty, and in spite of the root cause of defects being directly attributable to Defendant's use of PVC in their outdoor decking materials.

423.    Accordingly, Plaintiffs seek a declaration that the Defendant's use of PVC is a defect in material used in their AZEK decking, and covered by Defendant's Lifetime Limited Warranty.  In particular, Plaintiffs and the Classes seek the following declarations:

(a)    The Court finds that all Defendant's AZEK PVC Decking is defective in material because the polyvinylchloride used in the decking is susceptible to chemical degradation due to ultraviolet and thermal exposure, which exposure appertains to all outdoor applications of the Defendant's product.

(b)    The Court finds that Defendant knew its PVC decking products would experience photo and thermal degradation as a result of exposure to sunlight and heat, and that these exposures were highly likely to occur in all outdoor applications of their products.

(c)    The Court finds that Defendant intended the purchasers of its products to use their PVC decking for decks, boardwalks, and piers when they knew, but did not disclose that such intended uses would result in chemical

degradation of the products before the expiration of their Lifetime Limited Warranty.

(d)     The Court finds that Defendant uniformly represented to purchasers of their PVC products that their appearance was durable and long lasting when in fact Defendant knew this to be false, and knew that the appearance of their PVC products could not be restored to their pre-degradation appearance.

(e)     The Court finds that Defendant's representation that their PVC decking products would have durable and long lasting appearance characteristics and would not be subject to chemical degradation of those characteristics when used in the matter Defendant had recommended, and would not require maintenance to retain their appearance were express warranties of product characteristics and performance subject to   all the remedies otherwise provided for products defective in material and workmanship contained in Defendant's Lifetime Limited Warranty.

(f)     The Court finds that Defendant has wrongfully denied warranty benefits, under their express warranty, to purchasers and owners of AZEK PVC decking, and that all applications for warranty coverage for photo and thermal degradation are to be honored by Defendant with all appropriate warranty benefits provided to otherwise eligible warranty applicants.

(g)     The Court finds that Defendant's PVC decking products are subject to chemical degradation as a result of exposure to ultraviolet and thermal radiation and that the results of this degradation, including discoloration,

fading, chalking, loss of appearance durability and loss of scratching and staining resistance, and that no maintenance will remediate the consequences of this chemical degradation are material facts which Defendant must disclose to all persons or entities currently possessing contractual rights under Defendant's Lifetime Limited Warranty.

(h)   The Court declares that Defendant shall re-audit and reassess all prior warranty claims, including claims previously denied in whole or in part, where the denial was based upon Defendant's assertion that claims of fading, discoloration, chalking, loss of appearance durability, loss of scratch or stain resistance, or other symptoms of photo and/or thermal degradation for outdoor exposure were not warrantable "aesthetic" defects.

(i)   The Court declares that Defendant shall establish an inspection program and protocol to be communicated to all purchasers and owners of AZEK PVC decking which will require Defendant to determine whether their AZEK decking products have experienced photo or thermal degradation due to exposure to ultraviolet or thermal radiation.  All disputes over warranty coverage shall be adjudicated by a Special master appointed by the Court or agreed to by the parties.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all others similarly situated, pray for a judgment against Defendant as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), and certifying the Declaratory Relief Class defined herein;

B.      Designating Plaintiffs as representatives of the Class and their counsel as Class counsel;

C.      Entering judgment in favor or Plaintiffs and the Class and against Defendant for all compensatory, individual and class damages, and all other damages permitted by law, and for attorneys' fees and costs, including interest thereon;

D.      Compelling Defendant to establish a program to inspect, replace or replace all AZEK PVC decking that has manifest  photo or thermal degradation as a result of exposure to ultraviolet or thermal radiation;

F.      Compelling Defendant to establish a program to reimburse their warranty claims previously denied or paid in part, reimburse Plaintiffs and the Class Members who have had to pay to repair or replace defective AZEK PVC decking, or paid the cost of remediation;

G.      For each of the Declarations as afore described; and

H.      Granting such further relief as the Court deems just.

<div style="margin-left: 50%;">

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Attorneys for Plaintiffs*

</div>

Date:  April 22, 2014                    By:_____/s/ James E. Cecchi_____
                                              JAMES E. CECCHI

Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

Jonathan Shub
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
(212) 584-0700

Jamie Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
 (847) 433-4500

Charles E. Schaffer
**LEVIN, FISHBEIN SEDRAN & BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN, P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Matthew B. Weisberg
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030

Jordan Chaikin
**PARKER WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, FL 34134
 (239) 390-1000

Charles J. LaDuca
Brendan Thompson
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
(202) 789-3960

Michael McShane
**AUDET & PARTNERS, LLP**
221 Main Street, Suite 1460
San Francisco, CA  94105
(415) 568-2555

Robert K. Shelquist
**LOCKRIDGE GRINDAL
NAUEN, PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Attorneys for Plaintiffs and the Putative Classes*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Attorneys for Plaintiffs*

Date:  April 22, 2014                        By:____/s/ James E. Cecchi_____
                                                    JAMES E. CECCHI


Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW & MILLROOD,
LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

Jonathan Shub
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
(212) 584-0700

Jamie Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
Tel.: (847) 433-4500

Charles E. Schaffer
**LEVIN, FISHBEIN SEDRAN &
BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS & LEHRMAN,
P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Matthew B. Weisberg
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030

Jordan Chaikin
**PARKER WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, FL 34134
(239) 390-1000

Charles J. LaDuca
Brendan Thompson
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
(202) 789-3960

Michael McShane
**AUDET & PARTNERS, LLP**
221 Main Street, Suite 1460
San Francisco, CA  94105
(415) 568-2555

Robert K. Shelquist
**LOCKRIDGE GRINDAL**
**NAUEN, PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Attorneys for Plaintiffs and the Putative Classes*