**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:  AZEK BUILDING PRODUCTS, INC., MARKETING AND SALES PRACTICES LITIGATION | Civil Action No. 12-6627(KM)(MCA) MDL Docket No. 2506 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
<u>DEFENDANT AZEK BUILDING PRODUCTS, INC.'S MOTION TO DISMISS</u>**

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

*Liaison Counsel*

Jonathan Shub
Parvin K. Aminolroaya
SEEGER WEISS LLP
77 Water Street
New York, NY 10005
(212) 584-0700

Jamie Weiss
Richard J. Burke
COMPLEX LITIGATION GROUP LLC
513 Central Ave., Suite 300
Highland Park, IL 60035
(847) 433-4500

Harris L. Pogust
Andrew J. Sciolla
POGUST BRASLOW & MILLROOD, LLC
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

*Interim Class Counsel*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

LEGAL STANDARD.............................................................................................. 2

ARGUMENT ........................................................................................................... 2

I.      THE CAC STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY ................. 2

   A.    AZEK Breached Its Lifetime Limited Warranty.................................... 2

   B.    AZEK's Affirmations of Fact Created Express Warranties ............................4

   C.    The Exclusions and Limitations in AZEK's Lifetime Limited Warranty Are
         Unenforceable ...........................................................................................8

      1.   The Disclaimer in AZEK's Lifetime Limited Warranty Is Inoperable........................ 8

      2.   AZEK's Conduct Renders the Limitations and Exclusions in the Lifetime Limited
           Warranty Unconscionable................................................................ 9

      3.   The Limited Warranty Failed in its Essential Purpose ................................................. 11

II.     AZEK BREACHED THE IMPLIED WARRANTY OF MERCHANTABILITY ........... 12

III.    INDIVIDUAL PLAINTIFFS' WARRANTY CLAIMS ARE SOUND............................ 14

   A.    The Express Warranty Claims of the Connecticut, Maryland and New York
         Plaintiffs are not Subject to Dismissal for Lack of Privity............................14

   B.    The Implied Warranty Claims of the Florida, Michigan, and New York Plaintiffs
         Are Not Subject to Dismissal for Lack of Privity ........................................16

   C.    Plaintiffs Marino and Solo Need Not Provide Notice to Allege Valid Express
         Warranty Claims........................................................................................17

IV.     THE CAC ADEQUATELY PLEADS CONSUMER PROTECTION CLAIMS.............. 17

   A.    Plaintiffs Have Satisfied the Requirements of Rule 9(b) ................................18

   B.    No State Specific Issues Justify Dismissing Any Consumer Protection Claim ...........19

      1.   The Pennsylvania Statutory Consumer Fraud Claim is Not Barred by the Economic
           Loss Doctrine ........................................................................... 19

      2.   All Requirements under the Massachusetts Consumer Protection Statute Have Been
           Satisfied................................................................................... 22

      3.   The New Jersey Consumer Fraud Claim Is Well-Pled ................................................. 22

IV.   PLAINTIFFS ALLEGE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.......................................................................................... 24

V.   PLAINTIFFS PROPERLY SEEK DECLARATORY JUDGMENT ................................ 26

   A.   The Claim Seeking Declaratory Relief is Adequately Pled ............................................27

   B.   There is No Basis To Dismiss the Count Seeking Declaratory Relief Due to Purported Duplicity ....................................................................................................28

CONCLUSION.............................................................................................................................. 30

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                              **PAGE(S)**

*Advanced Drainage Systems, Inc. v. Siteco Materials, Inc.*,

    2014 WL 1092809 (D.N.J. March 18, 2014) ........................................................ 8

*Avram v. Samsung Electronics America, Inc.*, 2013 WL 3654090 (D.N.J. July 11, 2013)............ 5

*Balanyi v. Local 1031, International Brotherhood of Electrical Workers AFL-CIO*,

    374 F.2d 723 (7th Cir. 1967).......................................................................... 27

*Barows v. Chase Manhattan Mortgage Corp.*, 465 F. Supp. 2d 347 (D.N.J. 2006).................... 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544(2007) ................................................... 2

*Borchardt v. Mako Marine Internatinla* 2009 WL 3856678 (S.D. Fla. Nov. 17, 2009) ............... 7

*Bruffey Contracting Co., Inc.*, 522 F. Supp.  769 (D. Md. 1981) .................................... 8

*Burlington Coat Factory Securities Litigation*, 114 F.3d 1410 (3d Cir. 1997) ........................... 23

*Burnham v. Mark IV Homes, Inc.*, 441 N.E.2d 1027 (Mass. 1982)................................. 22

*Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989)................................... 9

*Cincinnati Insurance Co. v. Holbrook*, 867 F.2d 1330 (11th Cir. 1989).................................... 26

*Cipollone v. Liggett Group, Inc.*, 893 F.2d 541 (3rd Cir. 1990)

    *overruled on other grounds*, 505 U.S. 504 (1992) ...................................................... 6

*Community Programs of Westchester of Jewish Community Services v. City of Mount Vernon*,

    2007 WL 2981915 (S.D.N.Y. Oct. 9, 2007) ............................................................. 29

*Consumer Protection Corp. v. Neo-Tech News*, 2009 WL 2132694 (D. Ariz. July 16, 2009) .... 29

*Cooper v. Samsung Electonic America Inc.*, 374 F. App'x 250 (3d Cir. 2009) ........................... 3

*Davis v. Romney*, 490 F.2d 1360 (3d Cir. 1974).................................................. 27

*Dewey v. Volkswagen, AG*, 558 F. Supp. 2d 505 (D.N.J. 2008)................................... 15

*Douros v. State Farm Fire & Casuaty Co.*, 508 F. Supp. 2d 479 (E.D. Va. 2007) ..................... 28

*East Point Systems, Inc. v. Maxim*, 2014 WL 523632 (D. Conn. 2014)....................... 28

*Ebin v. Kangadis Food Inc.*, 2013 WL 6504547  (S.D.N.Y. Dec. 11, 2013) .............................. 15

*Facio v. Jones*, 929 F.2d 541 (10th Cir. 1991) ...................................................... 29

*Fleisher v. Fiber Composites, LLC*, 2012 WL 5381381 (E.D. Pa. Aug. 23, 2013)............ 5, 13, 29

*Francis E. Parker Memorial Home, Inc. v. Georgia-Pac. LLC*,

2013 WL 2177974 (D.N.J. May 20, 2013) ............................................................... 26

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ................................................ 3

*George Campbell Painting Corp. v. Tennant Co.*,

1995 WL 224410 (D.N.J. Apr. 7, 1995) ................................................................. 6

*Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275 (D.N.J. 2011) ......................... 14

*Gross v. Skylar Corp.*, 858 F. Supp. 2d 466 (W.D. Pa. 2012) ........................................... 7

*Hershey Entertainment & Resorts Co. v. Interactive Rides, Inc.*,

2005 WL 3320843 (M.D. Pa. Dec. 7, 2005) ............................................................. 26

*Hughes v. Panasonic Consumer Electonics Co.*,

2011 WL 2976839 (D.N.J. July 21, 2011) ............................................................. 14

*In re Able Laboratories Securities Litigation*,

2008 WL 1967509 (D.N.J. Mar. 24, 2008) ......................................................... 18, 23

*In re Auto. Parts Antitrust Litigation*, 2013 WL 2456584 (E.D. Mich. June 6, 2013) ................ 29

*In re Clorox Consumer Litigation* 894 F. Supp. 2d 1224 (N.D. Cal. 2012) ............................. 7

*In re Ford Motor Co. E-350 Van Products Liability Litigation*, *(No. II)*, 2008 WL 2813788
(D.N.J. July 9, 2010) ................................................................................. 17

*In re Hardieplank Fiber Cement Siding Litigation*, 2013 WL 3717743 (D. Minn. July 15, 2013) ... 28

*In re HP Inkjet Printer Litigation*, 2006 WL 563048 (N.D. Cal. Mar. 7, 2006) ....................... 17

*In re Rockefeller Center Properties, Inc. Securities Litigations*,

311 F.3d 198 (3d Cir. 2002) ......................................................................... 18

*In re Swinton*, 287 B.R. 634 (W.D. Pa. 2003) ........................................................ 21

*Jaskey Financial & Leasing v. Display Data Corp.*, 564 F. Supp. 160 (E.D. Pa. 1983) ................ 8

*Lady Di Fishing Team, LLC v. Brunswick Corp.*,

2007 WL 3202715 (M.D. Fla. Oct. 29, 2007) .......................................................... 15

*Lewis v. Bank of America NA*, 2013 WL 7118066 (C.D. Cal. Dec. 18, 2013) ......................... 29

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818 (3d Cir. 1999) .................... 5, 7

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529 (D.N.J. 2011) ....... 12

*Lowe's Home Centers., Inc. v. LL & 127 LLC*, 147 F. App'x 516 (6th Cir. 2005) ................. 24, 26

*MacMorris v. Wyeth, Inc.*, 2005 WL 1528626 (M.D. Fl. June 27, 2005) .................................... 16

*Moulton v. LG Electronics USA, Inc.*, 2012 WL 3598760 (D.N.J. Aug. 21, 2012) ...................... 8

*O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) ...................................... 21

*Pack v. Damon Corp.*, 434 F. 3d 810 (6th Cir. 2006).................................................................... 16

