**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: AZEK BUILDING PRODUCTS, INC.; MARKETING AND SALES PRACTICES LITIGATION | **Civil Action No. 12-6627** <br><br> MDL Docket No. 2506 <br><br> **OPINION** |

ARLEO, UNITED STATES DISTRICT JUDGE

This matter comes before this Court on Defendant's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint ("CAC") for failure to state a claim, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) [Dkt. No. 95]. For the reasons set forth below, the motion is GRANTED-IN-PART and DENIED-IN-PART.

### I.   FACTS

In this case, sixteen named plaintiffs seek to bring a class-action lawsuit under the laws of eleven states against Defendant AZEK Building Products, Inc. ("Defendant"). This dispute centers on alleged defects in Defendant's decking products rising from the materials used therein. Specifically, Plaintiffs claim that polyvinyl chloride (PVC), from which Defendant's decking products are made, develops stains, scratches, discoloration, chalking, and streaking under normal use. Defendant, however, allegedly made written representations through "pamphlets and information sheets" which assured prospective customers that its decking had superior aesthetic durability to other decking alternatives, such as wood. (CAC ¶¶ 66, 74, 82, 92, 100, 108, 116, 131, 139, 147, 155, 162, 169).[1] Plaintiffs identify at least ten specific statements at issue which concern

---

[1] Plaintiff Marino alleges he saw and reviewed the representations "on Defendant's website at www.azek.com and in AZEK decking brochures . . . ." (Id. ¶ 124). This does not alter the Court's analysis.

AZEK decking.  (See id. ¶¶ 5, 6, 8, 10, 12).  Among these statements are: AZEK decking would only "weather very slightly over time and will look luxurious for years to come;" "[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold;" Azek decking is "Designed to last beautifully;" and "WOOD AND COMPOSITES ROT, STAIN AND FADE. AZEK DOESN'T. AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . . AZEK deck is the embodiment of durability. At the end of the day all you have to do is enjoy it."  (Id. ¶ 6(b)-(c), (e), (j)) (capitalization in original).

Plaintiffs also claim Defendant had knowledge of the disputed defects when it made these statements and covered up those defects when selling the product.  Specifically, they claim that Defendant held itself out as having "over 25 years of experience in cellular PVC manufacturing," and touted itself as an expert in the manufacture and use of PVC materials.  (Id. ¶¶ 6, 10).  Plaintiffs further allege that, as an expert, Defendant knew or should have known that its PVC decking would undergo various degradations, but made representations contrary to that knowledge.  (Id. ¶¶ 11, 12, 17).  The scientific and industrial community also knew that PVC was highly susceptible to degradation if it was exposed to sunlight and heat.  (Id. ¶ 11, 19).

Each Plaintiff provides a date range—for most Plaintiffs a specific month, but for some a range of several months—within which he or she bought the AZEK decking.  (Id. ¶¶ 65, 73, 81, 91, 99, 107, 115, 123, 130, 138, 146, 154, 161, 168).  Each Plaintiff also alleges that, before purchasing the product, he or she reviewed and relied on the alleged misrepresentations made by Defendant, including the misrepresentations alleged in paragraphs 5, 6, 8, 10, and 12 of the CAC. (Id. ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169).

Defendant provided a Lifetime Limited Warranty which accompanied all AZEK decking. The Lifetime Limited Warranty warrants AZEK deck components

to be free from defects in material and workmanship that (1) occur as a direct result of the manufacturing process, (ii) occur under normal use and service, (iii) occur during the warranty period and (iv) result in blistering, peeling, flaking, cracking, splitting, cupping, rotting or structural defects from termites or fungal decay.

(<u>Id.</u>, Ex. A).  The Lifetime Limited Warranty also contains a disclaimer which states

> THE WARRANTY STATEMENTS CONTAINED IN THIS LIFETIME LIMITED WARRANTY SET FORTH THE ONLY WARRANTIES EXTENDED BY AZEK AND ARE IN LIEU OF ALL OTHER CONDITIONS AND WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE PROVISIONS OF THIS WARRANTY SHALL CONSTITUTE THE ENTIRE LIABILITY OF AZEK AND THE PURCHASER/PROPERTY OWNER'S EXCLUSIVE REMEDY FOR BREACH OF THIS WARRANTY. IN PARTICULAR, IN NO EVENT SHALL AZEK BE LIABLE TO THE PURCHASER/PROPERTY OWNER FOR SPECIAL, INCIDENTAL, INDIRECT, CONSEQUENTIAL, OR PUNITIVE DAMAGES ARISING FROM THE USE OF THE AZEK PRODUCTS OR THE BREACH OF ANY EXPRESS OR IMPLIED WARRANTY.

(<u>Id.</u>) (capitalization in original).  The Lifetime Limited Warranty requires that the manufacturer be given notice by the consumer of any defect and an opportunity to inspect defective decking.  (<u>Id.</u>). Various Plaintiffs allege they provided notice of the alleged defects to Defendant and Defendant refused to provide coverage under the Lifetime Limited Warranty, claiming it covered only defects in "performance," not aesthetics.  (<u>Id.</u> ¶ 19).

Plaintiffs' claims fall in five categories: breach of express warranty, breach of the implied warranty of merchantability, violation of various state consumer fraud statutes, breach of duty of good faith and fair dealing, and a declaratory judgment claim.  Defendant's moves to dismiss each claim for various general and specific deficiencies.  The Court will address these in turn.