*Phillips v. County of Alleghany*, 515 F.3d 224 (3d Cir. 2008) ...................................................... 2

*Public Service Commission of UTAH, v. Wycoff, Co.*, 344 U.S. 237 (1952).............................. 27

*Prier v. Steed*, 456 F.3d 1209 (10th Cir. 2006)............................................................................. 27

*Quadrini v. Sikorsky Aircraft Div.*, 505 F. Supp. 1049 (D. Conn. 1981) .................................... 15

*S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363 (9th Cir. 1978) ........................... 8

*See Pella Corp. v. Saltzman,* 606 F. 33  (7th Cir. 2010)................................................................. 30

*Semerenko v. Cendants Corp.*, 223 F.3d 165 (3d Cir. 2000)......................................................... 2

*Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825 (D.N.J. Apr. 26, 2007) ............................ 24

*Stoughton Trailers, Inc. v. Henkel Corp.*, 965 F. Supp. 1227 (W.D. Wis. 1997)........................ 20

*Tamco Corp. v. Federal Insurance Co. of New York*, 216 F. Supp. 767 (N.D. Ill. 1963) ........... 26

*Viking Yacht Co. v. Composites One LLC*, 496 F. Supp. 2d 462 (D.N.J. 2007)....................... 7, 8

*Walker Process Equipment, Inc. v. FMC Corp.*, 356 F.2d 449 (7th Cir. 1966) .......................... 26

*Weather Shield MFG, Inc., v. PGG Industries, Inc,*

 1998 WL 469913 (W.D. Wis. June 11, 1998)......................................................................... 21

*Werwinski v. Ford Motor Co.*, 286 F.3d 661 (3d Cir. 2002) ........................................... 19, 20, 21

*Young v. Travelers Insurance Co.*, 2013 WL 5308289 (D. Md. 2013) ..........................................28

## STATE CASES

*Addressograph-Multigraph Corp. v. Zink,* 239 A.2d 280 (Md. 1974) .......................................... 14

*Aikens v. Baltimore & Ohio R. Co.*, 501 A.2d 277 (Pa. Super. Ct. 1985) ................................... 20

*Beyer v. DaimlerChrysler Corp.*, 731 N.Y.S.2d 189 (App. Div. 2d Dep't 2001) ........................ 16

*Budd v. Quinlan*, 860 N.Y.S.2d 802 (Sup. Ct. N.Y. Cnty. 2008)................................................. 14

*Burnham v. Mark IV Homes, Inc.*, 441 N.E.2d 1027 (Mass. 1982).............................................. 22

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh,*

217 Cal. App. 2d 492 (1963) ............................................................................. 17

*Cox v. Sears Roebuck & Co.*, 138 N.J. 2 (1994) ....................................................... 23, 24

*Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105 (App. Div. 2005) ............................ 24

*Delta Funding Corp., v. Harris*, 189 N.J. 28 (2006) ................................................... 9

*DiCintio v. Daimler Chrysler Corp.*, 724 N.Y.S.2d (App. Div. 2d Dep't  2001)

    *rev 'd on other grounds*, 97 N.Y.2d 463 (2002) ...................................................... 16

*Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075 (Conn. 998) ........................... 20

*Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166 (Md. 1964) ........................................ 26

*Gen. Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313 (App. Div. 1987) ................. 11

*Gladden v. Cadillac Motor Car Div. Gen. Motors Corp.*, 83 N.J. 320 (1980) ...................... 5, 7, 8

*Hamon v. Digliani*, 174 A.2d 294 (Conn. 1961) ................................................... 14, 15

*Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. Ct. 2013) ................................. 20

*Latino v. Ford Motor Co.*, 526 N.E.2d 1282 (Mass. 1988) ........................................... 22

*Mexia v. Rinker Boat Co.*, 174 Cal.App.4th 1297 .................................................. 16

*Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal. App. 2d 236 (1957) .............................. 16

*Muhammed v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1 (2006) ............................. 9, 10

*Oppenheimer v. York Int'l*, 2002 WL 31409949 (Pa. Com. Pl. Oct. 25, 2002) ......................... 20

*Pro Con Inc., v. Coastal Wall Systems*,

    2004 WL 2289598 (Conn. Super. Sept. 13, 2004) ................................................ 15

*Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555 (Ch. Div. 2002) ............................. 9

*Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997) ........................................ 24

*Speedway Superamerica LLC v. Tropic Enterprises, Inc.*,

    966 So.2d 1 (Fla. Dist. Ct. App.  2007) ........................................................ 26

*Thiedmann v. Mercedes-Benz USA,* LLC, 183 N.J. 234 (2005) ....................................... 23

*Towne v. N. End Isuzu, Inc.*, 1999 WL 674140 (Mass. Super. Ct. June 21, 1999) ..................... 22

*Ulbrich v. Groth*, 78 A.3d 76 (Conn. 2013) ....................................................... 20

*Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617 (App. Div. 2002) ....................... 5, 6

<u>FEDERAL STATUTES</u>

28 U.S.C. § 2201 ..................................................................................................................7

<u>STATE STATUTES</u>

Mass. Gen. Laws ch. 93A, §9(3) .................................................................... 22

N.J.S.A. 12A:2-302 ........................................................................................ 9

N.J.S.A. 12A:2-313(1)(a)-(b) ......................................................................... 4

N.J.S.A. 12A:2-313(2) .................................................................................... 5

N.J.S.A. 12A:2-314 ........................................................................................ 12

N.J.S.A. 12A:2-316 ........................................................................................ 8

N.J.S.A. 12A:2-719(2) ....................................................................................11

<u>FEDERAL RULES</u>

Fed. R. Civ. P. 8(d) ........................................................................................ 28

Fed. R. Civ. P. 9(b) ........................................................................................ 23

Fed. R. Civ. P. 23 ........................................................................................... 29

Fed. R. Civ. P. 23(b)(2) .................................................................................. 30

## INTRODUCTION

Defendant AZEK Building Products, Inc. ("AZEK") manufactured and sold defective polyvinylchloride ("PVC") decking.   Sixteen named Plaintiffs commenced an action against AZEK seeking recovery under the laws of eleven states.   AZEK, forced to acknowledge the defect for purposes of its Rule 12 motion, moves to dismiss the Consolidated Amended Complaint ("CAC") [1] on various technical grounds, but AZEK can only support its motion by mischaracterizing Plaintiffs' factual allegations and inviting the Court to improperly draw factual inferences in its favor.   For these reasons, and the reasons below, the motion should be denied.

## STATEMENT OF FACTS

AZEK manufactures decking made out of a synthetic material called PVC.   CAC ¶ 4. AZEK markets the PVC decking as a low maintenance superior alternative to wood, designed to maintain its superior aesthetics in contrast to wood, *id.* at ¶ 5, 6, even though AZEK knew but concealed from Plaintiffs that the decking would develop stains, scratches, discoloration, chalking and streaking under normal use.  *Id.* ¶¶ 17, 60.  PVC decking is highly susceptible to photo and thermal degradation when it is exposed to sun and heat.  The photo and thermal degradation results in unsightly discoloration, staining, scratching, chalking and deterioration. The process is well known in the scientific and industrial communities, and AZEK, as an expert in PVC materials, knew it would occur.  *Id.* ¶¶ 11, 15, 59.

AZEK never disclosed the defect.  AZEK provided Plaintiffs with a Limited Warranty, and then proceeded to systematically deny warranty claims contending that the warranty covers only "performance" and not "aesthetic" issues.  *Id.* ¶ 19.  As a stop-gap measure to remedy the defect, AZEK instructed consumers to use after-market products in an attempt to re-surface the

---

[1] All references to "CAC" shall refer to Plaintiffs' Consolidated Amended Complaint, Doc. No. 90.

decking.  However, AZEK was aware that these products would not resolve the problem.  *Id*.  ¶ 23.  Plaintiffs are now left with stained, scratched and streaked decking that is a vastly different product than what they believed they were purchasing which cannot be remedied by repair or remediation.[2]

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "accept all factual allegations as true, construe the allegations in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008).  "A complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, but it 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "'Factual allegations must be enough to raise a right to relief above the speculative level,' assuming all allegations are true, even if doubtful."  *Id*.  Thus, the question is whether Plaintiffs can prove a set of facts consistent with their allegations that will entitle them to relief, not whether they will ultimately prevail.  *Semerenko v. Cendant Corp*., 223 F.3d 165, 173 (3d Cir. 2000).  AZEK fails to meet this burden.

## ARGUMENT

### I.   THE CAC STATES A CLAIM FOR BREACH OF EXPRESS WARRANTY

#### A.      AZEK Breached Its Lifetime Limited Warranty

A claim for breach of warranty is properly pled where a plaintiff alleges: (a) a contract between the parties; (b) a breach of that contract; (c) damages flowing therefrom; and (d) that the

---

[2] *Id*. at ¶¶ 78, 80, 88, 90, 96, 98, 104, 106, 112, 114, 120, 122, 127, 129, 135, 137, 143, 145, 151, 153, 156, 158, 160, 165, 167, 172, 174.

party stating the claim performed its own contractual obligations.[3]  *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  AZEK does not contest that Plaintiffs pled the existence of a valid contract between the parties or resulting damages.  AZEK contends that the Limited Warranty excluded coverage for the latent defect that existed in the decking installed in Plaintiffs' homes and, therefore, was not breached.  AZEK Deck components are warranted:

> to be free from defects in material and workmanship that (1) occur as a direct result of the manufacturing process, (ii) occur under normal use and service, (iii) occur during the warranty period and (iv) result in blistering, peeling, flaking, cracking, splitting, cupping, rotting or structural defects from termites or fungal decay.