## II.    STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008).  Moreover, dismissal is

inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

## III.   LEGAL ANALYSIS

### A.  Miscellaneous Dismissals

As a preliminary matter, the Court grants Plaintiff Esposito's request to dismiss his express and implied warranty claims. (See Dkt. No. 103, Pls.' Opp. at 15 n.29). The Court also dismisses Plaintiff Solo's implied warranty claim, as Plaintiffs do not contest that his allegations fail to

indicate manifestation of the defect within one year.[2]  See Tietsworth v. Sears, 720 F. Supp. 2d 1123, 1142-43 (N.D. Cal. 2010) (dismissing implied warranty claim premised on a latent defect in a washing machine because plaintiff failed to plead that the machine "was unfit for its ordinary purpose of cleaning clothes within the one-year warranty period").

### B.  The Warranty Claims (Counts I-II)

#### 1.  Express Warranty

Plaintiffs present two theories under their cause of action for breach of express warranty. First, they allege that the Lifetime Limited Warranty provided by Defendant was breached by Defendant's unwillingness to provide relief for aesthetic defects.  Second, they allege that Defendant made several specific, written statements concerning the aesthetic longevity of the decking which created express warranties and which were contrary to the inherent properties of PVC, the material used to make the decking.

"Under New Jersey law, in order to state a claim for breach of express warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description."  Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 721 (D.N.J. 2011).

#### i.  Breach of the Lifetime Limited Warranty

Defendant correctly argues that Plaintiffs have failed adequately to plead breach of the Lifetime Limited Warranty.  The Lifetime Limited Warranty warranted AZEK deck components

> to be free from defects in material and workmanship that (1) occur as a direct result of the manufacturing process, (ii) occur under normal use and service, (iii) occur during the warranty period and (iv) result in blistering, peeling, flaking, cracking, splitting, cupping, rotting or structural defects from termites or fungal decay.

---

[2] Plaintiffs ascribe this to a typo with regard to the dates Plaintiff Solo noticed the defect.  The dismissal is without prejudice, so Plaintiffs may move to amend to include adequate allegations for Plaintiff Solo.

(CAC, Ex. A).  In order for the Lifetime Limited Warranty to apply, on its terms, any defect must result in structural or physical damage as listed in part (iv).  Plaintiffs' CAC alleges "discoloring, fading, chalking, and degrading," (id. ¶ 18), and "scratch[ing]" and "stain[ing]."  (Id. ¶ 20).  Nothing in Plaintiffs' CAC alleges that any Plaintiff's deck suffered from "blistering, peeling, flaking, cracking, splitting, cupping, rotting or structural defects from termites or fungal decay." (Id., Ex. A).  Nor do Plaintiffs anywhere allege that the aesthetic defects fall under the actual language found in part (iv) of the Lifetime Limited Warranty.  Therefore, Plaintiffs have not alleged facts sufficient to form a dispute as to whether the promises contained in the Lifetime Limited Warranty were breached by alleged defects in AZEK decking.  This Court dismisses Plaintiffs' claim of breach of express warranty under the Lifetime Limited Warranty without prejudice to Plaintiffs' right to replead this claim consistent with this opinion.

### ii.  Breach of Express Warranty Based Upon Misrepresentations

Plaintiffs' second express warranty theory identifies various written statements made by Defendant and argues that these statements create an express warranty.  Defendant replies that the allegations are insufficiently specific with regard to when and where the statements were made and which ones influenced which Plaintiffs.[3]

When deciding whether an express warranty is created by statements made to a buyer, the Court examines whether a promise is made by a seller to a buyer which relates to a good and which then becomes part of the basis of the bargain.  Liberty Lincoln-Mercury, Inc., 171 F.3d 818, 824 (3d Cir. 1999).  "A statement can amount to warranty . . . if it could be fairly understood . . . to constitute an affirmation or representation that the [product] possesse[s] a certain quality or

---

[3] Defendant also argues that any alleged misrepresentations were mere puffery.  This is a fact question, and so cannot defeat Plaintiff's express warranty claims at this stage.  See Union Ink Co. v. AT&T Corp., 352 N.J. Super. 617, 645 (App. Div. 2002) (stating that puffery is ordinarily a question of fact).

capacity relating to future performance." Avram v. Samsung Elecs. Am., Inc., No. 11-6973, 2013 WL 3654090, at *8 (D.N.J. July 11, 2013). "[W]hether a given statement constitutes an express warranty is normally a question of fact for the jury." Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 324 (D.N.J. 2014); accord Snyder, 792 F. Supp. 2d at 722.

Representations are presumed to be part of the basis of the bargain once the buyer becomes aware of the affirmations, absent clear affirmative proof that the buyer knew the promise or fact was untrue. See Liberty Lincoln-Mercury, 171 F.3d at 825; Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 469 (D.N.J. 2007). Indeed, affirmations of fact by a seller are presumed to be part of the basis of the bargain unless the seller shows by clear affirmative proof that the buyer knew the affirmation was false. Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 568 (3d Cir. 1990), overruled on other grounds, 505 U.S. 504 (1992).

Defendant argues that the CAC insufficiently identifies the representations at issue because Plaintiffs do not identify where the statements were made, which ones each Plaintiff saw, when each Plaintiff saw them, and which one(s) influenced each Plaintiff's purchasing decision. The Court disagrees.