(CAC, Exhibit A).  AZEK's central argument relies on a strained interpretation of its warranty obligations.  It contends that the language "defects in material and workmanship" limited its coverage to "manufacturing defects," and that because Plaintiffs do not allege a manufacturing defect, the Limited Warranty was not breached.  Def. Br 5.[4]  In support of its novel argument, AZEK relies on *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250 (3d Cir. 2009).  That case is not at all on point because the limited warranty in *Cooper* expressly covered only "manufacturing defects in materials and workmanship."  *Id.* at 253.  Here, however, AZEK's warranty is not limited solely to manufacturing defects.  Moreover, to accept AZEK's argument requires the Court to determine whether the use of PVC would fall within the purview of a defect in materials.  Plaintiffs believe it does, but in any event, the determination of the scope of the warranty is premature.

AZEK next contends that Plaintiffs failed to allege that they complied with their obligations under the warranty.  AZEK argues that Plaintiffs are required to plead with

---

[3] Plaintiffs cite to relevant UCC sections under New Jersey law, as there are no major differences among the individual states for breach of warranty claims.
[4] All references to "Def. Br. __" shall refer to AZEK's Motion to Dismiss Brief, Doc. No. 95-1.

specificity the factual circumstances surrounding their notification of the breach as well as AZEK's handling of the claim, including whether it inspected the deck.  Def. Br. 7-8.  The CAC alleges that most Plaintiffs provided AZEK with notice about their defect,[5] and that AZEK denied their claims.[6]  Nothing else is required.  Accordingly, Plaintiffs adequately alleged that AZEK breached the express warranty.

### B.    AZEK's Affirmations of Fact Created Express Warranties

AZEK argues that its affirmations, promises and descriptions of fact about its decking did not create an express warranty.  Def. Br. 9-12.  Express warranties are governed by Article 2 of the Uniform Commercial Code, and are created by:

> (a)    Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b)    Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c)    Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.J.S.A. 12A:2-313(1)(a)-(b).

The creation of an express warranty is not contingent upon the use of the word "warranty."  *Gladden v. Cadillac Motor Car Div. Gen. Motors Corp.*, 83 N.J. 320, 324(1980) (citing N.J.S.A. 12A:2-313(2)).  An express warranty arises where the seller makes a promise relating to a good and the promise becomes part of the basis of the bargain.  *Liberty Lincoln-*

---

[5] AZEK's statement that "Plaintiffs simply assert . . . that they notified AZEK of the problems," (Def. Br.  8) implies that it has information related to Plaintiffs' warranty claims.
[6] AZEK's argument that the latent defect in the decking was not covered under the Limited Warranty lends further support to the fact that AZEK denied all of Plaintiffs' warranty claims and that the Limited Lifetime Warranty's exclusions and limitations were unconscionable.

*Mercury, Inc. v. Ford Motor Co.*, 171 F.3d 818, 824 (3d Cir. 1999). A seller need not intend to warrant a good; a seller need only promise "that the good sold will conform to some standard which may be established by a model, a level of quality, an assurance, a description or a list of specifications." *Id.*; *see also Avram v. Samsung Elecs. Am., Inc.*, 2013 WL 3654090, at * 8 (D.N.J. July 11, 2013) ("A statement can amount to warranty . . . if it could be fairly understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or capacity relating to future performance."). Whether a given statement constitutes an express warranty is normally a question of fact for the jury.[7]

Representations in promotional materials that relate to the quality and characteristics of decking may be viewed as express warranties. In *Fleisher v. Fiber Composites, LLC*, 2012 WL 5381381, at *4 (E.D. Pa. Aug. 23, 2013), for example, the representations described the quality of the deck's finish, its ability to resist dirt buildup, moisture, and fungal growth, including: the decking has "a quality surface finish that reduces dirt and mold buildup" and "resist[s] moisture penetration and degradation from fungal rot." *Id.* Because the representations specifically described the deck's ability to resist moisture and fungal growth, the court properly concluded that these representations constituted express warranties. *Id.*

AZEK made similar affirmations, assurances, and representations of fact about its decking such that it warranted that it would conform to certain qualities and standards. AZEK represented that its decking was "designed to last beautifully,"[89] to "maintain its color,"[10] "to resist scratching," [11] stains and mold,[12] and to "look luxurious for years to come." CAC ¶ 6.[13]

---

[7] *See Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617 , 645 (App. Div. 2002) (whether a statement is "misleading presents a question of fact in most cases.")

[8] AZEK trademarked this statement, presumably because it was an integral aspect of its marketing strategy.

The representations are not exaggerations or overstatements expressed in broad, vague, or commendatory language.  By describing AZEK decking as durable, low maintenance decking that was designed to last beautifully, resist scratching, staining, fading and weathering, AZEK created express warranties. *See*, *e.g., George Campbell Painting Corp. v. Tennant Co*., 1995 WL 224410, at *3 (D.N.J. Apr. 7, 1995) (finding that "the [floor coating] system was suitable for the site," "the system would perform as represented," and "that it would 'hold up' in the future," constituted express warranties).  Nor were these representations puffery as AZEK argues.

The express warranties made by AZEK were part of the basis of the bargain.  All affirmations of fact by the seller, description of the goods, or exhibitions of samples become part of the basis of the bargain unless good reason is shown to the contrary.  *Cipollone v. Liggett Grp., Inc.*, 893 F.2d 541, 568 (3rd Cir. 1990), *overruled on other grounds,* 505 U.S. 504 (1992).  Reliance on such statements of description or quality need not be shown in order to weave them into the fabric of the agreement.[14]  *See Gladden*, 83 N.J. at 326 ("Particular reliance on such

---

[9] *See also* CAC ¶ 6 ("Strong good looks are just the beginning."); ("Sit back and enjoy the lasting beauty"); ("With stain and scratch resistance that makes life on the deck easy and a broad palette of shades to complement any exterior.  AZEK is the smart and beautiful low maintenance decking.  And with over 25 years of experience in cellular PVC manufacturing, AZEK Decking is no stranger to better performance.  Manufactured in the USA, AZEK has invested years of technical expertise to develop decking that . . . is designed to last beautifully.")

[10] *See also id.* ("Richer, Long Lasting Color;") ("WOOD AND COMPOSITES ROT, STAIN AND FADE.  AZEK DOESN'T.  AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . .  AZEK deck is the embodiment of durability.  At the end of the day all you have to do is enjoy it.") (capitalization in original).

[11] *See also id.* ¶ 54 ("With a strong, dense surface, AZEK deck resists scratching from everyday things such as lawn furniture, dog claws, and general traffic wear.")

[12] *See also id.* ¶ 6 ("[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."); ("AZEK deck surfaces resist scratching and maintain their grain better than conventional wood or composite boards."); ("Our unique cellular PVC formulation makes AZEK deck stain resistant against even stubborn stain-makers.")

[13] *See also id.* ("will stand the test of time gracefully with minimal upkeep.")

[14] In footnote 15, AZEK argues that basis of the bargain and reliance are both required elements of a breach of express warranty claim in all jurisdictions.  (Def. Br. 10 n.15).  The Official

statements of description need not be shown"). A representation is presumed to be part of the basis of the bargain "once the buyer has become aware of the affirmation of fact or promise'" and can only be rebutted by "clear affirmative proof . . . that the buyer knew that the affirmation of fact or promise was untrue." *Liberty Lincoln-Mercury, Inc.*, 171 F.3d at 825 (quotation omitted); s*ee also Viking Yacht Co.*, *v. Composites One LLC,* 496 F. Supp. 2d 462, 469 (D.N.J. 2007) (representation presumed part of basis of bargain "once the buyer has become aware of the affirmation of fact or promise").

AZEK's express warranties were part of the basis of the bargain because each of the Plaintiffs saw or heard the representations prior to purchasing and installing their decking.[15] Each of the Plaintiffs allege that they relied on the misrepresentations in purchasing and installing AZEK's decking,[16] and that such misrepresentations proximately caused their injuries.[17] Indeed, Plaintiffs would "not have purchased AZEK PVC decking at the price charged" had they known that AZEK decking did not meet these representations.[18] Such allegations are sufficient at the motion to dismiss stage.[19]

---

Comment to the section 2-313 of the U.C.C. states that "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." To the extent that a particular state requires reliance, Plaintiffs have adequately alleged it.

[15] CAC ¶¶ 9, 66, 70, 74, 78, 82, 88, 92, 96, 100, 104, 108, 112, 116, 120, 124, 127, 131, 135, 139, 143, 147, 151, 155, 158, 162, 165, 169, 172.

[16] CAC ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169.

[17] CAC ¶¶ 72, 80, 90, 98, 106, 114, 122, 130, 137, 145, 153, 160, 167, 174.

[18] CAC ¶¶ 70, 78, 88, 96, 104, 112, 120, 127, 135, 143, 151, 158, 165.

[19] AZEK's reliance on *In re Clorox Consumer Litig.,* 894 F. Supp. 2d 1224 (N.D. Cal. 2012), *Borchardt v. Mako Marine Int'l*, 2009 WL 3856678 (S.D. Fla. Nov. 17, 2009), and *Gross v. Skylar Corp.*, 858 F. Supp. 2d 466 (W.D. Pa. 2012) is misplaced. The complaints in those cases lacked facts supporting the warranty claims.