Defendant cites In re Clorox Consumer Litig., 894 F. Supp. 2d 1224, 1235 (N.D. Cal. 2012), for support, but the facts in that case are inapposite. In Clorox, the plaintiffs merely referred to "product labels" without providing any allegations concerning what the labels said. Id. at 1235. In requiring specific allegations of facts sufficient to satisfy the pleading stage, some courts require plaintiffs to mention the particular promise or description that allegedly gave rise to an express warranty. See Heisner ex rel. Heisner v. Genzyme Corp., No. 08-593, 2008 WL 2940811, at *8-9 (N.D. Ill. July 25, 2008); see also Simmons v. Stryker Corp., No. 08-3451, 2008 WL 4936982, at *2 (D.N.J. Nov. 17, 2008). Plaintiffs here have done so.

Plaintiffs allege the precise language of ten specific representations made by Defendant on written brochures and pamphlets which were "uniformly represented" to consumers.  (CAC ¶ 6). Plaintiffs' allegations contain sufficiently particular statements concerning AZEK decking to identify them.  (See id. ¶¶ 5, 6, 8, 10, 12).  For example, one such alleged representation was that "WOOD AND COMPOSITES ROT, STAIN AND FADE. AZEK DOESN'T." (Id. ¶ 6(j)) (capitalization in original).

Further, Plaintiffs identified which statements influenced their decision—each statement identified by Plaintiffs in paragraphs 5, 6, 8, 10, and 12.  (Id. ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169).  The allegations' breadth alone does not eliminate their status as factual allegations.  Each Plaintiff also provides a date range of a few months in which he or she bought the AZEK decking.  (Id. ¶¶ 65, 73, 81, 91, 99, 107, 115, 123, 130, 138, 146, 154, 161, 168). Because Plaintiffs have alleged specific, written misrepresentations were made by Defendant and were available to and relied upon by Plaintiffs before purchasing AZEK decking within a date range of a few months, Plaintiffs have adequately pled breach of express warranty.  See Fleisher v. Fiber Composites, LLC, No. 12-1326, 2012 WL 5381381, at *4 (E.D. Pa. Nov. 2, 2013) (representations in promotional materials regarding quality and characteristics of decking may be viewed as express warranties).  The Court therefore finds that Plaintiffs have stated a claim for breach of express warranty as to the misrepresentations attributed to Defendant.

## 2. Implied Warranty of Merchantability

Defendant moves to dismiss the implied warranty count as to all Plaintiffs, arguing that the essential function of AZEK decking is to serve as an outdoor structure, so any alleged aesthetic defects cannot be a breach of the implied warranty of merchantability.  Plaintiffs argue that the essential function of AZEK decking includes aesthetic improvement of property.  This is a

quintessential fact question.  Dismissal at this stage would be premature.  Therefore, the Court finds Plaintiffs have stated a claim for breach of the implied warranty of merchantability.

### 3.   Effectiveness of the Lifetime Limited Warranty's Disclaimer

Defendant moves to dismiss both the implied and express warranty causes of action as disclaimed by the Lifetime Limited Warranty.  (See CAC, Ex. A).  On its terms, the Lifetime Limited Warranty disclaims both Plaintiffs' express warranty cause of action premised on alleged prior misrepresentations in product brochures and Plaintiffs' implied warranty cause of action premised on the implied warranty of merchantability.  (Id.).

Plaintiffs argue that the Lifetime Limited Warranty, to the extent it includes the disclaimer, is unconscionable.  Defendant replies that Plaintiffs have not alleged unconscionability and the CAC's allegations concerning Defendant's purported knowledge are conclusory and unsupported by statements of fact.  The Court disagrees.

The question of unconscionability is one of law for the court.  N.J. Stat. Ann. § 12A:2-302(1).  Unconscionability is determined on a case-by-case basis considering procedural and substantive unconscionability—unfairness in the contract's formation and excessively disproportionate terms, respectively.  Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002).  "Evidence of the 'knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits from the contract'—or any related showing that 'the transaction involved elements of deception'—should in most cases 'contribute to a finding of unconscionability in the bargaining process.'"  Duffy v. Samsung Electronics Am., Inc., No. 06-5259, 2007 WL 703197, at *5 (D.N.J. Mar. 2, 2007) (citing Restatement (Second) of Contracts § 208 comment d (1981)).  Unconscionability "should but rarely be determined on the bare-bones pleadings."  Carlson v. Gen. Motors Corp., 883 F.2d 287, 292 (4th Cir. 1989).

Plaintiffs did not use the word "unconscionable" in their CAC. Nonetheless, Plaintiffs made all the predicate allegations sufficient to show unconscionability, and argue it now. Specifically, Plaintiffs allege that:

> Plaintiffs did not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Upon information and belief, the distributors, contractor, and other customers of Defendant did not and could not negotiate or bargain for the terms of the express warranty provisions and any purported limitations contained therein. Instead, Defendant stood in a position of domination and control over the terms.

> Under these circumstances, Defendant's purported exclusions or limitations of liability and remedies are invalid because they fail of their essential purpose in providing Plaintiffs and Class members the benefit of the bargain *i.e.*, defect-free decking materials.