**C.**   **The Exclusions and Limitations in AZEK's Lifetime Limited Warranty Are Unenforceable**

**1.**   **The Disclaimer in AZEK's Lifetime Limited Warranty Is Inoperable**

AZEK contends a provision in its Limited Warranty disclaimed all other warranties, Def. Br. 6. However, where, as here, a warranty disclaimer is inconsistent with an express warranty it is deemed inoperative. *Gladden*, 83 N.J. at 327 (disclaimer invalid where language in document "spell[ed] out" specific undertaking with clarity and specificity). *See also* N.J.S.A. 12A:2-316. This section of the UCC is designed to protect a buyer from unexpected and unbargained for disclaimer language by denying the effect of such language when inconsistent with language of the express warranty. "The complete exclusion of express warranties is strongly disfavored in the U.C.C." *Gladden*, 83 N.J. at 330.[20] *See also Viking Yacht Co.*, 496 F. Supp. 2d at 470 (otherwise enforceable disclaimer may be inoperable if unreasonably inconsistent with an express warranty).

AZEK provided numerous express warranties about its decking and then attempted to disclaim them through a provision in its Limited Warranty. The inconsistency renders the disclaimer inoperable and the express warranties actionable.

---

[20] AZEK claims that the integration clause disclaimed the express warranties, but cited three cases involving negotiated agreements between sophisticated commercial parties. *See Jaskey Fin. & Leasing v. Display Data Corp.*, 564 F. Supp. 160, 164 (E.D. Pa. 1983); *Advanced Drainage Sys., Inc. v. Siteco Materials, Inc.*, 2014 WL 1092809, at *4 (D.N.J. March 18, 2014); *Bruffey Contracting Co., Inc.*, 522 F. Supp. 769, 772 (D. Md. 1981); *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1371 (9th Cir. 1978). The only consumer case, *Moulton v. LG Elecs. USA, Inc.*, 2012 WL 3598760, at *2 (D.N.J. Aug. 21, 2012), was dismissed because the warranty expired. Indeed, AZEK concedes it was unable to find any cases where a prior product advertisement or representation was disclaimed. (Def. Br. 9 n.14).

2.   **AZEK's Conduct Renders the Limitations and Exclusions in the Lifetime Limited Warranty Unconscionable**

The language in the Lifetime Limited Warranty that AZEK contends disclaims all other warranties and limits the remedies for the defective decking is unconscionable.[21]  Section 2-302 of the Uniform Commercial Code provides that "[i]f [a] court as a matter of law finds [a] contract or any clause of [a] contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." N.J.S.A. 12A:2–302.  Although "unconscionability" is a question of law for the court, it "should but rarely be determined on the bare-bones pleadings." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 292 (4th Cir. 1989).  A district court is only equipped to make such determinations after plaintiffs have had an opportunity to present evidence that "they had no 'meaningful choice' but to accept the limited warranties, or that the durational limitations 'unreasonably' favored the defendants." *Id.* Such a determination is considered on a case-by-case basis by examining two factors:  (a) unfairness in the formation of the contract, or procedural unconscionability, and (b) excessively disproportionate terms, or substantive unconscionability.  *Sitogum Holdings, Inc. v. Ropes,* 352 N.J. Super. 555, 564 (Ch. Div. 2002).[22]

---

[21] AZEK does not address unconscionability in its Motion to Dismiss Brief.

[22] Courts give extra scrutiny to preprinted contracts or contracts of adhesion.  *Delta Funding Corp., v. Harris*, 189 N.J. 28 , 40 ( 2006), because all contracts of adhesion, contain some degree of procedural unconscionability.  *Muhammed, v. Cnty. Bank of Rehoboth Beach, Del.*, 189 N.J. 1, 15 (2006).  Factors relevant to the determination of unconscionability include:  (a) the subject matter of the contract, (b) the parties' bargaining positions, (c) the degree of economic compulsion motivating the "adhering" party; and, (d) the public interest affected by the contract. *Id.* at 15-16.

-9-

The exclusions and limitations in the Limited Warranty are unconscionable.  AZEK manufactured decking with a latent defect that caused the decking to develop ugly staining, scratching, chalking, deterioration and discoloration.  The defect stemmed from the chemical composition of the PVC materials used in the decking that subjected it to thermal degradation.  CAC ¶ 11.  AZEK had "over 25 years of experience in cellular PVC manufacturing," and touted itself as an expert in the manufacture and use of PVC materials.  *Id.* ¶¶ 6, 10.  As an expert in PVC materials, it knew that PVC made the decking particularly susceptible to photo and thermal degradation, especially if exposed to sunlight or heat.  *Id.* ¶¶ 6, 10-11.  AZEK knew that its decking had a history of failures and was prone to premature wear and discoloration, yet failed to disclose this information to Plaintiffs and consumers like them.  *Id.* ¶ 62.

AZEK expressly warranted the contrary was true.  It represented to consumers that outdoor application in direct sunlight constituted appropriate use of their PVC decking and that they could reasonably expect that outdoor usage in direct sunlight would not result in the degradation of their decks, porches, and docks.  *Id.* ¶ 12.  AZEK marketed the decking as beautiful, long-lasting and durable, and expressly warranted that the decking would be beautiful for years to come.  *Id.* ¶¶ 5, 6, 8, 10, 12.  It used these representations to justify the premium price it charged for the decking.  *Id.* ¶ 7.

AZEK provided Plaintiffs with a Lifetime Limited Warranty that it now claims excluded coverage for the damage caused by the latent defect it knew existed at the time of the sale. [23]

---

[23] *See* Def. Br. 5 (("Plaintiffs' complaints in this case center on alleged *discoloration*, which is an issue not included within the warranty coverage); *see id.* at 6 ("Plaintiffs are charging AZEK with selling a product that, due to the intrinsic characteristics of PVC, cannot stand up to its intended use.  Those are classic design defect allegations, and they are therefore not covered under the Lifetime Limited Warranty's guarantee against defects in material and workmanship.")

AZEK has refused to provide coverage under its Lifetime Limited Warranty, claiming that it only covers "performance" and not aesthetic damages or defects. *Id*. ¶ 19.

AZEK's conduct renders the Lifetime Limited Warranty's exclusions and limitations unconscionable. It knew that a latent defect would result in damage that would render the decking an eye-sore, but deceptively marketed, warranted and sold its product. It also abused its superior knowledge and position by imposing upon Plaintiffs a Lifetime Limited Warranty, which AZEK now contends disclaimed all warranties relating to the quality of its decking, all design defects based upon the use of the PVC materials, and all damage due to the manifestation of the defect that rendered the decking unfit for its ordinary purpose  Plaintiffs received a Lifetime Limited Warranty, but, according to AZEK, the Lifetime Limited Warranty was drafted to deprive them of a remedy. The effect of the limitations and exclusions in the Lifetime Limited Warranty deprive Plaintiffs of the substantial benefits of the contract and are, therefore, unconscionable.

### 3.    The Limited Warranty Failed in its Essential Purpose

Alternatively, AZEK's Limited Warranty failed in its essential purpose. "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act." N.J.S.A. 12A:2-719(2). When the seller is either unwilling or unable to conform the goods to the contract, the remedy by way of the limited warranty does not suffice and fails of its essential purpose. *Gen. Motors Acceptance Corp. v. Jankowitz*, 216 N.J. Super. 313, 329 (App. Div. 1987). The CAC alleges AZEK was unwilling to honor its obligations under its Limited Warranty, and these allegations are supported by AZEK's argument that its Limited Warranty excluded such defects and resulting damage. Because it refused to honor its obligations under the Limited Warranty, it failed in its essential purpose.

## II.      AZEK BREACHED THE IMPLIED WARRANTY OF MERCHANTABILITY

The implied warranty of merchantability requires goods to (a) pass without objection in the trade under the contract description; (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; (d) are adequately contained, packaged, and labeled as the agreement may require; and (e) conform to the promises or affirmations of fact made on the container or label if any."  N.J.S.A. § 12A:2-314.  The requirement that the goods sold are fit for the ordinary purposes for which such goods are used, "does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality."  In other words, "merchantability is defined as the product sold 'should be of the general kind described and reasonably fit for the general purpose for which it should have been sold.'" *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 542 (D.N.J. 2011) (internal quotations and citations omitted).  A good is unfit for its ordinary purpose when "one of three general types of defects exists: manufacturing defects, design defects, and failure to give the buyer proper instructions with respect to the goods."  *Id*.

AZEK argues that the decking was reasonably fit for the general purpose by reasoning that the essential function of the deck is to use it as an outdoor surface.  This argument ignores its marketing strategy that the general purpose of its decks was to enhance the appearance of Plaintiffs' homes.  AZEK lured Plaintiffs into purchasing its decking products via print material and videos that touted its decking as low maintenance, scratch resistant and beautiful.  The low maintenance aspect of the decking was the reason that AZEK charged, and Plaintiffs paid, a premium price for the decking.  CAC ¶ 7.  If Plaintiffs did not want an aesthetically pleasing deck, or if they only wanted a high maintenance, scratched, discolored structure extending from

their homes, they would have purchased wood decking for a lesser price.[24]  Plaintiffs purchased a product for the general purpose of enhancing the beauty of their homes, but received a defective product that developed unsightly discoloration, fading, chalking, scratching, stains and degradation under normal conditions.  As such, the decking was not merchantable.