(CAC ¶¶ 205-06). Plaintiffs further allege specific facts which, when taken as true, support Plaintiffs' claims that Defendant was an expert in PVC with knowledge of its defects, but made misrepresentations directly contrary to those defects when selling the product. (See id. ¶¶ 6, 10, 11, 12, 17). As further proof of Defendant's knowledge of the falsity of its statements, Plaintiffs allege that the scientific and industrial community also knew that PVC was likely to degrade if it was exposed to sunlight and heat. (Id. ¶ 11, 19). Finally, as mentioned above, Plaintiffs allege that "Defendant stood in a position of domination and control over the terms" and denied Plaintiffs "the benefit of the bargain *i.e.*, defect-free decking materials." (Id. ¶¶ 205-06).

The Court has not had the benefit of full discovery to provide insight into "the general commercial background and the commercial needs of the particular trade," N.J. Stat. Ann. § 12A:2-302, Comment, and to determine the scope of procedural and substantive unconscionability. The Court therefore declines to rule that Defendant's disclaimer is not unconscionable at the pleading stage.[4] As a result, neither remaining warranty claim can be cast out as effectively

---

[4] This dispute is more form than substance. Even if the allegations in the CAC did not sufficiently support a claim of unconscionability, this could simply be cured through amendment pursuant to Rule 15(a). See Fed. R. Civ. P. 15(a).

disclaimed at this stage of the case.[5]  Therefore, the Court denies Defendant's motion to dismiss all of Plaintiffs' express warranty and implied warranty claims based upon the disclaimer contained in the Lifetime Limited Warranty.

### 4.   Privity for Express and Implied Warranty Claims in Various States

Defendant argues that the express warranty claims of Maryland Plaintiff Murdoch, Connecticut Plaintiff Wayne, and New York Plaintiff Fennell and the implied warranty claims of Florida Plaintiffs Dalpiaz and Edmonds, Michigan Plaintiff Derwich, and New York Plaintiff Fennell fail as a matter of law because these Plaintiffs are not in privity with Defendant.  Plaintiffs reply that, in these states, privity is not required for various reasons and, in any event, Plaintiffs adequately allege privity, a fact question not appropriate for dismissal at the pleading stage.

The fact-intensive nature of privity frequently renders dismissal at the pleading stage premature.  See Dewey v. Volkswagen, AG, 558 F. Supp. 2d 505, 524 n.17 (D.N.J. 2008) (denying motion to dismiss New York warranty claims because privity "involves issues of fact not appropriate for resolution at the motion to dismiss stage").   Lady Di Fishing Team, LLC v. Brunswick Corp., No. 3:07-402-J-33, 2007 WL 3202715 (M.D. Fla. Oct. 29, 2007), is instructive.

---

[5] Even if the Court found that the disclaimer was not unconscionable, an additional fact question prevents dismissal of the express warranty claim due to disclaimer: namely, whether the disclaimer is inoperable as "unreasonably inconsistent" with express warranties made.  To be effective, a disclaimer must be (1) clear and conspicuous and (2) not "'unreasonably inconsistent' with the express warranties given."  Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 470 (D.N.J. 2007) on reconsideration in part, No. 05-538, 2007 WL 2746713 (D.N.J. Sept. 18, 2007) and aff'd sub nom. Viking Yacht Co. v. Composite One LLC, 385 F. App'x 195 (3d Cir. 2010).  The conspicuity requirement is uncontested here.  If written representations create express warranties, inconsistency with such representations may be sufficient to render the disclaimer inoperable.  See id. (holding that representations in a product bulletin created an express warranty inconsistent with disclaimer contained therein, which was thereby inoperable); see also Dzielak v. Whirlpool Corp., No. 12-0089, 2014 WL 2758746, at *5 (D.N.J. June 16, 2014) (finding a disclaimer in a limited warranty not to be a conspicuous disclaimer of the express warranty created by the Energy Star logo).  Plaintiffs' allegations contain facts which, if true, may render the Limited Lifetime Warranty disclaimer unreasonably inconsistent with the express warranties potentially created by Defendant's statements.  Thus, the Court cannot dismiss the express warranty claim, even if it found the disclaimer to be not unconscionable.

In that case, the plaintiff alleged only that it had purchased a yacht from the manufacturer's "representative within the state of Florida" and then negotiated the manufacture, purchase and sale agreement, delivery, and subsequent repairs of the yacht with the manufacturer.  Id. at 5.  Those factual allegations were sufficient to allege privity, and so survived a motion to dismiss.  Id. at 6.

Here, Plaintiffs have alleged sufficient facts to raise a question of fact concerning whether Plaintiffs and Defendant are in privity.  Plaintiffs alleged that they "were in privity with Defendant because (1) they purchased their AZEK PVC decking from an actual or apparent agent of Defendant, and (2) have a contractual relationship stemming from Defendant's lifetime warranty provided in conjunction with the purchase of the AZEK PVC decking."  (CAC ¶ 219).  The CAC includes allegations that Defendant's Lifetime Limited Warranty called for a continuing relationship with Defendant, including communications, repair, and even inspections in the event of defective products.  (Id. ¶ 19, Ex. A).  Plaintiffs also allege that AZEK decking was uniformly marketed and that Defendants coordinated such marketing "[i]n conjunction with each sale and through various forms of media . . . ."  (Id. ¶¶ 5, 49).  These allegations are enough to raise a question of fact as to whether the distributors were actual or apparent agents of Defendant or whether Defendant otherwise established a privity relationship with Plaintiffs.  The Court therefore denies Defendant's motion to dismiss as to the afore-mentioned Plaintiffs for failure adequately to allege privity.