Decking that developed mold and dark spotting was found to be unmerchantable in *Fleisher*, 2012 WL 5381381, at *4.  The plaintiffs there argued that the ordinary purpose for the decking was to be aesthetically pleasing, and because the decking developed mold and dark spotting, it was unmerchantable.  In finding that one of the ordinary uses of outdoor decking is to enhance the beauty of one's home, the court stated:

> The FAC alleges that Fiber 'marketed, promoted and sold Portico products to increase the aesthetic appeal, as well as to enhance the outdoor enjoyment, of a consumer's properties.'  We agree with Plaintiffs . . . that the ordinary use of outdoor decking material, and the use for which Fiber intended Portico, is in part to "increase the aesthetic appeal" and "enhance the outdoor enjoyment" of Plaintiffs' residential properties.  Thus, the FAC adequately alleges that under the warranty of merchantability, the minimum quality required of Portico is one which the consumer expects to satisfy a certain aesthetic expectation.  The FAC alleges that Fiber breached this warranty by selling a defective product that develops ugly and irremediable dark spotting.  Therefore, we conclude that the FAC has adequately pled a claim for breach of the implied warranty of merchantability.

*Id.* at *7.

As in *Fleisher*, AZEK breached the implied warranty of merchantability.  AZEK sold a product intended to enhance the outdoor appearance of Plaintiffs' homes, with a known latent defect that resulted in the product developing ugly and irremediable discoloration, fading,

---

[24]  According to AZEK, "WOOD AND COMPOSITES ROT, STAIN AND FADE.  AZEK DOESN'T."  CAC ¶ 6.

chalking, scratching, stains and degradation.   Thus, the CAC adequately alleges a claim for breach of implied warranty of merchantability.[25]

## III.   INDIVIDUAL PLAINTIFFS' WARRANTY CLAIMS ARE SOUND

### A.   The Express Warranty Claims of the Connecticut, Maryland and New York Plaintiffs are not Subject to Dismissal for Lack of Privity

AZEK argues that privity is required for certain Plaintiffs' breach of express warranty claims.   Def. Br. 17-18.   Plaintiffs Murdoch (Maryland), Wayne (Connecticut), and Fennell (New York) did not purchase decking directly from AZEK but rather, through its distributors. Privity is not a bar to Plaintiffs' claims, because Maryland, Connecticut, and New York relax the privity requirement where a manufacturer expressly warrants a product to a consumer and has continuing dealings with them.   *See*, *e.g.*, *Addressograph-Multigraph Corp*. *v*. *Zink*, 239 A.2d 280, 280-81 (Md. 1974) (breach of express warranty claim upheld where defendant serviced the product at issue, delivered warranty to the plaintiff, and plaintiff "was led to believe that he could rely on the warranty");   *Budd v. Quinlan*, 860 N.Y.S.2d 802 (Sup. Ct. N.Y. Cnty.  2008) (privity satisfied when the defendant is "in business" with buyer's immediate authorized dealer); *Hamon v. Digliani*, 174 A.2d 294 (Conn. 1961) (when a defendant puts a commodity for personal use on

---

[25] The cases relied upon by AZEK do not allege a design defect affecting the ordinary purpose of the product.  *Lieberson* challenged a label on baby wash that claimed to aid a baby's sleep.  The ordinary purpose of baby wash is to wash a baby; the complaint did not allege that it was a different purpose or that it was defective.  865 F. Supp. 2d at 543; *see also Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 283 (D.N.J. 2011)(holding that the ordinary purpose of a coffee maker is to brew coffee; the plaintiffs did not allege that the coffee maker did not brew coffee); *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *23 (D.N.J. July 21, 2011) (The ordinary purpose of a television is to watch television; the plaintiffs did not allege that they were unable to watch television.)

the market and the product fails to measure up to the defendant's express representations or warranties, "[l]ack of privity is not a bar to suit.").[26]

AZEK expressly warranted its product to Plaintiffs, provided them with a Limited Warranty and had continued dealings with them.  CAC ¶ 19.  AZEK marketed its product directly to consumers, and Plaintiffs reviewed and relied upon its numerous representations about its decking in purchasing the product.  *See id*. ¶ 5.  AZEK's Limited Warranty resulted in a continuing relationship between AZEK and Plaintiffs, by instructing them to notify AZEK about any defects and permit AZEK to inspect the decking.  *See* CAC Ex. 1.  This is sufficient to establish privity.[27]  It would be unfair to allow a manufacturer to expressly warrant its product in writing or by affirmative representations to a consumer and then deny that consumer recovery based on a lack of literal privity especially where there is agency relationship between the manufacturer and its distributors.[28][29]

---

[26] Federal Courts have interpreted Connecticut law to relax the privity in certain circumstances. *See*, *e.g*., *Quadrini v. Sikorsky Aircraft Div*., 505 F. Supp. 1049 (D. Conn. 1981) (upholding an express warranty claim despite the absence of privity).

[27] As noted above, *Addressograph-Multigraph Corp. v. Zink* supports Plaintiffs.  The two remaining cases do not allege that the manufacturer provided a warranty or had continued dealings with the consumer.  *Pro Con Inc*., *v. Coastal Wall Sys*., 2004 WL 2289598 (Conn. Super. Sept. 13, 2004); *Ebin v. Kangadis Food Inc*., 2013 WL 6504547  (S.D.N.Y. Dec. 11, 2013).

[28] The fact-intensive nature of privity renders dismissal at the pleading stage premature.  *See, e.g., Dewey v. Volkswagen, AG,* 558 F. Supp. 2d 505, 524 n.17 (D.N.J. 2008) (denying motion to dismiss New York warranty claims because privity "involves issues of fact not appropriate for resolution at the motion to dismiss stage"); *Lady Di Fishing Team, LLC v. Brunswick Corp.,* 2007 WL 3202715, at *6 (M.D. Fla. Oct. 29, 2007) (minimal allegations of privity sufficient to survive motion to dismiss).

[29] Plaintiffs also request leave to dismiss Plaintiff Esposito's breach of express and implied warranty claims.

**B.     The Implied Warranty Claims of the Florida, Michigan, and New York Plaintiffs Are Not Subject to Dismissal for Lack of Privity**

AZEK argues that Plaintiffs Dalpiaz, Edmonds, Derwich and Fennell lack privity to sustain implied warranty claims under Florida, Michigan, and New York law.  Def. Br. 18. Privity is not a bar to Plaintiffs' implied warranty claims under Michigan law.  *See Pack v. Damon Corp.*, 434 F. 3d 810, 821  (6th Cir. 2006) (holding that "Michigan has abandoned the privity requirement for implied warranty claims" based on an in-depth analysis of Michigan state court decisions).  Florida and New York's relaxed privity requirements also apply to implied warranty claims if a manufacturer expressly warrants a product to a consumer and has continuing dealings with them.[30] Thus Plaintiffs' implied warranty claims should be upheld.[31]

---

[30] *See*, *e.g*, *MacMorris v. Wyeth*, *Inc*., 2005 WL 1528626 (M.D. Fl. June 27, 2005) (citing cases where privity was satisfied under Florida law in the absence of a purchase directly from the manufacturer); *DiCintio v. Daimler Chrysler Corp.*, 724 N.Y.S.2d (App. Div. 2d Dep't 2001) (dismissal of implied warranty claim is erroneous without allowing plaintiff to pursue discovery about whether dealer was manufacturer's sales agent), *rev'd on other grounds,* 97 N.Y.2d 463 (2002). Other New York courts have reached the same result.  *See*, *e.g*., *Beyer v. DaimlerChrysler Corp.*, 731 N.Y.S.2d 189 (App. Div. 2d Dep't  2001) (privity exists if seller is "sales or leasing agent").  Plaintiff Fennell purchased AZEK decking from a retail distributor - AZEK's contention that Mr. Fennel lacks the required contractual privity must fail.

[31] Azek also argues that Plaintiff Solo's implied warranty claim is not valid.  Def. Br. 16.  This argument ignores applicable California law on implied warranty.  The CAC states that Plaintiff Solo purchased his decking in June 2012 and "approximately two years and eight months after purchasing the decking, Plaintiff began to notice staining, streaking . . ." CAC ¶ 163.  This is a typographical error and Plaintiffs respectfully request leave to amend the complaint to correct this.  As the CAC was filed in April 2014 (less than two years after Plaintiff Solo purchased his decking), Plaintiff Solo plainly noticed the problems with his decking prior to the filing of the complaint.  In any event, Plaintiffs allege that AZEK decking was plagued with a *latent defect*. California courts have long held that the warranty of merchantability applies "where the defect is a *latent* defect," and thus was undiscoverable at the time of sale. *Moore v. Hubbard & Johnson Lumber Co.*, 149 Cal.App.2d 236, 240 (1957)(emphasis in original).  "[T]he warranty of merchantability is breached, *by the existence of the unseen defect*, not by its subsequent discovery." *Mexia v. Rinker Boat Co*., 174 Cal.App.4th 1297, 1304-05 (emphasis added) (internal citations omitted).  Thus, Plaintiff Solo alleges a valid implied warranty claim.