### C.  The Implied Covenant of Good Faith and Fair Dealing (Count III)

Defendant moves to dismiss Plaintiffs' claims under the implied covenant of good faith and fair dealing as to three subsets of Plaintiffs.  The Court is not persuaded by Defendant's arguments here for the reasons below.

### 1.  Freestanding Cause of Action in Florida, Maryland, Michigan, and Pennsylvania

Defendant moves to dismiss the cause of action for breach of the implied covenant of good faith and fair dealing as to Plaintiffs Dalpiaz, Edmonds, Murdoch, Derwich, and Berkowitz because it is not recognized as a freestanding cause of action in their states: Florida, Maryland, Michigan, and Pennsylvania.  Plaintiffs argue that a full factual record is required to support a choice of law analysis as to what law will control concerning the implied covenant of good faith and fair dealing claims.  As Plaintiffs contest which law applies to this cause of action, the Court applies choice of law principles to this dispute.

Since Plaintiffs' claims are based on state law, the Court will apply New Jersey's choice of law rules, "as a federal court sitting in diversity must apply the forum state's choice of law rules."  Snyder v. Farnam Cos., Inc., 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  New Jersey uses a two-step inquiry: first, determine whether an actual conflict exists; if one does, then determine who has the "most significant relationship" to the claim.  P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143-144 (2008).

Here, there appears to be an actual conflict of laws.  Defendant admits that breach of the implied covenant of good faith and fair dealing is a cause of action under New Jersey law.  See Barows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 365 (D.N.J. 2006) (identifying circumstances under which breach of implied covenant of good faith and fair dealing provides an independent cause of action).  Plaintiffs provide no argument contesting Defendant's cases which indicate that breach of the implied covenant of good faith and fair dealing is not an independent cause of action under Florida, Maryland, Michigan, and Pennsylvania law.  Instead, Plaintiffs argue that it is premature to conduct a complete choice of law analysis, as the Court does not have a developed factual record.

13

The Court agrees with Plaintiffs.  The record does not contain significant information concerning the "most significant relationship" here—including the scope and locus of continued dealings between Plaintiffs and Defendant, whether the sales contracts had choice of law provisions, or whether other facts militate in favor of applying a particular state's law.  In the absence of a full record, the Court declines to resolve this issue at the pleading stage.  See Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486, 491 (D.N.J. 2009) (postponing the choice of law analysis past the pleading stage).

### 2.   Deficient Pleadings Under New Jersey Law

Defendant further argues that even in states where breach of implied covenant of good faith and fair dealing is recognized, such as New Jersey, Plaintiffs have failed to plead the elements required.  The Court rejects this argument as facially inadequate.  The primary example to which Defendant points—claiming that "Plaintiffs' claim is not premised on extra-contractual dealings" (Dkt. No. 95, Def's Mot. to Dismiss at 27-28)—is obviously wrong.  Plaintiffs allege intentional extra-contractual misrepresentations on which they relied in purchasing of AZEK decking.  See supra at 1-2.

### 3.   Adequate Alternate Means of Redress

Defendant also include in a footnote a request to dismiss the claims alleging breach of the covenant of good faith and fair dealing by Massachusetts Plaintiffs Beucler and Esposito, California Plaintiff Solo, New York Plaintiff Fennell, and Virginia Plaintiff Rule because their other substantive counts are adequate means of vindicating Defendant's alleged wrongdoing.

Plaintiffs' allegations go beyond mere breach of contract, covering intentional, bad faith sales of a product that Defendant knew to be defective, providing a warranty it did not intend to honor, and making false representations about the product.  This is enough to differentiate the

claim from a mere breach of contract action, at least at the pleading stage.  Also, pleading in the alternative is permissible in New Jersey, so long as the alternative claims meet the pleading standards.  Reina v. Twp. of Union, No. 13-659, 2013 WL 3864051, at *1 (D.N.J. July 24, 2013). Plaintiffs dispute which states' law applies, and the Court will not rule on that issue at this stage due to the undeveloped state of the record.  See supra at 13-14.  The Court therefore does not dismiss the count for breach of the implied covenant of good faith and fair dealing alleged by Plaintiffs Beucler, Esposito, Solo, Fennell, and Rule.

### D.  The Consumer Protection Statutory Claims (Counts IV-XIV)

#### 1.  Sufficiency of Plaintiffs' Allegations Under Rule 9(b)

Defendant moves to dismiss Plaintiffs' consumer fraud claims, pled under various state consumer protection laws, for failing to satisfy Rule 9(b)'s heightened pleading standard for causes of action sounding in fraud, for providing only uniform and formulaic contentions, and for failing to plead any facts supporting reliance or causation.  Plaintiffs contend that they have pled with sufficient particularity to satisfy Rule 9(b).