C.  **Plaintiffs Marino and Solo Need Not Provide Notice to Allege Valid Express Warranty Claims**

AZEK moves to dismiss the express warranty claims asserted by Plaintiffs Marino and Solo, Def. Br. 17, on the grounds that they did not provide AZEK notice of the defect. As set forth above, AZEK created several express warranties, and Plaintiff need not provide notice of the breach to sustain an express warranty claim under California law.  *See Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Cavanaugh*, 217 Cal. App. 2d 492, 514 (1963) (notice not required where the breach of warranty "arises independently of a contract of sale between the parties.")*; see also In re HP Inkjet Printer Litig.*, 2006 WL 563048, at *5 (N.D. Cal. Mar. 7, 2006) ("[E]ven if Plaintiffs did not give timely notice of breach of express warranty to [defendant], the claim is not barred" because "Plaintiffs bought their . . . printers from retail sellers" and "[defendant's] express warranties . . . were created independently in [defendant's] brochure").  Under Massachusetts law, Plaintiff Marino provided sufficient notice by joining this litigation.  *In re Ford Motor Co. E-350 Van Prods. Liab. Litig., (No. II)*, 2008 WL 2813788, at *78-79 (D.N.J. July 9, 2010) (noting that failure to give notice shall not bar recovery unless the defendant proves prejudice).  As AZEK has not claimed prejudice by the lack of pre-litigation notice by Plaintiff Marino, his express warranty claim should be upheld.

IV.  **THE CAC ADEQUATELY PLEADS CONSUMER PROTECTION CLAIMS**

AZEK incorrectly asserts that Plaintiffs' consumer protection claims are entirely derivative of the warranty claims.  Def. Br. 19.  AZEK sold a product it knew was defective, never disclosed the defect and intentionally misrepresented the quality, durability and maintenance of the product.  Because AZEK's misrepresentations and omissions are unnecessary for breach of warranty claims, and consist of conduct separate from the design and manufacturing of the defective product, these allegations create an independent cause of action

-17-

for consumer fraud. Plaintiffs have also adequately pled claims for breach of warranties, thus there is no basis to dismiss the consumer protection claims on that ground. Def. Br. 19.[32]

### A.    Plaintiffs Have Satisfied the Requirements of Rule 9(b)

AZEK argues that pursuant to Rule 9(b), Plaintiffs needed to allege "the source and location of any purported representation" and "reliance thereon." Def. Br. 20. But "Rule 9(b) falls *short of requiring* every material detail of the fraud such as date, *location*, and time." *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at *11 (D.N.J. Mar. 24, 2008) (emphasis added) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Rather, Rule 9(b) simply requires "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Able Labs.*, 2008 WL 1967509, at *11.

The CAC contains more than sufficient information to satisfy the requirements of Rule 9(b) as to "precision" and "substantiation" of the fraud claims. For example, paragraph 6 identifies the specific misrepresentations being challenged in this case, including extensive quotations of AZEK's own statements as opposed to Plaintiffs' characterizations. CAC ¶ 6. Plaintiffs also allege that such misrepresentations were uniformly made. *Id.* After laying this foundational support, Plaintiffs then provide pages upon pages of allegations for each specific Plaintiff. For example, in paragraph 66, Plaintiffs allege that Plaintiff Berkowitz reviewed "pamphlets and information sheets," that such documents (or "sources") were viewed "at his home" and "at Sequoia Supply in Bucks County, Pennsylvania" and that such review occurred "[b]etween August 2009 and October 2009."

---

[32] The cases cited by AZEK are inapplicable because none of them involved any alleged misrepresentation or omission and each court determined that there was no breach of warranty claim. *See* Def. Br. 19.

AZEK also argues the CAC fails to plead reliance, but AZEK has not even established that reliance is an element of any of the relevant consumer protection statutes, which is its burden as the moving party.  Thus, this contention fails.

Each of the Plaintiffs has alleged that he or she relied on the misrepresentations made by AZEK as set forth above.  *See, e.g.*, CAC ¶¶ 66, 124, 162.  Paragraph 70 states that Plaintiffs "purchased AZEK brand decking over other available products specifically because AZEK decking was represented by the AZEK as a no-maintenance decking option . . . If Plaintiff had known [about the defect] he would not have purchased AZEK decking at the price charged." Plaintiffs have alleged that they saw the misrepresentations, when they saw them, where they saw them, what they said and that they relied on them.  Moreover, the reasonableness of any such reliance, to the extent such is even necessary to establish liability under the applicable consumer protection statutes, is well-pled.   This is easily inferred from the fact that the misrepresentations were made by AZEK; on AZEK's website, through videos created by AZEK, and in brochures, pamphlets and information sheets provided by AZEK.  Accordingly, "Plaintiff did not and could not reasonably have discovered the defects at the time of purchase or delivery, or known of the omitted material information."  *See, e.g.*, CAC ¶ 69.

**B.**    **No State Specific Issues Justify Dismissing Any Consumer Protection Claim**

    **1.**    **The Pennsylvania Statutory Consumer Fraud Claim is Not Barred by the Economic Loss Doctrine**

AZEK's argument that the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") claim is barred by the economic loss doctrine is based solely on *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002), a diversity case which concluded that claims under the PUTPCPL are barred by the economic loss doctrine.  AZEK fails to note that this decision has been criticized and rejected by state courts of Pennsylvania in the intervening

twelve years.  *See Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. 2013); *Oppenheimer v. York Int'l*, 2002 WL 31409949, at *6 (Pa. Com. Pl. Oct. 25, 2002) (citing cases).  In fact, *Werwinski* ignored prior Pennsylvania state court decisions on this issue and instead relied on district court cases.[33]

The *Werwinski* court's main error flows from the assumption that because common law intentional fraud claims would be barred, statutory fraud claims would be barred as well.  The primary support for this interpretation of Pennsylvania law is a single case from a district court in Wisconsin applying Wisconsin law.  *See Werwinski*, 286 F.3d at 681 (citation omitted).[34]  Not only was the *Weather Shield* case inconsistent with other district court opinions from Wisconsin,[35] but its two main assumptions: (1) that there is no reason to treat common law fraud and statutory fraud claims differently; and (2) a belief that CFA claims would nullify the economic loss rule -- were demonstrably erroneous.[36]

---

[33] *See Werwinski*, 286 F.3d at 674 ("Before examining decisions from *other jurisdictions* addressing whether the economic loss doctrine bars claims of intentional fraud, the district court first found a split in authority among *Pennsylvania federal district courts* on the issue.") (decided April 15, 2002) (emphasis added); *compare Aikens v. Baltimore & Ohio R. Co.*, 501 A.2d 277, 278 (Pa. Super. Ct. 1985) (holding economic loss doctrine does not bar claims for intentional tortious interference).

[34] *Werwinski* also relied on the Connecticut Supreme Court's decision in *Flagg Energy Dev. Corp. v. Gen. Motors Corp.*, 709 A.2d 1075 (Conn. 998).  That decision was overturned by the Connecticut Supreme Court in *Ulbrich v. Groth*, 78 A.3d 76 (Conn. 2013), which held that the reasoning of the court in *Werwinski*, 286 F.3d at 679–80, that the economic loss doctrine bars tort claims arising out of a breach of contract . . . does not apply to CUTPA claims.  The Court explained that CUTPA was intended to provide a remedy that is separate and distinct from the remedies provided by contract law when the AZEK's contractual breach was accompanied by aggravating circumstances.  *Ulbrich*, 78 A.3d at 101-02 (citations omitted).

[35] *See, e.g., Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F. Supp. 1227, 1236 (W.D. Wis. 1997) (holding that plaintiff's fraudulent misrepresentation claims under Wisconsin law would not be barred by the economic loss doctrine).

[36] The conclusion that there is no reason to treat common law and consumer fraud claims differently is inconsistent with the case law that uniformly holds that consumer fraud acts were passed to provide broad remedial protection for consumers and additional remedies that are otherwise unavailable in common law fraud claims.  *See, e.g., Reinhart Ford*, 68 Pa. D. & C.4th

Here, the Court, as one sitting in diversity, "[i]n predicting how the highest court of the state would resolve the issue, must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.'" *In re Swinton*, 287 B.R. 634, 636 (W.D. Pa. 2003) (citation omitted). The court in *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 (E.D. Pa. 2003) did just that and ultimately concluded that it could not "follow the panel's decision when it is not in harmony with Pennsylvania state law because: (1) Pennsylvania common law may not overrule legislative intent and violate a statute; (2) Pennsylvania courts have refused to apply the economic loss doctrine in consumer common law intentional fraud suits; (3) Pennsylvania courts have allowed treble damage awards in consumer fraud cases pursuant to the UTPCPL; (4) Pennsylvania courts since *Werwinski* have continued to do so; and (5) the panel based its decision entirely on a U.S. District Court for the Western District of Wisconsin case applying Wisconsin law which is not binding on Pennsylvania courts." *Id*. at 275. The *O'Keefe* court held that the economic loss doctrine did not bar the PUTPCPL claim and denied the motion to dismiss. Plaintiffs respectfully request that this Court similarly hold that the economic loss doctrine does not bar Plaintiffs' PUTPCPL claims.

---

at 438 ("the general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices. This purpose, moreover, is to be liberally construed to prevent unfair or deceptive purposes.") (citations and quotations omitted). The *Weather Shield* court's conclusion that consumer fraud claims would "virtually nullify the [economic loss] doctrine,"1998 WL 469913, at *6, ignores that PUTPCPL was specifically created by legislation and it is presumed that the Pennsylvania legislature knew about the economic loss doctrine at the time it passed the Act. *See Reinhart Ford*, 68 Pa. D. & C.4th at 438 ("Allowing the economic loss doctrine to bar plaintiff's UTPCPL claim would eviscerate the purpose of the statute.") Thus, common law should yield to the express will of the legislature.