Here, Plaintiffs provide sufficient specifics to provide substantiation to their fraud allegations and to put Defendant on notice of what misconduct is at issue.  They identify specific written misrepresentations made by Defendant through "pamphlets and information sheets." (CAC ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169).  Each Plaintiff also contends he or she reviewed the misrepresentations before purchasing AZEK decking and relied on those misrepresentations.  (Id.).  Each Plaintiff provides date ranges, for most a specific month, within which he or she purchased AZEK decking.  (Id. ¶¶ 65, 73, 81, 91, 99, 107, 115, 123, 130, 138, 146, 154, 161, 168).  The precise language of ten written misrepresentations at issue is quoted in the CAC.  (Id. ¶ 6).  For example, paragraph 6(j) reads "WOOD AND COMPOSITES ROT,

15

STAIN AND FADE. AZEK DOESN'T. AZEK exterior products look so beautiful and last so long why would you ever use anything else? . . . AZEK deck is the embodiment of durability. At the end of the day all you have to do is enjoy it." (Id. ¶ 6(j)) (capitalization in original). These are not unidentifiable statements or the vague allegations of a frivolous claim.

Defendant's reliance on Schmidt v. Ford Motor Co., 972 F. Supp. 2d 712 (E.D. Pa. 2013), is misplaced. Schmidt concerned plaintiffs who alleged that they were incorrectly informed that their vehicles were not covered under warranty for defects which caused various engine problems, including loss of power and stalling. Id. at 715. The allegations in Schmidt were based on vaguely described oral statements or omissions. Id. at 715-16. The Schmidt court ultimately dismissed the count because nothing "place[d] defendant on notice of the precise misconduct with which it is charged." Id. at 721 (citation omitted). Here, Plaintiffs identify and specifically quote the written fraudulent statements and provide a timeframe—usually a particular month, but occasionally a few months—in which those statements were read and relied upon by each Plaintiff. Such identification provides Defendant with sufficient notice of the specific misconduct at issue.

Defendant also claims that Plaintiffs have insufficiently pled reliance, citing to *inter alia*, Dewey v. Volkswagen AG, 558 F. Supp. 2d 505 (D.N.J. 2008). In Dewey, the plaintiffs' allegations of misrepresentations made on defendant's website and in the owner's manual were dismissed because "Plaintiffs [did] not allege when the statements were made or at what point— if ever—each Plaintiff was exposed to one or more of the statements." Id. at 526. Plaintiffs here have alleged much more: (1) specific misrepresentations (2) made in marketing brochures and pamphlets (3) that Plaintiffs each reviewed and relied upon when buying AZEK decking within a certain date range.

16

Unlike in <u>Dewey</u>, Plaintiffs alleged that they reviewed and relied upon the misrepresentations identified in paragraphs 5, 6, 8, 10, and 12 of the CAC before purchasing AZEK decking.  (<u>Id.</u> ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169).  The specific misrepresentations provided in the CAC can also reasonably be inferred to induce reliance, unlike the alleged misrepresentations in <u>Dewey</u>.  (<u>See, e.g.</u>, CAC ¶ 6(c) ("[B]y leaving out the wood fillers AZEK deck materials are engineered to resist stains and mold."); <u>id</u>. ¶ 6(j)); <u>cf</u>. <u>Dewey</u>, 558 F. Supp. 2d at 527 n.20 (D.N.J. 2008) (questioning why all plaintiffs relied on a 2002 Passat owner's manual when only one plaintiff owned a 2002 Passat).  The statements were allegedly made as "representations and marketing . . . in pamphlets and information sheets . . . ."  (<u>Id.</u> ¶¶ 66, 74, 82, 92, 100, 108, 116, 124, 131, 139, 147, 155, 162, 169).  Presumably AZEK marketers expect their materials to induce purchases; it is unsurprising that Plaintiffs now allege they relied on marketing statements before purchasing.

Plaintiffs have injected sufficient particularity into their fraud allegations to put Defendant on notice as to the specific misconduct at issue.  Rule 9(b) requires no more.  Defendant's motion to dismiss is denied as it relates to the sufficiency of Plaintiffs' state consumer protection claims under Rule 9(b).

### 2.  Sufficiency of Individual Consumer Protection Statutory Claims

Defendant also moves to dismiss various Plaintiffs' claims under their states' consumer protection statutes for a variety of reasons.  The Court considers these issues in sequence.

### i.  Pennsylvania's Economic Loss Doctrine

Defendant moves to dismiss Pennsylvania Plaintiff Berkowitz's claim under the Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("PUTPCPL") as barred under the economic loss doctrine, arguing that the Third Circuit's decision in <u>Werwinski v. Ford</u>

Motor Co., 286 F.3d 661 (3d Cir. 2002), precludes usage of the PUTPCPL to redress mere economic loss.[6] Plaintiffs reply that the Werwinski decision was faulty, many courts have declined to follow its interpretation of how the Pennsylvania Supreme Court would rule, and this Court should similarly dissent.

Plaintiffs' concerns about Werwinski are beside the point.  Plaintiffs do not cite any Third Circuit or Pennsylvania Supreme Court decision overturning Werwinski.  It is a well-established principle of federalism that federal district courts are bound by their controlling circuit court's decisions concerning how a state supreme court would rule, unless and until the state supreme court rules differently.  See Gadley v. Ellis, No. 3:13-17, 2014 WL 3696209, at *5 (W.D. Pa. July 23, 2014) ("a district court 'is bound by a Third Circuit decision where that court has predicted how the Pennsylvania Supreme Court will decide an issue.'") (citation omitted); Tubman v. USAA Cas. Ins. Co., 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013) ("Despite disagreement following Werwinski, it remains the controlling law unless revisited by the Pennsylvania Supreme Court."); Wulf v. Bank of Am., N.A., 798 F. Supp. 2d 586, 595-96 (E.D. Pa. 2011) ("Despite several cases questioning Werwinski, none have come from the Pennsylvania Supreme Court or the Third Circuit. Therefore, this court is bound by Werwinski."); but see O'Keefe v. Mercedes–Benz USA, LLC, 214 F.R.D. 266, 275-78 (E.D. Pa. 2003) (critiquing Werwinski and declining to adopt the Third Circuit's reasoning).