### 2. All Requirements Under the Massachusetts Consumer Protection Statute Have Been Satisfied

AZEK argues that Plaintiffs have not complied with Massachusetts' pre-filing notice requirement. However, the requirement does not apply if the prospective respondent does not maintain a place of business and/or keep assets within the Commonwealth. MASS. GEN. LAWS Ch. 93A, §9(3); *Burnham v. Mark IV Homes, Inc.*, 441 N.E.2d 1027, 1033, n. 13 (Mass. 1982) (demand letter not necessary where the defendant neither maintained a place of business nor kept assets within the Commonwealth). Upon information and belief, and as reflected in Plaintiffs' allegations, AZEK does not maintain a place of business or keep assets within Massachusetts. Thus, Massachusetts' notice provision does not apply.

Even if the demand requirement did apply, the filing of a complaint (*e.g.*, the First Amended Complaint on April 26, 2013) well over 30 days prior to the filing of the Consolidated Class Action Complaint on April 22, 2014 effectively acted as sufficient demand under Chapter 93 A, §9(3). *See, e.g., Latino v. Ford Motor Co.*, 526 N.E.2d 1282, 1284 (Mass. 1988) (demand letter unnecessary where prior action had already been commenced describing the claims); *Towne v. N. End Isuzu, Inc.*, 1999 WL 674140, at *2 (Mass. Super. June 21, 1999) ("plaintiffs need not have filed this pre-suit demand letter prior to the filing of *any* action against the defendants, but merely before the c. 93A claims are propounded, either by a motion to amend the original suit, or in a separate suit.").

### 3. The New Jersey Consumer Fraud Claim Is Well-Pled

Plaintiffs state a cognizable claim under the New Jersey Consumer Fraud Act because, as set forth above, there are "substantial aggravating circumstances" present in this case – specific misrepresentations and omissions beyond the actual defect in the product that is the basis of the warranty claims. Acknowledging this fact, AZEK argues that Plaintiffs have not sufficiently

-22-

alleged that AZEK knew of the defect prior to Plaintiffs' purchases.  Def. Br. 24.  However, this argument ignores the fact that in pleading fraud, "[m]alice, intent, *knowledge*, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b) (emphasis added).  The CAC contains such general averments of AZEK's knowledge and that such knowledge of the defect existed at the time of each Plaintiff's purchase.  *See, e.g.*, CAC ¶¶ 16-17.

Moreover, at this stage of the litigation, Plaintiffs cannot identify a specific point in time when AZEK acquired actual knowledge of the falsity of its statements.  No discovery has been taken and such information is uniquely in the possession of AZEK.  "[I]n applying Rule 9(b), courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.'"  *In re Able Labs.*, 2008 WL 1967509 at *11, quoting *Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1418 (3d Cir. 1997).  "Where it can be shown that the requisite factual information is peculiarly within the AZEK's knowledge or control, the rigid requirements of Rule 9(b) may be relaxed."  *Id.*

AZEK also argues that Plaintiffs have failed to allege an ascertainable loss.  Def. Br. 25.  However, what AZEK is really arguing is that Plaintiffs have not quantified their loss.  But nothing in Rule 8 or 9(b) requires a plaintiff to provide an exact measure of damages at the pleading stage. [37]  Here, Plaintiffs have plead both out-of-pocket losses and loss in value and have set the stage for the calculation of damages at a later stage of the proceedings.  CAC ¶¶ 80, 114, 256.

While it is true that to ultimately prevail on the NJCFA claim, Plaintiffs must "simply supply an estimate of damages, calculated within a reasonable degree of certainty," *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22 (1994), the question is one of timing.  In fact, in *Cox*, the

---

[37] In *Thiedmann v. Mercedes–Benz USA, LLC,* 183 N.J. 234, 248 (2005), the plaintiff incurred no out-of-pocket loss. Here, Plaintiffs have suffered or will suffer out-of-pocket losses.  CAC ¶ 20

Supreme Court of New Jersey discussed the requirements of establishing an ascertainable loss for a NJCFA claim after a jury trial and not on a motion to dismiss. *Id*. at 7.[38] To hold that a plaintiff has to specify the actual amount of the ascertainable loss would essentially require a plaintiff to actually pay for out-of-pocket repairs, which is not required to proceed under the NJCFA.[39]

## IV.   PLAINTIFFS ALLEGE A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

AZEK's challenge to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is flawed and entirely conclusory. Def. Br. 37. Every contract includes an implied covenant of good faith and fair dealing. UCC § 1-203; *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420 (1997). The covenant of good faith and fair dealing prevents parties to a contract from destroying or injuring the right of the other party to receive the fruits of the contract even without breaching an express term. *Sons of Thunder,* 148 N.J. at 421-25. A party may also breach the covenant of good faith and fair dealing by exercising contractual discretion unreasonably or in bad faith. *Lowe's Home Ctrs., Inc. v. LL & 127 LLC*, 147 F. App'x 516, 523-24 (6th Cir. 2005).

AZEK contends that Plaintiffs have not pled the necessary elements for a claim of breach of covenant of good faith and fair dealing. Def. Br. 37. However, AZEK fails to identify any

---

[38] In this regard, the cases cited by AZEK were decided in error. For example, in *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) the court stated that "[u]nder the CFA, Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered," in reliance on *Cox* and *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 108, 1111 (App. Div. 2005). But *Cox* discussed the necessary level of specificity after a jury trial while *Dabush* did so after summary judgment. Thus, neither case relied on in *Solo* supports that court's conclusion that a NJCFA claim requires *pleading* a specific ascertainable loss versus *proving* one at the Rule 12 stage.

[39] *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 22, (1994) ("the victim is not required actually to spend the money for the repairs before becoming entitled to press a claim").

such elements and does not explain which specific element Plaintiffs have failed to plead. Rather, it cites to a case that explains the three most recognized situations where such a claim arises. Def. Br. at 38.  One such situation where an independent cause of action for breach of covenant of good faith and fair dealing commonly arises, and the most relevant to the instant case, is "to allow redress for a contracting party's bad-faith performance of an agreement." *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006).  Throughout Plaintiffs' CAC, Plaintiffs allege that AZEK acted in bad-faith by selling a product that it knew to be defective, providing a warranty for the product that AZEK had no intention of honoring, and making representations about the product that AZEK knew to be false or misleading.  *See*, *e.g.*, CAC ¶¶ 226-235.  Although related, these allegations go beyond those for mere breach of contract, and for that reason, Plaintiffs' claim should not be dismissed.

Another recognized situation that activates a claim for breach of the covenant of good faith and fair dealing is where a party can unfairly exercise discretion over its contract performance.  *Barows*, 465 F. Supp. 2d at 365.  The AZEK Lifetime Warranty provides that, after a customer provides notice of a claimed defect: "The choice of remedy is in the Manufacturer's sole discretion." CAC Ex. A.  Accordingly, the Lifetime Warranty gives AZEK the sole discretion to determine whether to honor the warranty for the conditions set forth in the CAC.  Indeed, Plaintiffs consistently allege that AZEK exercised its discretion in bad faith by unreasonably failing to honor legitimate warranty claims. *See*, *e.g.*, CAC ¶¶ 230-31.  These allegations alone give rise to a claim for breach of the covenant of good faith and fair dealing, and similarly, they go beyond allegations for mere breach of contract.

AZEK also contends that the law of the states of Florida, Maryland, Michigan and Pennsylvania do not support independent claims for a breach of the covenant of good faith and

fair dealing.  As such individual state claims have not been specifically made, but rather one general claim, this argument is entirely premature without a full factual record to support a complete choice of law analysis regarding this claim.  In lieu of such an analysis, AZEK merely offers conclusory statements.  For this reason, when the Court accepts all of the well-pleaded factual allegations in the CAC as true and construes them in the light most favorable to Plaintiffs, AZEK's challenge must be denied.[40]

## V.   PLAINTIFFS PROPERLY SEEK DECLARATORY JUDGMENT

AZEK moves to dismiss the Declaratory Judgment count on two grounds despite the fact that the Declaratory Judgment Act ("DJA") "should be liberally construed to effectuate the ends of justice."  *Tamco Corp. v. Fed. Ins. Co. of New York*, 216 F. Supp. 767, 771 (N.D. Ill. 1963) (citation omitted); *see also Cincinnati Ins. Co. v. Holbrook*, 867 F.2d 1330, 1333 (11th Cir. 1989) (the Declaratory Judgment Act "should be exercised liberally in favor of granting such relief").  Given its purpose, the DJA provides district courts with "wide discretion to provide declaratory relief."  *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 2013 WL 2177974, at *18 (D.N.J. May 20, 2013).  Such broad discretion is provided to the district courts

---

[40] AZEK's argument is more a matter of semantics rather than of law.  Maryland, Michigan and Florida recognize a claim for a breach of covenant of good faith and fair dealing where a party acts in bad faith with respect to performance of their obligations under a contract; they simply call it a claim for breach of contract.  *Food Fair Stores, Inc. v. Blumberg*, 200 A.2d 166 (Md. 1964) (Maryland recognizes that every contract imposes a duty of good faith and fair dealing in its performance. However, Maryland courts have not explicitly recognized a separate cause of action for breach of this duty.); *see also Lowes*, 147 F. App'x at 523-24; *Speedway Superamerica LLC v. Tropic Enter., Inc.*, 966 So.2d 1, 3-5 (Fla. Dist. Ct. App. 2007).  Pennsylvania courts have held that a claim for a breach of the covenant of good faith and fair dealing is part of a breach of contract claim, with good faith and fair dealing being a factor in determining breach.  *See, e.g., Hershey Entm't & Resorts Co. v. Interactive Rides, Inc.*, 2005 WL 3320843, at *8 (M.D. Pa. Dec. 7, 2005).

because the DJA "created a new"[41] and an "additional remedy"[42], which is available to interested parties like the Plaintiffs in this case. Such remedies are "appropriate even though other remedies are also available",[43] and relief under the DJA is proper either as "the basis of further relief necessary or proper against the adverse party"[44] (*e.g.*, to establish an essential component to liability) or "whether or not further relief is or could be sought."[45]   As the Supreme Court has stated, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness . . . ." *Pub. Serv. Comm'n*, 344 U.S. at 243. This sense of "fit" is hardly something that can be easily divined at the pleading stage. Thus, the motion to dismiss should be denied.