The Third Circuit continues to follow and apply Werwinski.  See Sunshine v. Reassure Am. Life Ins. Co., 515 F. App'x. 140, 144-45 (3d Cir. 2013).  Thus, this Court is bound by the Third Circuit's holding in Werwinski that the economic loss doctrine bars claims under the

---

[6] Economic loss concerns primarily defects in products leading to loss of value of that product, as opposed to defects in products which cause foreseeable harm to other property or persons, which sounds in tort.  See E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986).  Plaintiffs do not contest that their claim under the PUTPCPL concerns solely economic loss.

PUTPCPL for mere economic loss.  As such, Plaintiff Berkowitz's claim under the PUTPCPL is dismissed without prejudice to Plaintiffs' right to replead this cause of action consistent with this opinion.

### ii.  Massachusetts' Demand Letter Requirements

Defendant argues that the claims of Massachusetts Plaintiffs Marino and Merriam under Massachusetts General Laws, Chapter 93A, Section 9 should be dismissed for failure to comply with Massachusetts' demand letter requirements.  To prosecute claims under this statute, the Plaintiffs must first send a written demand for relief "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered . . . ."  Mass. Gen. L. ch. 93A § 9(3).  Compliance with the demand requirement must be pleaded in the complaint.  Rodi v. S. New England School of Law, 389 F.3d 5, 19 (1st Cir. 2004).

Plaintiffs provide two replies.  First, they argue that Massachusetts' pre-filing notice requirement does not apply to a prospective respondent that does not maintain a place of business or keep assets within the Commonwealth.  See Mass. Gen. L. ch. 93A § 9(3); Burnham v. Mark IV Homes, Inc., 441 N.E.2d 1027, 1033 n.13 (Mass. 1982).  While accurate, this argument is irrelevant.  Plaintiffs have not alleged in the CAC that Defendant does not have a place of business or keep assets within Massachusetts.[7]  Those facts must be alleged in order to rely upon the exception to the demand letter requirement.  Sumner v. Mortgage Elec. Registration Sys., Inc., No. 11-11910, 2012 WL 3059429, at *6 (D. Mass. July 26, 2012) (Plaintiffs "must allege facts that the Defendants do not maintain a place of business or keep assets in Massachusetts to show the exception to the demand letter requirement applies to plead a Chapter 93A claim.").

---

[7] Defendant also represents that it does, in fact, keep assets in Massachusetts.  (Dkt. No. 106, Def's. Reply at 14 n.20).

Second, Plaintiffs argue that a demand letter is unnecessary when another claim has been filed in district court providing notice of the substance of the dispute, citing <u>Latino v. Ford Motor Co.</u>, 403 Mass. 247, 250 (Mass. 1988), for support.[8] But <u>Latino</u> held that a "finding by an arbitrator that the purchase price must be refunded or the vehicle replaced serves as the statutorily designated equivalent of the c. 93A demand letter."   <u>Id.</u>   Nowhere does the case even suggest that merely filing a complaint is sufficient to satisfy the demand letter requirement of Chapter 93A.   A terminal arbitration finding and a complaint are fundamentally different; one terminates a proceeding while the other instigates it.   To the extent Plaintiffs urge this Court to adopt a new rule permitting a complaint to satisfy the demand letter requirement, the Court declines to do so.   Therefore, Plaintiffs Marino and Merriam have failed to comply with the demand letter requirement of Massachusetts General Laws Chapter 93A, Section 9(3).   Thus, the Court dismisses Plaintiffs Marino and Merriam's claims under Massachusetts General Laws Chapter 93A, Section 9, without prejudice to Plaintiffs' right to replead this cause of action consistent with this opinion.

### iii. New Jersey's Actionable Conduct and Ascertainable Loss Requirements

Defendant moves to dismiss New Jersey Plaintiffs Beucler and Esposito's claims under the New Jersey Consumer Fraud Act (CFA).   <u>See</u> N.J. Stat. Ann. §§ 56:8-1, *et seq*.   Under the CFA, "[A] plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal connection between the defendants' unlawful conduct and the plaintiffs' ascertainable loss."   <u>Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.</u>, 192 N.J. 372, 389 (2007) (alterations and quotations omitted).   Concerning unlawful conduct, mere breach of warranty does not violate the CFA.   <u>D'Ercole Sales, Inc. v. Fruehauf Corp.</u>, 206 N.J. Super. 11, 25

---

[8] Plaintiffs' second cited case provides no support for their position, as in that case "the plaintiffs sent a demand letter to the defendants prior to filing their c. 93A complaint."   <u>Towne v. N. End Isuzu, Inc.</u>, No. 982708B, 1999 WL 674140, at *2 (Mass. Super. Ct. June 21, 1999).   No such notice has been provided here.

(App. Div. 1985). Instead, the plaintiff must plead "substantial aggravating circumstances." Morris v. BMW of N. Am., LLC, No. 13-4980, 2014 WL 793550, at *5 (D.N.J. Feb. 26, 2014).