## A.     The Claim Seeking Declaratory Relief is Adequately Pled

AZEK argues that because Plaintiffs do not have any other substantive claims and because the DJA does not provide an independent cause of action[46] in certain states, the claim should be dismissed. *See* Def. Br. 28-29. First, as set forth above, Plaintiffs adequately plead many causes of actions against AZEK that should survive this motion to dismiss; thus, there is no basis to dismiss the DJA claim on that ground. Second, on the related argument of whether the DJA provides for a "freestanding cause of action," this argument is irrelevant because the DJA provides Plaintiffs a right to relief – in this case, the right to certain injunctive relief as set forth in paragraph 423(h) and (i) of the CAC. In addition, because the DJA is a federal statute that some district courts in some states have dismissed a DJA claim does not resolve the matter.

---

[41]  *Walker Process Equip., Inc. v. FMC Corp.*, 356 F.2d 449, 451 (7th Cir. 1966) (citation omitted).

[42]  *Balanyi v. Local 1031, Int'l Bd. of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967); *see also Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) ("[Declaratory Judgment Act] enlarge[s] the range of remedies available") (citation omitted).

[43]  *Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974).

[44]  *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 245 (1952).

[45]  28 U.S.C. § 2201.

[46]  This ignores the fact that a plaintiff may bring a single count seeking relief under the DJA (*e.g.*, a case brought by an insurer on whether a duty to defend exists).

AZEK has not cited any binding Third Circuit precedent that requires the Court to dismiss the DJA claim of certain Plaintiffs from certain states in this case due to the idiosyncrasies of a few district court opinions.[47]

> **B.     There is No Basis To Dismiss the Count Seeking Declaratory Relief Due to Purported Duplicity**

AZEK makes the contradictory arguments that a DJA claim cannot stand without another substantive cause of action but that if there is another substantive cause of action, the DJA claim cannot stand because it is duplicative of the substantive cause of action.  Def. Br. 29.  Under AZEK's analysis, a plaintiff could never seek relief under the DJA.  Leaving this flawed logic aside, AZEK provides no analysis of the purported duplicity between the other causes of action and the DJA claim.  AZEK merely devotes a single, conclusory sentence to this argument followed by a string cite.[48]

In addition, at this stage of the pleadings, AZEK's argument is premature because Plaintiffs are entitled to plead in the alternative pursuant to Fed. R. Civ. P. 8(d) and Plaintiffs are entitled to an election of remedies at the appropriate time.  *See In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743, at *18 (D. Minn. July 15, 2013) (where defendant argued DJA claims were duplicative, court held motion to dismiss DJA claim was premature, and that "Plaintiffs are permitted to plead in the alternative.")  In fact, the decisions are legion from district courts throughout the country that it is premature to dismiss claims seeking declaratory and injunctive relief at this early

---

[47] AZEK merely string cites a few cases, *see* Def. Br. 29, without any attempt to analogize or apply the analysis of the cited cases to the facts of this case.

[48] AZEK cites to three cases in support of its argument: *Young v. Travelers Ins. Co.*, 2013 WL 5308289 (D. Md. 2013), *E. Point Sys., Inc. v. Maxim*, 2014 WL 523632 (D. Conn. 2014), and *Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479 (E.D. Va. 2007).  In these cases, the courts merged duplicative claims for declaratory relief with causes of action that encompassed them.  Comparison with the present case before this Court is inapposite as only some of the declaratory relief sought overlaps with elements of the claims and is not duplicative.

stage of the proceedings because Plaintiffs have not moved for any injunction and determination of what relief is appropriate must be considered only after liability has been established.[49]

Furthermore, even if this Court considers the issue of duplicity as grounds for dismissal, the DJA claim here is not duplicative of the other claims.  It would provide additional remedies in the form of the injunctive and declaratory relief consistent with the broad discretion afforded to this Court by the DJA.  AZEK simply ignores the fact that Plaintiffs here are seeking not only remedies to address past issues with AZEK's defective decking, but are also seeking future injunctive relief.  *E.g*., CAC ¶¶ 281, 423.  Such relief is necessary and proper to prevent the accrual of future damages and is in addition to the monetary relief sought by the other claims.  It has been recognized that "[i]nasmuch as a declaration could aid Plaintiff in the pursuit of *injunctive relief*, it is *not duplicative*."  *Consumer Protection Corp. v. Neo-Tech News*, 2009 WL 2132694, at *3 (D. Ariz. July 16, 2009) (emphasis added); *see also Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991) (plaintiff can maintain independent declaratory judgment action where he "can demonstrate a good chance of being likewise injured in the future").

Plaintiffs are also seeking class certification of a (b)(2) class under FRCP 23.  If Plaintiffs are ultimately successful in obtaining class certification, there may be class members whose PVC decking has not yet developed issues or class members who have not paid to deal with the PVC decking issues.  Such class members currently may not have ripe claims under the other causes of action pled in the CAC and, as to these class members, there will be no redundancy or duplicity because they will *only* qualify for declaratory relief.  *See Pella Corp. v. Saltzman*, 606

---

[49] *See, e.g., Fleisher,* 2012 WL 5381381, at *13. ("premature to dismiss Plaintiffs' DJA claim at this point"); *Cmty. Prog. of Westchester of Jewish Cmty. Servs. v. City of Mt. Vernon,*  2007 WL 2981915, at *6 n. 5 (S.D.N.Y. Oct. 9, 2007) (same); *Lewis v. Bank of Am. NA*, 2013 WL 7118066 (C.D. Cal. Dec. 18, 2013) (same); *In re Auto. Parts Antitrust Litig.*, 2013 WL 2456584, at *14 (E.D. Mich. June 6, 2013) (same).

F. 33 391, 395 (7th Cir. 2010) (affirming certification of a Rule 23(b)(2) class in which "([members of the (b)(2) class] would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect, or final equitable relief. . . .").  As in *Pella*, the cumulative effect of the declarations sought by the Plaintiffs here would be an entitlement to have the PVC decking issues remedied and the benefit of extending warranty benefits.

Finally, judicial economy is not served by dismissing the DJA claim at this early stage of the proceedings.  If the claims are duplicative, then the Court will have to resolve the identical factual issues related to the DJA claim as it would with the other claims such that it would be an efficient use of judicial resources to permit the DJA claim to proceed.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order denying AZEK's Motion to Dismiss.[50]

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Liaison Counsel for Plaintiffs*

Date: July 22, 2014                    By:_____/s/ James E. Cecchi_____
                                            JAMES E. CECCHI

---

[50] While Plaintiffs believe that their claims do not suffer from any deficiency, to the extent the Court finds any deficiency, Plaintiffs request leave to amend pursuant to Rule 15(a).

Harris L. Pogust
Andrew J. Sciolla
**POGUST BRASLOW
& MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
(610) 941-4204

Jonathan Shub
Parvin K. Aminolroaya
**SEEGER WEISS LLP**
77 Water Street
New York, NY 10005
(212) 584-0700

Jamie Weiss
Richard J. Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Ave., Suite 300
Highland Park, IL 60035
Tel.: (847) 433-4500

Charles E. Schaffer
**LEVIN, FISHBEIN SEDRAN
& BERMAN**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Steven R. Jaffe
Mark Fistos
**FARMER, JAFFE, WEISSING,
EDWARDS, FISTOS
& LEHRMAN, P.L.**
425 North Andres Avenue, Suite 2
Fort Lauderdale, Florida 33301
(954) 524-2820

Matthew B. Weisberg
**WEISBERG LAW, P.C.**
7 South Morton Avenue
Morton, PA 19070
(484) 842-4030

Jordan Chaikin
**PARKER WAICHMAN LLP**
3301 Bonita Beach Road, Suite 101
Bonita Springs, FL 34134
(239) 390-1000

Charles J. LaDuca
Brendan Thompson
**CUNEO GILBERT & LADUCA, LLP**
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
(202) 789-3960

Michael McShane
**AUDET & PARTNERS, LLP**
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555

Robert K. Shelquist
**LOCKRIDGE GRINDAL NAUEN, PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Attorneys for Plaintiffs*