Defendant argues that Plaintiffs failed adequately to allege actionable conduct and ascertainable loss. Plaintiff argues that both actionable conduct and ascertainable loss have been adequately pled. The Court handles the disputed allegations in turn.

Concerning actionable conduct, Plaintiffs adequately allege "substantial aggravating circumstances" in the form of intentional misrepresentation to induce purchases of defective products. In addition to averring generally that Defendant had knowledge of the disputed defect, Plaintiffs provide specific allegations of fact which make such an inference of knowledge reasonable. See supra at 2; Rait v. Sears, Roebuck & Co., No. 08-2461, 2009 WL 250309, at *4 (D.N.J. Feb. 3, 2009) (noting that a plaintiff adequately pleads a CFA claim when he pleads "facts that provide a basis for the belief of what defendant is alleged to have known and when."). This Court is also mindful of the Third Circuit's admonition concerning information uniquely in Defendant's control: "[I]n applying Rule 9(b), courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their fraud.'" In re Able Labs. Sec. Litig., No. 05-2681, 2008 WL 1967509, at *11 (D.N.J. Mar. 24, 2008) (quoting Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997)). Whether and when Defendant knew of the alleged defect is information uniquely in Defendant's hands. Considering Plaintiffs' specific allegations concerning the basis, scope, and public characterizations of Defendant's knowledge, this Court finds that Plaintiffs Beucler and Esposito have alleged actionable conduct in the form of intentional misrepresentations.

Ascertainable loss is a different matter, however. "In cases involving alleged misrepresentations, as here, 'either out-of-pocket loss or a demonstration of loss in value will

21

suffice to meet the ascertainable loss hurdle.'"  Solo v. Bed Bath & Beyond, Inc., No. 06-1908, 2007 WL 1237825, at *3 (D.N.J. Apr. 26, 2007) (citing Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248 (2005)).  "[W]hat New Jersey Courts require for that loss to be 'ascertainable' is for the consumer to quantify the difference in value between the promised product and the actual product received."  Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011).  Plaintiffs provide no such quantification.

Plaintiffs reply that ascertainable loss requires a quantified loss to be proven at summary judgment, but not necessarily alleged at the pleading stage.  This argument has been repeatedly rejected by courts in this District.  Durso v. Samsung Electronics Am., Inc., No. 12-05352, 2013 WL 5947005, at *9 (D.N.J. Nov. 6, 2013) ("Plaintiffs have not quantified the difference in value between the washer promised and the actual washer received. As such, Plaintiffs have failed to adequately plead ascertainable loss under the NJCFA."); Lieberson v. Johnson & Johnson Consumer Cos., Inc., 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) ("[A]bsent any specific information concerning the price of the Products or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss."); Solo, 2007 WL 1237825, at *3 ("Under the CFA, Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered.").  Here too the Court finds that Plaintiffs must plead specific price information or provide alternate means of quantifying their loss to allege ascertainable loss under New Jersey law.

This is not a Sisyphean pleading burden.  "[T]he valuations do not have to be perfect. They need only provide a reasonable basis for valuation that is not speculative or unquantified."  Smajlaj, 782 F. Supp. 2d at 102-03.  But in the absence of any basis for valuation, the Court is left without

a method to quantify Plaintiffs' loss.  Under New Jersey law, that will not do.  Therefore, the Court dismisses New Jersey Plaintiffs Beucler and Esposito's claims under the CFA without prejudice to Plaintiffs' right to replead this cause of action consistent with this opinion.

### E.  The Declaratory Judgment Claim (Count XV)

Defendant argues that Plaintiffs' cause of action for declaratory judgment should be dismissed because the Declaratory Judgment Act does not provide an independent cause of action, but merely another form of relief.  Plaintiffs contend that the Declaratory Judgment Act provides them with a new remedy.

These positions don't contradict.  The Declaratory Judgment Act is a procedural vehicle that creates a form of relief; it does not create a cause of action courts may be compelled to enforce.  See Wilton v. Seven Falls Company, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants."); Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) (the Declaratory Judgment Act provides a new remedy for existing cases or controversies).  The Court agrees with Defendant that the declaratory judgment cause of action alleged by Plaintiffs does not provide a substantive basis for relief.  An independent count for declaratory judgment adds nothing to this case.  See, e.g., Mazzoccoli v. Merit Mountainside LLC, No. 12-2168, 2012 WL 6697439, at *9 (D.N.J. Dec. 20, 2012) (dismissing case where the only remaining cause of action was under the Declaratory Judgment Act); Young v. Travelers Ins. Co., No. 13-02092, 2013 WL 5308289, at *3 (D. Md. Sep. 19, 2013) (dismissing a count for declaratory relief as duplicative).  Therefore, the Court grants Defendant's motion to dismiss Plaintiffs' cause of action for declaratory judgment.  Plaintiffs have

leave to amend their Complaint to include declaratory judgment as a requested form of relief within twenty-one days.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.  Dismissal shall be without prejudice.  Plaintiffs may move to amend their complaint within twenty-one days.  An appropriate Form of Order accompanies this Opinion.

Date: January 30, 2015                         */s/ Madeline Cox Arleo*         
                                               **Hon. Madeline Cox Arleo**
                                               **UNITED STATES DISTRICT JUDGE**